# IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAGLE FORUM, et al )
et al., )
  )
     Plaintiffs, )
v. ) Cause No.:  3:16-cv-946-DRH-PMF
  )
PHYLLIS SCHLAFLY'S AMERICAN EAGLES, )
a Virginia Not for Profit Corporation, )      JURY DEMAND
  )
     Defendant, )
  )

## COUNTERCLAIM

Counterclaimant Phyllis Schlafly's American Eagles ("PSAE"), and for its Counterclaim against Plaintiffs/Counterclaim Defendants Eagle Forum, Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry, (hereinafter collectively referred to as "Counterclaim Defendants"), state the following:

## THE PARTIES

1.     Counterclaimant PSAE is a Virginia not-for-profit corporation with its principal place of business located within the Southern District of Illinois.

2.     Counterclaim Defendant Eagle Forum ("Eagle Forum 501(c)(4)") is an Illinois not-for-profit corporation with its principal place of business located within the Southern District of Illinois

3.     Licensor Eagle Trust was formed June 2, 1967, by Phyllis Schlafly as the settlor. The Trust's stated purpose is to publish and distribute her unique newsletter, the *Phyllis Schlafly Report*, conduct research in political science and national defense, distribute educational materials, and support other worthy and appropriate goals in the trustees' discretion, all under the EAGLE Family of trademarks, which the Trust largely controls.

{00439225- 16 27647-008}

4.      Eagle Trust has several employees, has filed annual tax returns, and has operated continuously for 49 years as a custodian of Mrs. Schlafly's intangible personal property, protecting Phyllis Schlafly's image, likeness, and related intellectual and personal property and managing Eagle Trust's Assets, e.g. *The Phyllis Schlafly Report*. The Eagle Trust was amended on or about May 10, 1996 and June 1, 2016.

5.      The original trustees were Phyllis Schlafly and Mrs. Margaret Gaul; the current successor trustees of the Eagle Trust are John Schlafly and Bruce Schlafly, M.D., sons of the late Phyllis Schlafly and the Trust's sole members.

6.      Counterclaim Defendant Anne Cori is an individual living in the State of Missouri, and a member of the board of Directors of Eagle Forum.

7.      Upon information and belief, Counterclaim Defendant Eunie Smith is resident of the State of Alabama, and a member of the Board of Directors of Eagle Forum.

8.      Upon information and belief, Counterclaim Defendant Cathie Adams is a resident of the State of Texas, and a member of the Board of Directors of Eagle Forum.

9.      Upon information and belief, Counterclaim Defendant Carolyn McLarty is an individual who is a resident of the State of Oklahoma, and a member of the Board of Directors of Eagle Forum.

10.      Upon information and belief, Counterclaim Defendant Rosina Kovar is a resident of the State of Colorado, and a member of the Board of Directors of Eagle Forum.

11.      Upon information and belief, Counterclaim Defendant Shirley Curry a resident of the State of Tennessee, and a member of the Board of Directors of Eagle Forum.

## JURISDICTION & VENUE

12.    This Court has subject matter jurisdiction over PSAE's federal claims pursuant to 28 U.S.C §§ 1331 and 1338—under the Lanham Act, 15 U.S.C. §§ 1051 *et. seq.*, and the Defend Trade Secrets Act, 18 U.S.C. § 1836.

13.    This Court also has subject matter over PSAE's state law claims under 28 U.S.C. § 1367(a) because these claims are directly related and intertwined with the federal claims in this action within this Court's original jurisdiction that they form part of the same case or controversy.

14.    This Court also has subject matter jurisdiction over PSAE's common law trademark, unfair competition, and right of publicity claims, under 28 U.S.C. § 1338(a)-(b) because these claims are joined with PSAE' substantially related claims under the Lanham Act and the Defend Trade Secrets Act.

15.    Venue is appropriate in the Southern District of Illinois, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to PSAE's claims occurred within this District.

16.    This Court has personal jurisdiction over each and every defendant, including all non-resident defendants, as Eagle Forum 501(c)(4) is an Illinois not for profit corporation, and, upon information and belief, non-resident Counterclaim Defendants Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry, at all times relevant hereto, have been Members and on the Board of Directors of the affiliated entity, Eagle Forum 501(c)(4), and have attended in-person annual Board of Director's Meetings in Alton, Illinois.

## STATEMENT OF FACTS

17.     This case involves the rights and wishes of Phyllis Stewart Schlafly who, as the First Amended Complaint of Counterclaim Defendants fails to note, died during the pendency of this case (1st Am. Comp., filed 1/23/2017).

18.     The outcome of this case will essentially decide whether Mrs. Schlafly was free to direct the use of both her own name and a *family of trademarks* that she herself had cultivated during a half-century of public service, or whether a rogue band is allowed to usurp and tarnish those marks.

19.     A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not itself establish the existence of a family. There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods. Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family.[1]

20.     The Eagle Family of Marks (or simply "Eagle Family Marks") is hereby defined as EAGLE DESIGN MARKS #1 AND #2, EAGLE FORUM EDUCATION AND LEGAL DEFENSE FUND, EAGLE COUNCIL, EAGLE AWARDS, "EAGLES ARE FLYING," EAGLE FORUM PAC, EAGLE TRUST, EAGLE TRUST FUND, A GATHERING OF EAGLES and sundry common-law trademarks, in various goods and services categories, based on trademark usages by Mrs. Schlafly and Eagle Trust Fund using any component of the word or design "eagle."

---

[1] J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460 (Fed. Cir. 1991), quoted in toto.

21.    This case involves Counterclaim Defendants' attempt to "split up the family" in such a way that the common mark element, an *eagle*, is no longer recognizable, and the name Phyllis Schlafly fades in significance as rapidly as possible.

22.    The case also involves hostile acts committed by Counterclaim Defendants against PSAE in an attempt to stop PSAE from competing with Plaintiff Eagle Forum.

23.    As such, this is an action for infringement of PSAE's rights under license from the owner of a family of marks more fully described below, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of trademark infringement and unfair competition, in violation of rights of publicity under Illinois common law and under the statutory and common laws of the State of Illinois, all arising from the Counterclaim Defendants unauthorized use of the marks in connection with the distribution, marketing, advertising, promotion, offering for sale, and/or sale of Counterclaim Defendants' EAGLE FORUM and related-name services.

24.    Plaintiff seeks injunctive, monetary and declaratory relief.

I.    **PHYLLIS SCHLAFLY'S ADOPTION, DEVELOPMENT, AND USE OF THE EAGLE MARKS**

25.    For 50 years Mrs. Schlafly was a nationally known political figure who gained fame and notoriety as a political advocate and activist, a best-selling author, and through her charismatic personality, as a highly effective spokeswoman for grassroots conservatism.

26.    Mrs. Schlafly first became a public figure in 1946 as the campaign manager for Claude Bakewell, a successful Congressional candidate for Congress from St. Louis. She then ran for Congress in 1952 and 1970 and served as an elected Delegate to eight Republican National Conventions: 1956, 1964, 1968, 1984, 1988, 1992, 1996, 2004, 2012, and most recently

in July 2016; and as an elected Alternate Delegate to four other Republican National Conventions: 1960, 1980, 2000, and 2008. She has attended and played an active role in every Republican National Convention since 1952.

27.    Mrs. Schlafly used these early political opportunities to develop a personal network of key contacts, influencers, and political donors.

28.    Mrs. Schlafly continued to expand her personal network by starting 5,000 study groups on Communism for the anti-communist movement (1950s and 1960s), helping to found the Cardinal Mindszenty Foundation (1958), and publishing five best-selling books on the Soviet missile threat (1964-1976).

29.    Then in 1964, Mrs. Schlafly became a national figure after publishing her first book—*A Choice Not an Echo*—and selling more than 3 million copies.

30.    In 1966, Mrs. Schlafly ran for president of the National Federation of Republican Women.  In this campaign, her supporters were known as "eagles" and were given eagle pins to indicate their support for Mrs. Schlafly. This was her first trademark usage of an eagle design and the word mark "Eagle," almost a decade before Counterclaim Defendant Eagle Forum was chartered, and the use was, from the beginning, nationwide.

31.    After the 1966 election, Mrs. Schlafly organized her supporters and fellow-travelers into a nationwide political advocacy organization under the EAGLE DESIGN MARK #1[2]

---

[2] "EAGLE DESIGN MARK #1 is sometimes referred to as the EAGLE PIN Mark because it has been primarily used as a lapel pin sold or distributed by Eagle Trust Fund as a Collective Membership Mark to indicate "membership in a national association of like-minded men and women who share conservative and pro-family values."  It is the only Collective Membership Mark in the Eagle Family of Marks.



32.     By September 1966, Mrs. Schlafly had adopted and began using the EAGLE
DESIGN MARK #1 trademark and name in connection with a broad array of political goods *and*
services including political advocacy, lobbying, policy papers, meetings, and the attendant
fundraising services required to keep these activities going.

33.     The rendering of the EAGLE DESIGN MARK #1 Mark in the form of a dress or
lapel pin came to indicate not just support of Phyllis Schlafly the candidate but membership in
her organization. Members who came to diverge from Phyllis Schlafly on an important issue and
no longer wanted to follow Mrs. Schlafly would turn in their pins or not to wear their pins.

34.     To safeguard the valuable rights in the EAGLE DESIGN MARK #1 and her
copyrighted works, and provide for better management and succession planning for the same,
Mrs. Schlafly formed the Eagle Trust Fund in 1967 as its settlor and initial co-trustee.

35.     At no time during her life did Mrs. Schlafly ever cede her rights to her copyright
design to any other person or entity.

36.     After 1967, through the early 1970s, Mrs. Schlafly expanded her use of the Eagle
brand, adopting other marks containing the "Eagle" element in such a manner that a Family of
Marks was clearly recognizable.

37.    In 1967, after establishing the Eagle pin, Mrs. Schafly then began to use the



EAGLE DESIGN MARK #2,                              and the PHYLLIS SCHLAFLY

Marks in connection with political fundraising and advocacy activities.

38.    In 1967, Mrs. Schlafly began to use the EAGLE DESIGN MARK #2, and the PHYLLIS SCHLAFLY MARKS on and in connection with the publication, promotion, and distribution of the *Phyllis Schlafly Report*, with both marks appearing prominently on the masthead until her death in 2016.

39.    Mrs. Schalfly adopted the EAGLE TRUST FUND (shortened sometimes to EAGLE TRUST) Mark and used this mark on every *Phyllis Schlafly Report* monthly newsletter as "Publisher" and payee of subscriptions (a practice that has continued uninterrupted up to the present day).

40.    *The Phyllis Schlafly Report* is by far the most visible product of any of the organizations Mrs. Schlafly controlled, racking up 10 million in distributed copies plus countless thousands of pass-along impressions in the last 50 years via a mailing list of over 10,000 and 600 consecutive issues.

41.    Mrs. Schlafly regularly inserted a fundraising letter or promotional piece for the various entities and causes she supported into the same envelope that contained *The Phyllis Schlafly Report*. Specifically, these "ride-along" letters would provide information about the

separate entities, including Plaintiff Eagle Forum, and ask for donations. But all the letters were under the umbrella mark of EAGLE DESIGN #2, which appeared at the top of every *Report*.

42.    In the 1960s and 70s, Mrs. Schlafly devised new projects to stimulate the activism of her followers or "eagles". Most of these projects involved trademark usage of the word EAGLE (whether singular or plural, design or written) (hereinafter the "Eagle House Mark").

43.    Trade names involving the Eagle House Mark sprang forth: Eagle Forum 501(c)(4) (1975), Eagle Forum Education & Legal Defense Fund (1981), Eagle Forum PAC (1982), the Eagle Forum Education Center (1993, with prominent signage on a busy corner in Clayton) (owned by Eagle Forum Education & Legal Defense Fund), and Eagle Forum Collegians (1993).

44.    Other "eagle" related trademarks that were adopted well before the incorporation of Eagle Forum are THE EAGLES ARE FLYING, EAGLE COUNCIL, and EAGLE AWARDS. In 1981, a 501c(3) was formed, EAGLE FORUM EDUCATION AND LEGAL DEFENSE FUND (shortened often to EAGLE FORUM).

45.    The Eagle Family of Marks (or simply "Eagle Family Marks") consists of EAGLE DESIGN MARKS #1 AND #2, EAGLE FORUM EDUCATION AND LEGAL DEFENSE FUND, EAGLE COUNCIL, EAGLE AWARDS, "EAGLES ARE FLYING," EAGLE FORUM PAC, EAGLE TRUST, EAGLE TRUST FUND, A GATHERING OF EAGLES and sundry common-law trademarks, in various goods and services categories, based on trademark usages by Mrs. Schlafly and Eagle Trust Fund using any component of the word or design "eagle."

46.     The trademark EAGLE FORUM rightly belongs to the family but is not included in the defined term herein as it is in dispute.

47.     This pattern of names became very recognizable among the relevant public, so much so that the common characteristic "eagle" contained in the Eagle House Mark became indicative of a common origin: Phyllis Schlafly.[3]

48.     From the mid-1960s until her death in September 2016, Mrs. Schlafly used the eagle-related marks  on and in connection with a variety of goods and services, including without limitation, publications (newsletters, books, brochures, manuals, pamphlets, and later, webpages, blogs, and online materials), printed awards, photographs, bumper stickers, badges, banners, and signs; educational services (workshops, classes, seminars, conferences, and later, webinars) on the topics of promoting conservative values, increasing citizen knowledge of and participation in representative government, and political advocacy related thereto; and association services, political advocacy services, political fundraising services, and political solicitation services, all related to the foregoing topics.

49.     For almost 50 years, Mrs. Schlafly held annual nationwide meetings and awards programs branded under various Eagle Family marks, distributing an eagle pin based on EAGLE DESIGN MARK #1, which she used either personally or through license to the "Eagle" entities she founded and controlled.

50.     In February 1968 (and in 1969, 1971, and 1972 thereafter), Mrs. Schlafly held her first nationwide annual meeting under the name and mark THE EAGLES ARE FLYING.

---

[3] J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460 (Fed. Cir. 1991), quoted in toto.

51.     In 1973, Mrs. Schlafly rebranded her nationwide annual meetings to EAGLE
COUNCIL, and Mrs. Schlafly—personally and through license to the Eagle Trust Fund—held
nationwide annual meetings under the EAGLE COUNCIL Mark from that date until 2015.

52.     The most recent EAGLE COUNCIL annual nationwide meeting was held by the
Eagle Trust on September 16-18, 2016, just a few days after Mrs. Schlafly's death. This was the
49th consecutive annual meeting hosted by Mrs. Schlafly or her designee under the Eagle brand
the EAGLE COUNCIL or THE EAGLES ARE FLYING.

53.     At the annual EAGLE COUNCIL meetings, Mrs. Schlafly awarded prizes
branded under the EAGLE AWARDS Mark to worthy recipients.  Dozens of EAGLE AWARDS
prizes were given in the early 1970s at the THE EAGLES ARE FLYING meetings; hundreds
more have been given at the EAGLE COUNCIL meetings in the decades since then.

54.     Mrs. Schlafly—either personally or through license to the "Eagle" entities she
founded and controlled—made continuous use of the EAGLE DESIGN MARK #1, EAGLE
DESIGN MARK #2 and PHYLLIS SCHLAFLY Marks in connection with nationwide political
fundraising and advocacy activities from 1967 until her death in 2016.

55.     From the mid-1960s until her death in 2016, Mrs. Schlafly gave thousands of
speeches and debates and made thousands of public appearances across the U.S., many of them
high profile events such as at university campuses wracked with protests.

56.     During that period, Mrs. Schlafly—either personally or through license to the
"Eagle" entities she founded and controlled—used the Eagle Family of Marks, and PHYLLIS
SCHLAFLY Marks in connection with the promotion, advertising, and presentation of these
speeches and public appearances.

57.     After *A Choice Not an Echo*, Mrs. Schlafly went on to author or edit at least another 27 books, including her most recent work, *The Conservative Case for Trump*, which was published posthumously on September 6, 2016 and debuted on the NY Times bestseller list.

58.     From 1964 to present, Mrs. Schlafly—either personally or through license to the "Eagle" entities she founded and controlled—used the EAGLE DESIGN MARK #1, EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY Marks in connection with the nationwide promotion, advertising, and distribution of her numerous books.

59.     From the 1970s through the early 2000s, Mrs. Schlafly produced and broadcast daily radio commentaries on approximately 460 radio stations nationwide, as well as a weekly radio program on at least 45 stations nationwide.

60.     Mrs. Schlafly—either personally or through license to the "Eagle" entities she founded and controlled—used the Eagle Family of Marks, and PHYLLIS SCHLAFLY Marks in connection with the promotion, advertising, and presentation of her radio commentaries and programs for more than 30 years.

61.     On account of such a wide range of goods and services, and the multiplicity of marks making up the family, as a result and of necessity, some *goods and services* were never listed in registrations and some *marks* were never registered. These rights do exist, however, as common law trademarks belonging to the person who used and controlled them, i.e. Phyllis Schlafly through her Eagle Trust.

II.     **PHYLLIS SCHLAFLY'S RIGHTS AS LICENSOR IN THE EAGLE DESIGN MARK #1, THE EAGLE DESIGN MARK#2, THE PHYLLIS SCHLAFLY MARK, AND THE PHYLLIS SCHLAFLY NAME, LIKENESS, AND IMAGE AND VARIOUS ANCILLARY MARKS**

    A.     ***Mrs. Schlafly's Founding of Eagle Forum***

62.     Significantly, in 1975, Mrs. Schlafly expanded the Eagle Family of Marks once again, this time by branding a new product, a 501(c)(4) non-profit corporation named EAGLE FORUM.  This new branding and incorporation did not in any way change the source or ownership of *The Phyllis Schlafly Report*, the EAGLE DESIGN MARK #1or #2, EAGLE COUNCIL meetings, or the prizes awarded under the EAGLE AWARDS.

63.     In short, Mrs. Schlafly adopted the EAGLE FORUM Mark to connect in the minds of the public her EAGLE FORUM activities that she was about to embark on, with her other Eagle Family of Marks activities that she had, by that time, already been providing for almost a decade, and to indicate that all Eagle House Mark goods and services emanated from the same trusted source – Mrs. Schlafly herself.

64.     Mrs. Schlafly served as CEO of the Eagle Forum (c)(4) from its founding by her in 1975 through her death in September 2016, and she maintained full control of that entity throughout that period until Counterclaim Defendants' misconduct and attempted hostile take-over.

65.     In May 1996, Mrs. Schlafly registered the "eagleforum.org" domain name through the Eagle Trust.  Soon thereafter, she used Eagle Trust employees to help her create a website for her numerous entities to provide education, political advocacy, endorsements, and information, as well as online publications related to various educational and political topics.

66.     From May 1996 until her death in September 2016, Mrs. Schlafly personally controlled the eagleforum.org domain and the website content therein.  In fact, she wrote and edited much of that content herself for 20 years.  In addition, she used the eagleforum.org domain name and website to support the numerous "Eagle" entities she founded and controlled, including without limitation Eagle Forum (c)(3), Eagle Council, Eagle Forum Collegians, and

Eagle Forum University.  Approximately 80-90% of the website content is for Eagle Forum (c)(3) and other entities, whereas less than 10% is for the benefit of Eagle Forum (c)(4) that the Defendants purport to control.

67.    From May 1996 until September 2016, Mrs. Schlafly—either personally or through license to the "Eagle" entities she founded and controlled—used the Family of Marks, including EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY Marks on and in connection with her eagleforum.org website and the provision of services thereupon.

### B.    *Mrs. Schlafly's Cultivation of the Marks' Goodwill and Value*

68.    Mrs. Schlafly—either personally and/or under license to the "Eagle" entities she founded and controlled—made widespread, extensive, nationwide use of the EAGLE DESIGN MARK #1, EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY Marks for almost 50 years.

69.    For almost 50 years, Mrs. Schlafly – either personally or under license to the "Eagle" entities she founded and controlled – used the Eagle Family of Marks, and PHYLLIS SCHLAFLY Marks to generate millions of dollars for conservative causes and candidates whom she supported.

70.    These millions of dollars were raised through numerous activities provided under the Eagle Family of Marks and PHYLLIS SCHLAFLY Marks, including without limitation, direct solicitations, Mrs. Schlafly's personal appeals, proceeds from book sales, proceeds from newsletter subscriptions, pin sales, endorsements, and event attendance fees, among others.

71.    For almost 50 years, Mrs. Schlafly—either personally or under license to the "Eagle" entities she founded and controlled—expended huge amounts of time, effort, and money to market, promote, and advertise the goods, services, and activities provided under the Eagle

Family of Marks including (but not limited to) EAGLE DESIGN MARK #1, and EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY Marks throughout the U.S., including without limitation, in print media, on radio, on television, and on the internet.

72.    For almost 50 years, Mrs. Schlafly—either personally or under license to the "Eagle" entities she founded and controlled—used the Eagle pin, based on EAGLE DESIGN MARK #1, joined with her PHYLLIS SCHLAFLY name, to raise enormous amounts of money, *viz.*, tens of millions of dollars, for political candidates and causes throughout the U.S.

73.    Because of this extensive and long-term use and promotion of goods, services, and activities with the Eagle pin and under the EAGLE DESIGN MARK#1, EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY Marks, these Marks have attained enormous goodwill throughout the U.S., have become distinctive, and have come to designate Mrs. Schlafly's unique goods, services, and activities to consumers nationwide.

74.    By virtue of the wide renown acquired by the Eagle Family of Marks and PHYLLIS SCHLAFLY Marks, and their enormous goodwill and commercial success, these Marks have become, and continue to be, well-known and famous.

75.    Beginning in 1967, Mrs. Schlafly and Eagle Trust Fund embarked upon a program to allow entities controlled by Mrs. Schlafly to use their right of publicity and intellectual property under license.

76.    At all times, Mrs. Schlafly carefully controlled the licenses, regulating the use of each mark and only licensing the entities under her control or affiliation.

C.    *Mrs. Schlafly's Registration for the EAGLE DESIGN MARK #1*

77.     On January 7, 2000, as trustee for the Eagle Trust, Mrs. Schlafly filed U.S.
Trademark Application Serial No. 76/226,565 to register the EAGLE DESIGN MARK #1



in the U.S. for use with services in Class 200.

78.     The EAGLE DESIGN MARK #1 was registered on the Principal Register of the
United States Patent & Trademark Office on January 7, 2003, under U.S. Reg. No. 2,671,224.  A
true and accurate copy of the U.S. Registration Certificate for Reg. No. 2,671,224 is attached
hereto as Exhibit A (the "EAGLE DESIGN MARK #1 Registration").

79.     A "Declaration of Incontestability" pursuant to Section 15 of the Trademark Act,
15 U.S.C. § 1065, for the EAGLE DESIGN MARK #1 was filed on January 7, 2009, and was
accepted by the U.S. Patent & Trademark Office on January 16, 2009.  A true and accurate copy
of the Section 15 Declaration of Incontestability is attached hereto as Exhibit B.

80.     EAGLE DESIGN MARK #1, and U.S. Reg. No. 2,671,224 therefor, are valid and
subsisting, and have become incontestable through five or more years of continuous use in
commerce in the U.S

81.     Until her death in 2016, all use of the EAGLE DESIGN MARK #1 made by the
Plaintiffs, as members and directors, was for the benefit of the affiliated Eagle Forum (c)(4)
entity, and was made under license from, and with the express permission of Mrs. Schlafly, who
exercised quality control over the goods and services provided thereunder and the activities
conducted thereunder, including rights to inspect and approve all of the foregoing.

82.     Mrs. Schlafly never transferred her trademark rights in or to the Eagle Design
Mark #1 to the Counterclaim Defendants.

D.    *Mrs. Schlafly's Registration for the EAGLE DESIGN MARK #2*

83.    On January 7, 2000, as trustee for the Eagle Trust, Mrs. Schlafly filed U.S. Trademark Application Serial No. 75/892,655 to register the EAGLE DESIGN MARK#2



in the U.S. for use with goods in Class 016.

84.    The EAGLE DESIGN MARK #2 Mark was registered on the Principal Register of the United States Patent & Trademark Office on October 16, 2001, under U.S. Reg. No. 2,497,754. A true and accurate copy of the U.S. Registration Certificate for Reg. No. 2,497,754 is attached hereto as Exhibit C (the "EAGLE DESIGN MARK #2 Registration").

85.    A "Declaration of Incontestability" pursuant to Section 15 of the Trademark Act, 15 U.S.C. § 1065, for the EAGLE DESIGN MARK #2 Mark was filed on October 16, 2001, and was accepted by the U.S. Patent & Trademark Office on November 6, 2007. A true and accurate copy of the Section 15 Declaration of Incontestability is attached hereto as Exhibit D.

86.    EAGLE DESIGN MARK #2 Mark, and U.S. Reg. No. 2,497,754 therefor, are valid and subsisting, and have become incontestable through five or more years of continuous use in commerce in the U.S.

87.    Until her death in 2016, all use of the EAGLE DESIGN MARK #2 Mark made by the Plaintiffs, as members and directors, was to be for the benefit of the affiliated Eagle Forum (c)(4) entity, and was made under license from, and with the express permission of Mrs. Schlafly, who exercised quality control over the goods and services provided thereunder and the activities conducted thereunder, including rights to inspect and approve all of the foregoing.

88.     Mrs. Schlafly never transferred her trademark rights in or to the EAGLE DESIGN MARK #2 Mark to the Counterclaim Defendants.

###     E.      *EAGLE FORUM mark becomes registered*

89.     In 2000, Mrs. Schlafly made efforts to register the EAGLE FORUM Mark.  Eagle Forum was allowed to be the registrant for convenience in registration, maintenance and vigilance.  As a nonprofit, Eagle Trust Fund was concerned about the extra expense of having to prove use in commerce to the USPTO through a licensee.  It also wanted to make things easier if any cease-and-desist letters had to be sent.  Eagle Forum could enforce trademark abusers in its own name without Eagle Trust Fund having to demonstrate its relationship to Eagle Forum each time. Eagle Trust Fund wanted EAGLE FORUM to carry the burden of registration, maintenance, vigilance and enforcement. At the same time, Eagle Trust Fund would carry its burden of ensuring that the licensee, Eagle Forum, maintain the same type of goods and services for which the Eagle House Mark became significant in the minds of "like-minded men and women", which type might be described as "anti-Rockefeller conservativism".

90.     In allowing Eagle Forum to apply for registration in 2000, and indeed signing the papers herself, Mrs. Schlafly did not in any way imply that Eagle Forum was not a licensee of the EAGLE FORUM mark.

###     F.      <u>*Mrs. Schlafly's Name, Image, and Likeness.*</u>

91.     Mrs. Schlafly received numerous honors for her work, including without limitation, being recognized by the U.S. Congress and being chosen as one of the 100 most influential women of the 20th century by *Ladies' Home Journal*.  She also received the honorary Doctor of Humane Letters at the 2008 commencement ceremony of Washington University.

92.     Mrs. Schlafly has also been featured over the years on numerous television programs and in a number of magazines and publications.

93.     Mrs. Schlafly's name, image, and likeness have come to be associated in the minds of the public with her political positions and philosophy.  As such, endorsements of political candidates that she made using her name, image, and likeness have come to signify to the public that the endorsee is a solid conservative who can be trusted to govern in adherence to conservative principles.

94.     More generally, Mrs. Schlafly's name, image, and likeness have come to be associated in the minds of the public with a high level of honor and integrity, and her endorsements of candidates by using her name, image, and likeness has come to signify to the public that such person will operate with integrity and honor in the public arena.

95.     For 50 years, Mrs. Schlafly invested a great deal of money, time, energy, and effort in developing her considerable political and professional image to the public.

96.     For decades, Mrs. Schlafly was highly sought after to endorse political candidates and causes using her name, likeness, and image, and for decades, she did so selectively.

97.     Mrs. Schlafly's name, likeness, and image have become widely known by a substantial portion of the U.S. public, and as such, have become, and remain, valuable commercial assets that symbolize Mrs. Schlafly; the high quality and trustworthiness of her political endorsements and other activities, goods, and services; and the goodwill associated therewith.

98.     For five decades, Mrs. Schlafly maintained strict control over the manner in which her name, likeness, and image were used.  She carefully reviewed, analyzed, selected, and

approved the endorsements, activities, goods, and services that she made, conducted, provided, and/or approved using her name, likeness, and image.

99.     To the extent that Mrs. Schlafly allowed the various Eagle entities that she founded and controlled to use her name, likeness, and image, she did so only after careful consideration, restricting such uses to endorsements, activities, goods, and services of acceptably high quality and substantively conservative content that she approved.

100.    Mrs. Schlafly, through the Eagle Trust also maintained her image and likeness through websites that she controlled, namely eagleforum.org, PhyllisSchlafly.com, and many others.

101.    Mrs. Schlafly did not permit her image and likeness to be used without her permission.

## III.  PHYLLIS SCHLAFLY'S REVOCATION OF COUNTERCLAIM DEFENDANT'S LICENSE TO USE THE EAGLE FAMILY MARKS

102.    Counterclaim Defendant Eagle Forum's license to use PSAE's marks and right of publicity has been revoked.

103.    In correspondence dated January 12, 2016, Mrs. Schlafly specifically directed Counterclaim Defendant Anne Cori "not send out anything – press release, news item, announcement re endorsements etc. without getting an OK from me," and reminded Cori that she had "declared this specific policy many months ago."

104.    Plaintiff Anne Cori ignored Mrs. Schlafly's specific admonitions by issuing unauthorized robocalls and political endorsements meant to confuse Mrs. Schlafly's supporters and the supporters of the Eagle entities.

105. After Anne Cori's repeated failures to abide by Mrs. Schlafly's express demands, Mrs. Schlafly replaced Anne Cori (whose 1-year term had expired) as president of Missouri Eagle Forum in a letter dated February 11, 2016 in favor of a loyal supporter Noreen McCann.

106. In a similar way, Mrs. Schlafly asked for Anne Cori and the other individual Counterclaim Defendant's resignations from the affiliated Eagle Forum (c)(4) board of directors on April 10, 2016.

107. Instead of acquiescing, Counterclaim Defendants attempted a hostile takeover of Eagle Forum, the validity of which the parties are currently contesting in Madison County, IL.

108. The aforesaid actions of Counterclaim Defendants thwarted Mrs. Schlafly in the very purpose for which she had chartered Eagle Forum, that is, carrying out social welfare activities according to the single vision of Mrs. Schlafly, using the contacts of Mrs. Schlafly, using the Eagle House Mark in which she had stored her goodwill, and using the hard-fought name-recognition of PHYLLIS SCHLAFLY. Time was of the essence in the matter because it was the middle of a presidential election, Plaintiffs opposed Donald Trump, Mrs. Schlafly endorsed Donald Trump, the Madison County case was not expected to be resolved for months, and 501(c)4 organizations are permitted to support candidates.

109. Mrs. Schlafly had suffered many indignities as a result of the actions of the individual six Plaintiffs. First they muted her microphone during a meeting, then she was outvoted, then she was sued *in rem*. Soon a state court judge was controlling the quality of the brand Eagle Forum and not her.

110. Thus, Mrs. Schlafly formed PSAE in July 2016, pending the resolution by the Madison County, Illinois court of the validity of Plaintiffs' hostile takeover. Thereupon Mrs.

Schlafly gave an exclusive license to the Eagle House Mark and PHYLLIS SCHLAFLY mark to

PSAE limited to the specific context and market of 501(c)4 association services.

111.     Then, to a wide audience, via a video recording posted on eagleforum.org, and in

an open letter addressed to her supporters, both dated August 16, 2016, Mrs. Schlafly formally

and expressly revoked any and all existing (oral) licenses to use the Eagle House Mark

(including EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2), and PHYLLIS

SCHLAFLY Mark that she had recently granted to PSAE, effective immediately. A true and

accurate copy of the transcript of Mrs. Schlafly's video recording is attached hereto as Exhibit E.

**IV.     COUNTERCLAIM DEFENDANTS' UNAUTHORIZED AND WRONGFUL
CONDUCT WITH RESPECT TO THE EAGLE HOUSE MARK, PHYLLIS
SCHLAFLY MARK; PHYLLIS SCHLAFLY'S NAME, IMAGE, AND LIKENESS;
AND THE SCHLAFLY DATABASE**

112.     On or around her 90th birthday, Mrs. Schlafly began executing succession

planning for her entities, namely, with the appointment of her hand-picked president, Ed Martin,

to run the day-to-day operations of Eagle Forum Education and Legal Defense Fund and the

Eagle Forum (c)(4).

113.     Mrs. Schlafly appointed Mr. Martin on or about January 1, 2015.

114.     Upon information and belief, Plaintiffs were dismissive of Mrs. Schlafly's choice

in a new president for her affiliate organizations.

115.     Upon information and belief, further fault-lines began in one of Mrs. Schlafly's

organizations, namely, the Eagle Forum (c)(4), when Mrs. Schlafly refused to endorse Senator

Ted Cruz for the GOP presidential nominee in late 2015 and early 2016.

116.     Beginning in 2016, Plaintiffs began conspiring to use the assets which PSAE

wishes to license including, without limitation, the Schlafly Database, the Eagle website, the

Eagle Brand Family including the EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK

#2, and the PHYLLIS SCHLAFLY Mark/Right of Publicity to further their own political agendas instead of supporting Mrs. Schlafly or her designees.

117.    Specifically, on or about February 1, 2016, Counterclaim Defendant Anne Cori orchestrated a robocall for Senator Cruz to help him in the Iowa presidential primary.

118.    Upon information and belief, defendant Anne Cori improperly accessed elements of the Schlafly Database using her position as then president of the Missouri Eagle Forum affiliate and as a board member of the Eagle Forum (c)(3) and Eagle Forum (c)(4) for the call.

119.    Not only was the call done without Mrs. Schlafly's consent or permission, but it was likely done inconsistent with federal election laws jeopardizing the Eagle Forum (c)(3)'s tax-exempt status.

120.    Upon information and belief, Anne Cori's misconduct in taking all or part of Schlafly Database and using it without authorization was the first time in Mrs. Schlafly's storied career that anyone had stolen from her in such a brazen act of disloyalty.

121.    In direct response, Mrs. Schlafly quietly replaced defendant Anne Cori with an unrelated, but loyal volunteer as president of Missouri Eagle Forum since Anne Cori's term had already expired.  See Letter to Anne Cori dated February 11, 2016, attached hereto as Exhibit F.

122.    Unfortunately, Anne Cori's misconduct worsened, on or about April 6, 2016, Cori and other individual Counterclaim Defendants met secretly to stage a hostile take-over of the Plaintiff Eagle Forum — an entity that Mrs. Schlafly had founded in 1975 and controlled at all times until these individuals attempted a *coup d'état*.

123.    Upon information and belief, from January 2016 to present, Defendants have purported to divvy up Mrs. Schlafly's and Eagle Trust Fund's assets, including the Schlafly

Database, eagleforum.org, PhyllisSchlafly.com—despite actual knowledge that neither the Counterclaim Defendants nor the affiliate Eagle Forum (c)(4) owned or maintained those assets.

124.    Counterclaim Defendants committed many other wrongs after gaining control of Eagle Forum.

125.    Upon information and belief, Counterclaim Defendants further lobbied local officials to prevent Mrs. Schlafly from being named as a delegate to the GOP Convention in July 2016 in a willful attempt to misappropriate the PHYLLIS SCHLAFLY brand at the GOP Convention.

126.    Upon information and belief, Defendants used the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 and the Eagle Family Brand to publically defame Mrs. Schlafly's health, fitness, and mental abilities while she was alive, including using radio interviews to disparage Mrs. Schlafly's decision-making and legacy.

127.    Upon information and belief, Defendants used Eagle Family of Marks to publicly defame Mrs. Schlafly's co-author Ed Martin and to directly interfere with the launch of her two most recent books: *The Conservative Case for Trump* and *How the Republican Party Became Pro-Life*.

128.    One or more Counterclaim Defendants attempted to break into the Eagle Trust offices and abscond with assets or intangible property, which were locked and password protected but located at the Eagle Trust offices—requiring the police to remove Anne Cori from the premises.

129.    Counterclaim Defendants are maintaining a competing Missouri Eagle Forum website, moeagleforum.org after Anne Cori's term as president expired. The website

misappropriates Mrs. Schlafly's image and likeness without her or her trusts' consent, permission, or authorization.

130.    Counterclaim Defendants are actively impersonating and sending out competing Missouri Eagle Forum solicitations.

131.    Counterclaim Defendants scheduled an unauthorized event under the guise of Missouri Eagle Forum for October 10, 2016. The postal address for sending payments to this purported Missouri Eagle Forum event was Ms. Cori's home address using the moniker "MO Eagle Forum."

132.    In affidavits or other sworn statements, Counterclaim Defendants have mistakenly or falsely asserted rights, titles, or interest in trademarks or other intellectual property, namely the Eagle Forum name that was used by Mrs. Schlafly and owned by Mrs. Schlafly (now Schlafly Revocable Trust) before the formation of the affiliate Eagle Forum (c)(4) entity.

133.    In affidavits or other sworn statements, Counterclaim Defendants have mistakenly or falsely asserted rights, title, or an interest in trademarks or other intellectual property belonging to Plaintiffs, in an effort to prevent non-party Phyllis Schlafly's American Eagles from using the EAGLE DESIGN MARK #1, EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY Marks with the Schlafly Revocable Trust's express permission.

134.    Over the objections of Mrs. Schlafly and John Schlafly, Defendants held unauthorized, ultra vires meetings of the Eagle Forum 501(c)(4) Board of Directors and have since instituted litigation against Eagle Forum (c)(4), John Schlafly, and Ed Martin, and are purporting to own or control assets belonging to PSAE.

135.    For the first time in its proceedings (which began as an effort to ratify a certain board meeting in April 2016), Counterclaim Defendants are contending or implying that they

own all or a portion of the Schlafly Database, its mailing lists, and are asserting ownership of the Eagle pins, EAGLE DESIGN MARK #1, EAGLE DESIGN MARK #2, the Eagle Family of Marks in general and the PHYLLIS SCHLAFLY Marks, and the eagleforum.org and PhyllisSchlafly.com websites (and more than 50 other websites), which creates an immediate risk and present cloud on Plaintiffs' title and rights.

136.    These unauthorized and false statements by Counterclaim Defendants also demonstrate present intent, as well as harm to Plaintiffs' and further demonstrate a willful interference with Plaintiffs' exclusive ownership rights.

137.    The words EAGLE FORUM have also been used by the Illinois not-for-profit corporation EAGLE FORUM EDUCATION AND LEGAL DEFENSE FUND, both as the full moniker and in shortened form as EAGLE FORUM.

138.    When Mrs. Schlafly realized that her effective control over the Eagle Family of Marks had been usurped, and that the quality of the goods and services offered under the EAGLE DESIGN MARK #1 Marks was being diluted and tarnished, and that consumers were being deceived to believe that goods and services were emanating from her as a source when in fact they were not, she founded PSAE as stated in the Complaint.

139.    When Mrs. Schlafly realized that Eagle Forum was not keeping current with the Trump agenda and would find itself on the outside of the mainstream of donors to conservative causes and outside of the corridors of power in the succeeding Trump presidency, she founded PSAE. She then mailed a letter to donors emphasizing trade, sovereignty, immigration, border control and Americans First.  (See Exhibit G).

140.    PSAE was a "life raft" wherein the movement represented by the Eagle House Mark could avoid a fatal loss of credibility, pending the hoped-for reassertion of Phyllis Schlafly and her handpicked successors as controllers of the Eagle Forum C4.

141.    Mrs. Schlafly's foundation of PSAE was not done in a manner which impeded any legitimate right of Plaintiff Eagle Forum, but instead was done in pursuit of her First Amendment right of free speech, fair competition in the marketplace of ideas, and to uphold her duty to the Eagle Family of Marks to reestablish the quality of the EAGLE House Mark after Counterclaim Defendants thwarted her attempt to police her own brand by muting her microphone in the meeting and blatantly ignoring Mrs. Schlafly's demands.

142.    As soon as PSAE was founded, Counterclaim Defendants began to interfere in the relationship between Mrs. Schlafly/PSAE and the consuming public, by issuing public communications to the effect that Mrs. Schlafly was still actively shepherding the 501(c)(4) Non-Profit Corporation, or in the alternative, that Mrs. Schlafly's formation and involvement in PSAE was because she was *non-compos mentis* and subject to undue influence.

143.    All copyrights, including the right to publicly broadcast video tapes of Phyllis Schlafly speeches (a mix of copyright and right of publicity), was revoked, at the latest, on August 15, 2016, by the videotaped message of Phyllis Schlafly.

144.    Not one of the six Individual Counterclaim Defendants, nor Eagle Forum itself, has sought the proper permission from either Mrs. Schlafly herself or her successors in interest to use the Eagle Family Marks.

145.    Through repeated mailings and events, and deliberate conflation of Phyllis Schlafly's historical role in Eagle Forum with a present (and now posthumous) endorsement, Counteclaim Defendants have willfully deceived the public to believe that Plaintiffs' goods and

services presently consist of anything other than the legacy and brain trust of *those six individuals* and the "Jane Does" who assist.

146.    In March 2017, Plaintiff Eagle Forum staged an event in Naples Florida in which Plaintiff used Eagle Family of Marks branding and Phyllis Schlafly branding in a manner deliberately intended to confusion-siphon patrons from an event Defendant had planned in the same location and during the same timeframe.

147.    These deceits have damaged Defendant in readership, donations and myriad other ways.

## COUNT I

### (TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. § 1125(A))

148.    PSAE repeats and re-alleges Paragraphs 1 through 147 above as if fully set forth herein.

149.    Through her long-term, extensive, widespread, and nationwide use and promotion of the Eagle Family of Marks and PHYLLIS SCHLAFLY Marks for almost 50 years as set forth herein, Mrs. Schlafly owned all right, title, and interest therein and thereto during her lifetime.

150.    Through assignments and upon Mrs. Schlafly's death on September 5, 2016, all right, title, and interest in and to the Eagle Family of Marks and PHYLLIS SCHLAFLY Marks passed to PSAE's Licensors.

151.    PSAE's Licensors own all right, title, and interest in and to the Eagle Family of Marks and PHYLLIS SCHLAFLY Marks, and Phyllis Schlafly's name, image, and likeness.

152.    Counterclaim Defendants's conduct as set forth herein, including without limitation their unauthorized use and misappropriation of (i) the Eagle Family of Marks and PHYLLIS SCHLAFLY Marks; and (ii) Phyllis Schlafly's name, image, and likeness for political

fundraising, the arrangement and organization of meetings and forums, and the provision of political endorsements and advertisements, among other unauthorized activities, is likely to cause confusion or mistake among donors, potential donors, and the public, or to deceive donors, potential donors, and the public, as to an ongoing affiliation, association, or connection between Counterclaim Defendants and PSAE when no such ongoing affiliation, association, or connection exists.

153.    Counterclaim Defendants' conduct as set forth herein is likely to cause confusion or mistake among donors, potential donors, and the public, or to deceive donors, potential donors, and the public, into believing that Counterlcaim Defendants' goods, services, and activities originate with PSAE, or that they are associated with or sponsored or approved by PSAE, when in fact no such association, approval, or sponsorship exists.

154.    Counterclaim Defendants' conduct as set forth herein constitutes trademark infringement, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

155.    PSAE has been and will continue to be damaged by Counterclaim Defendants' conduct as set forth herein, and Counterclaim Defendants have profited and continue to profit from their unauthorized activities. Unless Counterclaim Defendants are enjoined by this Court, Counterclaim Defendants will continue their unauthorized conduct, and PSAE's non-profit business, and their goodwill and reputation therein, will suffer irreparable harm.

156.    PSAE have been and continue to be damaged by Counterclaim Defendants' conduct as set forth herein, and Counterclaim Defendants have profited and continue to profit from their unauthorized activities. As such, pursuant to 15 U.S.C. § 1117, PSAE are entitled to

recover damages including without limitation, their actual damages, Counterclaim Defendants' profits, and the costs of this case.

157.    All conditions precedent have been met before filing this action.

158.    PSAE have incurred substantial legal fees and costs and are obligated to pay the undersigned for the prosecution of this action and protection of their rights.

159.    Counterclaim Defendants' conduct as set forth herein is willful, wanton, intentional, and undertaken in bad faith, making this an exceptional case pursuant to 15 U.S.C. § 1117, and entitling PSAE to recover treble damages and attorneys' fees thereunder.

## COUNT II

### (CANCELLATION OF PLAINTIFF'S REGISTRATION)

160.    PSAE repeats and realleges paragraphs 1 through 147 hereof, as if fully set forth herein.

161.    Eagle Forum's acts and/or omissions have caused said trademark to become abandoned and no longer valuable as a source identifier.

162.    PSAE is likely to be damaged by the continued registration of Plaintiff Eagle Forum's U.S. Trademark Registration No. 2475317 for EAGLE FORUM in CL 16, 41 in that said registration is being asserted against its right to use PHYLLIS SCHLAFLY'S AMERICAN EAGLES.

163.    By reason of the foregoing, Trademark Registration No. 2475317 should be cancelled pursuant to Lanham Act § 37 (15 U.S.C. § 1119 & § 1064).

## COUNT III

### (FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. § 1114(1))

164.    PSAE repeats and re-alleges Paragraphs 1 through 147 above as if fully set forth herein.

165.    PSAE's Licensors own all right, title, and interest in and to the Eagle Family of Marks and Phyllis Schlafly trademark and right of publicity and have exclusively licensed same to PSAE.

166.    Upon information and belief, as a result of third party use of the EAGLE FORUM mark, consumers do not associate the EAGLE FORUM mark with a single source and EAGLE FORUM is not and cannot function as a trademark.

167.    Counterclaim Defendant Eagle Forum has permitted the use of the trademark EAGLE FORUM, and other substantially similar marks thereof, by Eagle Forum Education and Legal Defense Fund, an entity with its own Board of Directors, without the benefit of a license agreement or other effective control.

168.    Counterclaim Defendant Eagle Forum has permitted the use of the trademark EAGLE FORUM, and other substantially similar marks thereof, by Eagle Trust Fund, an entity controlled by trustees, none of whom have been Eagle Forum, without the benefit of a license agreement or other effective control.

169.    Upon information and belief, Counterclaim Defendant Eagle Forum has a bare registration but no ownership rights in the term EAGLE FORUM.

170.    Therefore, the trademark EAGLE FORUM should be cancelled and expunged from the Principal Register as maintained by the Director of Trademarks, U.S. Patent and Trademark Office pursuant to the Court's power under Lanham Act § 37 (15 U.S.C. § 1119).

171.    PSAE's exclusive license and use of the mark EAGLE DESIGN #1 for "indication of membership in a national association" has priority over EAGLE FORUM'S mark

for the related "association services". because PSAE's licensor's first-use date of July 1967 predates the filing date of Eagle Forum's application for Registration No. 2475317 or any other date on which Eagle Forum may rely for purposes of priority.

172.    PSAE's exclusive license and use of the mark EAGLE DESIGN #2 for publications (including awards) has priority over EAGLE FORUM'S mark for same because PSAE's licensor's first-use date of May 1967 predates the filing date of Eagle Forum's application for Registration No. 2497754 or any other date on which Eagle Forum may rely for purposes of priority.

173.    Thus the services covered by Counterclaim Defendant Eagle Forum's single Trademark Registration are nearly identical to PSAE's.

174.    Counterclaim Defendant Eagle Forum's mark is confusingly similar to PSAE's Mark.

175.    Counterclaim Defendant Eagle Forum's registration should be cancelled because it consists of or comprises a mark which so resembles PSAE's Licensors' registered Mark as to be likely, when used in connection with its goods and services, to cause confusion, mistake, or deception within the meaning of 15 U.S.C. § 1052(d), and to cause damage to PSAE thereby.

176.    Counterclaim Defendants' unauthorized use, as set forth herein, of an Eagle mark that is substantially indistinguishable from PSAE's Licensors' registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 and PSAE's Licensors' goodwill in said marks/rights misappropriates that goodwill and the reputation which has attached to them and is associated with and symbolized by them.

177.    Counterclaim Defendants' unauthorized use, as set forth herein, of the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 has confused, and will likely

continue to confuse donors, potential donors, and the public into erroneously believing that Counterclaim Defendants and their goods, services, and activities are associated or affiliated with, and/or are sponsored by, PSAE when indeed they are not.

178.    Counterclaim Defendants' unauthorized use and copying of the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 constitutes use in commerce of a reproduction, counterfeit, copy, and/or colorable imitation of the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2, in connection with the sale, offering for sale, distribution, and advertising of PSAE' goods and services.

179.    Counterclaim Defendants' unauthorized use and copying of the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 is likely to cause confusion and mistake, and/or has already caused consumer confusion or mistake, and is likely to deceive donors, potential donors, and the public.

180.    Counterclaim Defendants' unauthorized use and copying of the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 constitutes trademark infringement and counterfeiting under 15 U.S.C. § 1114(1).

181.    Counterclaim Defendants have been, and continue to be, damaged by Counterclaim Defendants' unauthorized use and copying of the registered EAGLE DESIGN MARK #1 and EAGLE DESIGN MARK #2 as set forth herein.  Counterclaim Defendants have profited by such unauthorized use and copying, and unless it is enjoined, PSAE's non-profit businesses, and their goodwill and reputation therein, will suffer irreparable injury.

182.    PSAE is entitled to injunctive relief under 15 U.S.C. §1116(a) as there is no adequate remedy at law to fully redress Defendants' unlawful misconduct.

183.    As a family member or insiders to the affiliate Eagle Forum (c)(4), or both, Counterclaim Defendants' unauthorized use and copying as set forth herein is willful, wanton, intentional, and undertaken in bad faith, making this an exceptional case pursuant to 15 U.S.C. § 1117 and entitling PSAE to recover treble damages, additional damages, and attorneys' fees under 15 U.S.C. § 1117.

## COUNT IV

### (VIOLATION OF RIGHTS OF PUBLICITY UNDER ILLINOIS COMMON LAW)

184.    PSAE repeats and re- alleges Paragraphs 1 through 147 above as if fully set forth herein.

185.    Prior to Phyllis Schlafly's death on September 5, 2016, she or her controlled designees owned all right, title, and interest in and to the Phyllis Schlafly Name and Likeness (also known as the Phyllis Schlafly trademark and right of publicity).

186.    All right, title, and interest in and to the Phyllis Schlafly Name and Likeness passed to PSAE by assignment dated August 31, 2016 and by operation of law.

187.    Counterclaim Defendants have made, and continue to make, unauthorized use of the Phyllis Schlafly Name and Likeness for numerous purposes, including without limitation for political fundraising, for the arrangement and organization of meetings and forums, and for the provision of political endorsements and advertisements.

188.    Counterclaim Defendants' unauthorized use of the Phyllis Schlafly Name and Likeness was made both before Mrs. Schlafly's death on September 5, 2016, as well as thereafter.

189.    Counterclaim Defendants' unauthorized use of the Phyllis Schlafly Name and Likeness was made without the consent of Mrs. Schlafly, and in fact, was made against, and in spite of, Mrs. Schlafly's express wishes and directives not to use her name and likeness.

190.    Counterclaim Defendants continue to make unauthorized use of the Phyllis Schlafly Name and Likeness without the consent of PSAE.

191.    Counterclaim Defendants' unauthorized use of the Phyllis Schlafly Name and Likeness was made with the intent to claim commercial advantage.

192.    Indeed, upon information and belief, Counterclaim Defendants have claimed and obtained commercial advantages by virtue of their unauthorized use of the Phyllis Schlafly Name and Likeness as set forth herein.

193.    PSAE has been and will continue to be damaged by Counteclaim Defendants' unauthorized use and exploitation of the Phyllis Schlafly Name and Likeness, and  Counterclaim Defendants have profited commercially and otherwise from these activities. Unless Counterclaim Defendants are enjoined by this Court, they will continue their unauthorized activities, and PSAE's non-profit business, and their goodwill and reputation therein, will suffer irreparable harm.

194.    Counterclaim Defendants' unauthorized use and exploitation of the Phyllis Schlafly Name and Likeness has caused, and will continue to cause, commercial loss to Defendant as exclusive licensee in their category of goods and services related to the functioning of a 501(c)4.  Further, Counterclaim Defendants' unauthorized use and exploitation of the Phyllis Schlafly Name and Likeness has allowed, and if not enjoined will continue to allow, Counterclaim Defendants to make unjust commercial gains.  As such, PSAE is  entitled to

recover damages, including without limitation, their actual damages, Counterclaim Defendants' profits, and the costs of this case.

195.    All conditions precedent have been met before filing this action.

196.    PSAE has incurred substantial legal fees and costs and are obligated to pay the undersigned for the prosecution of this action and protection of its rights.

## COUNT V

### (TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER 765 ILL. COMP. STAT. 1036/60 AND ILLINOIS COMMON LAW)

197.    PSAE repeats and re-alleges Paragraphs 1 through 147 above as if fully set forth herein.

198.    PSAE has a proprietary interest in and to the Eagle Family of Marks, the PHYLLIS SCHLAFLY Marks, and the Phyllis Schlafly Name and Likeness, as exclusive licensee in its category.

199.    Counterclaim Defendants' conduct as set forth herein, including without limitation their unauthorized use and misappropriation of the Eagle Family of Marks including (but not limited to) EAGLE DESIGN MARK #1, and EAGLE DESIGN MARK #2, and PHYLLIS SCHLAFLY and the Phyllis Schlafly Name and Likeness for political fundraising, the arrangement and organization of meetings and forums, and the provision of political endorsements and advertisements, is likely to cause confusion or mistake among donors, potential donors, and the public, or to deceive donors, potential donors, and the public, as to an ongoing affiliation, association, or connection between PSAE and Counterclaim Defendants, when no such ongoing affiliation, association, or connection exists.

200.    Counterclaim Defendants' conduct as set forth herein is likely to cause confusion or mistake among donors, potential donors, and the public, or to deceive donors, potential

donors, and the public, into believing that Counterclaim Defendants' non-profit organizations and activities, and the goods and services offered thereunder, originate with PSAE, or that they are associated with or sponsored or approved by PSAE, when in fact no such association, approval, or sponsorship exists.

201.    Counterclaim Defendants' conduct as set forth herein constitutes trademark infringement and unfair competition in violation of 735 Ill. Comp. Stat. 1036/60 and Illinois common law.

202.    As a direct result of Counterclaim Defendants' conduct as set forth herein, PSAE, has suffered, and will continue to suffer, irreparable harm to its non-profit business, and its goodwill and reputation therein, unless Counterclaim Defendants' conduct is immediately enjoined by this Court under 765 Ill. Comp. Stat. 1036/65, 1036/70.

203.    Counterclaim Defendants' conduct as set forth herein has caused, and will continue to cause, injury to PSAE, and as such, PSAE is entitled to recover damages, including without limitation, their actual damages, Counterclaim Defendants' profits, the costs of this case, and, as Counterclaim Defendants' conduct as set forth herein has been done with knowledge or bad faith, reasonable attorney's fees under 765 Ill. Comp. Sta. 1036/70.

204.    As a family member or insiders to the affiliate Counterclaim Defendant Eagle Forum (c)(4), or both, Counterclaim Defendants' conduct as set forth herein has been willful, deliberate, wanton, intentional, and undertaken in bad faith for greed or lucre- or at the very least, recklessly indifferent to PSAE' rights - thereby entitling PSAE to punitive damages.

## COUNT VI

**(Declaratory Judgment regarding Validity and Effect of License, 28 U.S.C. § 2201)**

205.    PSAE repeats and re-alleges Paragraphs 1 through 147 above as if fully set forth herein.

206.    An actual controversy exists between the parties as to the validity and/or effect of certain licenses received by PSAE.

207.    Upon information and belief, the validity of the trademarks owned by non-party licensor Eagle Trust Fund in and to EAGLE DESIGN MARK #1 design RN 2497754 in Class 16, EAGLE DESIGN MARK#1 design RN 2671224 in Class 200 and to common-law rights burnished in the 1960s and early 70s (collectively the "Eagle Family of Marks") and/or the validity of the license in and to these marks granted by said non-party to PSAE is being contested by Counterclaim Defendants in this litigation and other litigation.

208.    PSAE's exclusive license and use of the mark EAGLE DESIGN #1 for "indication of membership in a national association" has priority over EAGLE FORUM'S mark for the related "association services". because PSAE's Licensors' first-use date of July 1967 predates the filing date of Counterclaim Defendant Eagle Forum's application for Registration No. 2475317 or any other date on which Eagle Forum may rely for purposes of priority.

209.    PSAE's exclusive license and use of the mark EAGLE DESIGN #2 for publications (including awards) has priority over Counterclaim Defendant Eagle Forum's mark for same because PSAE's licensor's first-use date of May 1967 predates the filing date of Counterclaim Defendant Eagle Forum's application for Registration No. 2475317 or any other date on which Eagle Forum may rely for purposes of priority.

210.    Thus the services covered by Counterclaim Defendant Eagle Forum's single Trademark Registration are nearly identical to PSAE's.

211.    Counterclaim Defendant Eagle Forum's mark is confusingly similar to PSAE's Mark.

212.    Counterclaim Defendant Eagle Forum's registration should be cancelled because it consists of or comprises a mark which so resembles PSAE's licensor's registered Mark as to be likely, when used in connection with its goods and services, to cause confusion, mistake, or deception within the meaning of 15 U.S.C. § 1052(d), and to cause damage to PSAE thereby. See Lanham Act § 37 (15 U.S.C. § 1119).

213.    An actual controversy exists between the parties as to the invalidity of the EAGLE FORUM mark.

214.    Upon information and belief, as a result of third party use of the EAGLE FORUM mark, consumers do not associate the EAGLE FORUM mark with a single source and EAGLE FORUM is not and cannot function as a trademark.

215.    Upon information and belief, counterclaim-defendant has a bare registration but no ownership rights in the term EAGLE FORUM.

216.    Therefore, the trademark EAGLE FORUM should be cancelled and expunged from the Principal Register as maintained by the Director of Trademarks, U.S. Patent and Trademark Office pursuant to the court's power under Lanham Act § 37 (15 U.S.C. § 1119).

217.    As a result, an actual, present, and justiciable controversy has arisen between Counterclaim Defendants and PSAEs concerning Counterclaim Defendants' legal rights, title, or interests in the alleged EAGLE FORUM mark.

218.    Counterclaim Defendants, by alleging in their First Amended Complaint that the EAGLE FORUM mark can be used to supersede the rights of PSAE, despite PSAE having received this license, or in the alternative that the marks EAGLE FORUM and PHYLLIS

SCHLAFLY'S AMERICAN EAGLES are likely to be confused, despite the obvious vast difference in appearance and meaning, creates a cloud concerning the effect of said license, causing commercial disruption to PSAE which can only be cleared up by a declaratory judgment from the Court.

<u>COUNT  VII</u>

**(Declaratory Judgment regarding Right of Publicity and Trademark of PHYLLIS SCHLAFLY)**

219.    PSAE repeats and re-alleges Paragraphs 1 through 147 above as if fully rewritten herein.

220.    An actual controversy exists between the parties as to which party has the right to use the Right of Publicity and Trademark of PHYLLIS SCHLAFLY.

221.    Counterclaim Defendants have alleged that by virtue of the fact "that Eagle Forum has, at all times, been referred to as 'Phyllis Schlafly's Eagle Forum' on newsletters, pamphlets and correspondence disseminated by Eagle Forum" that Eagle Forum has a proprietary interest in the name Phyllis Schlafly and that as a result "even the name 'Phyllis Schlafly's American Eagles' is itself strategically designed to mislead" (Am. Pet. ¶ 44).

222.    This creates a cloud concerning the Right of Publicity and Trademark of PHYLLIS SCHLAFLY, causing commercial disruption to PSAE which can only be cleared up by a declaratory judgment from the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant Phyllis Schlalfy's American Eagles prays for relief as follows against all Counterclaim Defendants, jointly and severally:

1.      A permanent injunction enjoining Counterclaim Defendants from using or otherwise misappropriating the Eagle Family of Marks and Phyllis Schlafly trademark and right of publicity ; (b) a temporary and permanent injunction enjoining Counterclaim Defendants from using and/or otherwise misappropriating the Eagle Family of Marks and Phyllis Schlafly trademark and right of publicity (c) damages for actual losses and Counterclaim Defendants' profits, pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial but in excess of $75,000.00, exclusive of interest; and (d) attorneys' fees, costs, and treble damages pursuant to 15 U.S.C. § 1117;

2.      A permanent injunction enjoining Counterclaim Defendants from further unauthorized use and copying of the Eagle Family of Marks and Phyllis Schlafly trademark and right of publicity pursuant to 15 U.S.C. § 1116(a); (b) compensatory damages in an amount to be proven at trial but in excess of $75,000.00, exclusive of interest; and (c) attorneys' fees, costs, and treble damages pursuant to 15 U.S.C. § 1117;

3.      A permanent injunction enjoining Counterclaim Defendants from making and continuing to make unauthorized use of the Eagle Family of Marks and Phyllis Schlafly trademark and right of publicity; and (b) damages for actual losses, costs, and Counterclaim Defendants' unjust enrichment, in an amount to be proven at trial, but in excess of $75,000.00, exclusive of interest; (c) required tender (or removal) of any and all websites using Phyllis Schlafly's image, likeness, or any of the affiliated Eagle Marks.

4.      A permanent injunction enjoining Counterclaim Defendants from making and continuing to make unauthorized use and misappropriation of the Eagle Family of Marks and Phyllis Schlafly trademark and right of publicity and (b) damages for actual losses, costs, and

Counterclaim Defendants' unjust enrichment, in an amount to be proven at trial, but in excess of $75,000.00, exclusive of interest; and

5.      An order directing Counterclaim Defendant Plaintiff Eagle Forum to cancel with prejudice any and all of its registrations for the mark EAGLE FORUM or any mark consisting of, incorporating or containing any of PSAE's Licensors' Eagle Family of or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry and drop all currently pending oppositions.

6.      An order directing the Director of Trademarks, U.S. Patent and Trademark Office, to remove all obstacles to the trademark applications for EAGLE COUNCIL, EAGLE AWARDS, EAGLE TRUST, EAGLE TRUST FUND and PHYLLIS SCHLAFLY and declare Defendant's licensors, Eagle Trust Fund and (in the case of the last) the Phyllis Schlafly Revocable Trust as the true and rightful owners of said trademark rights throughout the United States.

7.      And, for all counts, such other relief as may be just and proper.

RIEZMAN BERGER, P.C.

By: */s/ Nelson L. Mitten*
Nelson L. Mitten, IBN 6185899
Paul A. Grote, IBN 6307831
7700 Bonhomme, 7th Floor
St. Louis, Missouri  63105
(314) 727-0101 (phone)
(314) 727-6458 (facsimile)
nlm@riezmanberger.com
pag@riezmanberger.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on May 4, 2017, which will send notice to all counsel of record.

_____/s/ Nelson L. Mitten_____