THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, an Illinois Not for Profit Corporation, et al., | ) ) ) |
| Plaintiffs/Counterclaim Defendants, | ) ) ) Cause No. 3-16-cv-946-DRH- RJD |
| v. | ) ) ) |
| PHYLLIS SCHLAFLY'S AMERICAN EAGLES, a Virginia Not for Profit Corporation, | ) ) ) |
| Defendant/Counterclaimant. | ) |

**DEFENDANT PHYLLIS SCHLALFLY'S AMERICAN EAGLES' MEMORANDUM IN SUPPORT OF PRIVILEGE**

Defendant Phyllis Schlafly's American Eagles ("PSAE") and Eagle Trust Fund ("ETF"), pursuant to the Honorable Magistrate Judge Roena J. Daly's October 19, 2019 Order (Document # 97), hereby files this Memorandum in support of its assertion that certain documents requested by Plaintiffs Anne Cori, et al. ("Individual Plaintiffs") are privileged, and requests that this Court hold that these documents are privileged and should not be disclosed.

**Procedural History**

As this Court is fully aware, this case and others involves a struggle over various tangible and intellectual property rights created by the late Phyllis Stewart Schlafly. This fight over the legacy of Phyllis Schlafly has led to a series of lawsuits brought in separate jurisdictions between various parties and entities. Individual Plaintiffs in this case began first by filing an action in the Circuit Court of Madison County against Defendants John Schlafly and Ed Martin and which named Plaintiff Eagle Forum as a nominal Defendant. Exhibit 1, Complaint in *Cori, et al., v. Martin, et al.*, Madison County Circuit Court No. 2016 MR 000111, filed April 22, 2016 (hereinafter referred to as "*Cori v. Martin*"). In *Cori v. Martin* the Individual Plaintiffs sought, *inter alia*, the removal of Mr.

Martin as the President of Eagle Forum, and injunctive relief essentially prohibiting both Mr. Martin and John Schlafly from access to the property of Eagle Forum. In addition to this this relief, the Individual Plaintiffs stated that at a Board Meeting for Eagle Forum held by the Individual Plaintiffs on April 11, 2016, they passed a resolution which stated as follows:

> i. that neither the Runnymede Law Group, nor any other law firm, has been engaged to represent the Eagle Forum 501(c)(4):
>
> ii. that [Eunie] Smith shall advise the Runnymede Law Group that it does not represent the Eagle Forum 501(c)(4) and that it shall not hold itself out to any third party as the Eagle Forum 501(c)(4)'s legal counsel;
>
> iii. that only the Eagle Board shall have the authority to engage legal counsel to represent the Eagle Forum 501(c)(4).

Ex. 1, Complaint in *Cori v. Martin* at ¶ 48. Eagle Forum (c)(4), originally named in *Cori v. Martin* as the nominal Defendant, is the current Plaintiff in this case. Eunie Smith is a party plaintiff in both *Cori v. Martin* and in this case. The Individual Plaintiffs sought declaratory relief in *Cori v. Martin* that the resolution referred to above was valid. Ex. 1, Complaint in *Cori v. Martin* at p. 33.

Runnymede Law Group, through Steve Clark, entered and represented Eagle Forum in *Cori v. Martin*. The Individual Plaintiffs did not seek removal or disqualification of Runnymede as counsel for Eagle Forum.

The Individual Plaintiffs in *Cori v. Martin* later sought and obtained leave to file a First Amended Complaint naming as additional defendants Andrew L. Schlafly, Kathleen Sullivan, The Estate of Phyllis Schlafly, Eagle Trust Fund, and Eagle Forum Education and Legal Defense Fund. Ex. 3, First Amended Complaint in *Cori v. Martin*. The First Amended Complaint alleges activities on the part of all Defendants going back to the first quarter of 2017.

*Cori v. Martin* was removed to this Court after the filing of the First Amended Complaint. *Cori v. Martin*, USDC-SDIll. Cause No. 3:17-cv-00590-DRH-RJD. Eagle Trust Fund and EFELDF have now filed a Counterclaim against the plaintiffs in this case alleging, *inter alia*, copyright and trademark violations. Ex. 2, Counterclaim in *Cori v. Martin*.

The Individual Plaintiffs in *Cori v. Martin* then brought this instant derivative action against Defendant Phyllis Schlafly's American Eagles ("PSAE"). At the time of the filing of this suit the Board of Directors of PSAE included the now late Phyllis Schlafly, Kathleen Sullivan, Ed Martin, John Schlafly, and Andrew Schlafly.

The Individual Plaintiffs also named Eagle Forum as a nominal defendant in this case. As the actions of the Individual Defendants at that time was adverse to Eagle Forum, Mr. Martin and John Schlafly sought the services of Runnymede Law Group to represent Eagle Forum in this case. Runnymede indicated its intent to withdraw as counsel for Eagle Forum. Mr. Martin and Mr. Schlafly then retained SmithAmundsen to represent Eagle Forum on October 7, 2017. Prior to October 20, 2017, SmithAmundsen only took actions at the direction of Mr. Martin and John Schlafly. However, after the entry of a Temporary Restraining Order in *Cori v. Martin,* SmithAmundsen ceased communications with Mr. Martin and John Schlafly and, upon information and belief, began taking instruction from the Individual Plaintiffs in this case. Subsequently, and in the face of a Motion to Dismiss challenging the right of the Individual Plaintiffs to bring a derivative action against a not-for profit organization in the State of Illinois, Eagle Forum realigned itself as a party plaintiff in this action.

After the filing of *Cori v. Martin* and *PSAE Case*, The Phyllis Schlafly Revocable Trust and Eagle Trust Fund ("ETF") brought a suit in the U.S.D.C. for the Eastern District of Missouri against the Individual Plaintiffs in this case, along with Jane and John Does. Ex. 4, Complaint in *Phyllis Schlafly Revocable Trust, et al., v. Anne Cori*, et al., USDC-EDMo. Cause No. 4:16-cv-

01631(hereafter "*PSRT v. Cori*"). The Complaint was later amended to include Eagle Forum Education and Legal Defense Fund ("EFELDF") as a plaintiff and Eagle Forum as a defendant. The trustees for the Phyllis Schlafly Revocable Trust currently are John Schlafly and Bruce Schlafly, and prior to her death, Phyllis Schlafly. Since January, 2016, the Board of Directors for EFELDF included, among others, the late Phyllis Schlafly, John Schlafly, and Bruce Schlafly. In October of 2016, Individual Plaintiff Anne Cori was removed as member of the Board of Directors of EFELDF and Ned Pfeifer was added, along with Kitty Werthmann.

In January, 2017 Andrew Schlafly brought an action against Eagle Forum and the Individual Plaintiffs in the Circuit Court of St. Louis County, Missouri, which was then removed to the USDC for the Eastern District of Missouri. *Schlafly v. Eagle Forum, et al.*, St. Louis County, Missouri, Circuit Court Cause No. 17SL-CC00259, and USDC-EDMo. Cause No. 4:17-CV-00283-JAR.

Finally, Plaintiff Anne Cori has brought an action in the Circuit Court of St. Louis County, Missouri, alleging that the defendants in that case asserted undue influence over the late Phyllis Schlafly as to her trusts and will, and that Ms. Schlafly lacked the requisite capacity to execute certain documents relating to her estate planning. These named defendants include John Schlafly, Bruce Schlafly, Andrew Schlafly, Liza Forshaw,

Based upon the litigation filed to date, it is clear that the following individuals in Group 1 are adverse to the individuals and entities in Group 2:

| Group 1 | Group 2 |
|---|---|
| Anne Cori | John Schlafly |
| Eunie Smith | Andrew Schlafly |
| Cathie Adams | Bruce Schlafly |
| Carolyn McLarty | Ed Martin |
| Rosina Kovar | Eagle Trust Fund |
| Shirley Curry | Eagle Forum Education and Legal Defense Fund |
| | The Phyllis Schlafly Revocable Trust |
| | Phyllis Schlafly's American Eagles |
| | Kathleen Sullivan |
| | Ned Pfeifer |
| | Liza Schlafly Forshaw |

Various law firms have represented the parties identified in Group 2, including Riezman Berger, P.C. (PSAE, EFELDF, Eagle Trust Fund, John Schlafly, Ed Martin, Phyllis Schlafly, the Estate of Phyllis Schlafly, and Kathleen Sullivan); Graves Garrett, LLC (EFELDF and Eagle Trust Fund); Heyl, Royster, Voelker & Allen, P.C. (Ed Martin and John Schlafly); Roetzel & Andress, LPA and Rhodes McKee(Phyllis Schlafly Revocable Trust, Eagle Trust Fund, and Kathleen Sullivan); Armstrong Teasdale, LLP (Phyllis Schlafly Revocable Trust and Eagle Trust Fund); Craney Law Group, LLC(Eagle Trust Fund); Paule Camazine & Blumenthal, P.C. (Phyllis Schlafly and the Estate of Phyllis Schlafly); and Andrew Schlafly. The emails and documents identified on the privilege are between parties and counsel representing one or more entities identified above as parties to the litigation, with the exception of Roger Schlafly.

Roger Schlafly was very much involved in advising his mother Phyllis Schlafly, including the setting up and maintaining the databases, web sites, mailing lists, accounting programs, and other computer programs. Ex. 5, Declaration of Roger Schlafly. He advised lawyers concerning these matters during the course of this litigation. Id.

All documents identified on the privilege log are deemed to be subject to the attorney-client privilege, and if so indicated, the work product privilege. Certain documents identified, such as pleadings, may be deemed to be only work product, but as these were forwarded to clients were included as both.

## LAW AND ANALYSIS

### Choice of Law

"In federal courts, except when state law supplies the applicable rule of law, the attorney-client privilege is 'governed by the principles of the common law as [it] may be interpreted by the courts of the United States in the light of reason and experience.'" *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007) (citing to Fed. R. Evid. 501). Thus, when a matter is before a federal court pursuant to federal question jurisdiction, federal law covers discovery disputes while in diversity actions, the state law controls the application of privilege. *Ocean Atlantic Dev. Corp. v. Willow Tree Farm, L.L.C.*, 2002 WL 1968581, at *2 (N.D. Ill. 2002). Since Plaintiffs are alleging violations of federal statutes, federal common law governs privilege.[1]

### Common Interest Doctrine

It is the position of Eagle Trust Fund and PSAE that the contested documents are privileged under the common interest doctrine, and their discovery should not be allowed.

---

[1] Though it should be mentioned that the main controversy in this matter revolves around the common interest doctrine, whose application appears "to be the same under Illinois and Federal law" *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326 (N.D. Ill. 2008).

Communications with an attorney and documents produced by an attorney are generally protected from discovery production under either the attorney-client privilege or work product privilege. *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (discussing attorney-client privilege); *Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.*, 244 F.R.D. 412, 419 (N.D. Ill. 2006) (discussing the work product doctrine). However, these privileges usually operate only when these documents and communications are made or kept in confidence. *Ocean Atlantic Dev. Corp.*, 2002 WL 1968581, at *5 (stating that work product can be waived by certain disclosures to third parties); *BDO Seidman, LLP*, 492 F.3d at 815 (holding that attorney client privilege attaches to a communication if it was made to an attorney in confidence and in connection with the provision of legal services)[2]. Thus, these privileges can be waived if the underlying communications or documents are disclosed to outside third parties. *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 380 (N.D. Ill. 1999).

While disclosure to a third party of privileged information can waive privilege, this is not always the case. *BDO Seidman, LLP*, 492 F.3d at 815; *cf. United States v. Seidman,* 368 F.Supp.2d 858, 861 (N.D.Ill.2005) (holding that the unintentional disclosure to a third party does not necessarily waive privilege). Since the doctrines of privilege derive from articulable notions of public policy, there are key exceptions to waiver when disclosure does not affect that policy.

The work product doctrine stems from our adversary system of law instead of from the confidential communications between attorney and client.[3] *Ocean Atlantic Dev. Corp.*, 2002 WL

---

[2] The general elements for attorney client privilege to attach are: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived). *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983)

[3] "[The work product doctrine] exists so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories." *Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C.,* 2002 WL 1968581, at *4 (N.D.Ill.,2002).

1968581, at *5. It protects documents that a lawyer produces from being taken and used by the opposing litigants and thus encourages lawyers to thoroughly develop their case free from the fear that their strategies will be handed over directly to the opponent. *Lawrence E. Jaffe Pension Plan*, 244 F.R.D. at 419. Therfore, disclosures to third parties do not waive work product privilege so long as the work is maintained in secrecy against the opponent. *Id.*

The purpose of attorney-client privilege is to "encourage full disclosure and to facilitate open communication between attorneys and their clients" and to allow attorneys to render complete and accurate legal advice to their clients. *BDO Seidman, LLP*, 492 F.3d at 815; *Lawrence E. Jaffe Pension Plan*, 244 F.R.D. at 419. However, "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others, [and] the attorney-client privilege must include all the persons who act as the attorney's agents." *Lawrence E. Jaffe Pension Plan,* 244 F.R.D. at 420.

Thus, intentional disclosure will not waive attorney client privilege if the disclosure is for the purpose of assisting the attorney in rendering legal advice. *Id.* at 419.); *Ferguson v. Lurie*, 139 F.R.D. 362, 364 (N.D.Ill.,1991) ("An exception to this [waiver] rule is made when …the disclosure to the third party is made for the purpose of assisting the attorney in rendering legal advice").

This particular exception is most often seen in regards to corporations, where disclosure to corporate agents, advisors, and decision makers is necessary for the corporation to function. *Wilstein*, 189 F.R.D. at 379 (holding that discussions of legal advice between executives should be privileged). The appropriate test is to see if the third party is among the control group of the corporation. *Ocean Atlantic Dev. Corp.*, 2002 WL 1968581, at *3. "If the employee ... is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney…he will be considered a part of the control group." *Id*; *see also Consolidation*

*Coal*, 432 N.E.2d 250 (holding that "if [a]n employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion ... [he] is properly within the control group."); *Wilstein*, 189 F.R.D. at 379 (holding that "[a] privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.") (citing *Weeks v. Samsung Heavy Ind. Co., Ltd.*, 1996 WL 341537 at *4 (N.D.Ill. June 20, 1996)).

Another exception to waiver for intentional disclosure is the common interest doctrine. *Lawrence E. Jaffe Pension Plan,* 244 F.R.D. at 419 (holding that intentional disclosure of privileged information to a third party does not waive attorney client privilege if "the third party shares a common legal interest with a party claiming the privilege"); *see also Pampered Chef v. Alexanian*, 737 F.Supp.2d 958, 964 (N.D. Ill. 2010) (holding that "where a client communicates with his attorney in the presence of a third person who shares either a common legal interest, the attorney-client privilege is not waived"). The common interest doctrine protects "the free flow of information from client to attorney ... whenever multiple clients share a common interest about a legal matter." *In re Sulfuric Acid Antitrust Litigation,* 235 F.R.D. 407, 416–17 (N.D.Ill.2006); *see also Pampered Chef*, 737 F.Supp.2d at 964–65. Thus, parties may assert a common interest where they have a shared legal interest in the subject matter of the communication and where the communication is made in the course of furthering the common enterprise. *Pampered* Chef, 737 F. Supp. 2d 958 at 964.

The common interest doctrine covers a broad range of circumstances within the Seventh Circuit, and encompasses almost all communications where the parties are coordinating a defense strategy or pooling information for a common legal purpose, even if the parties are unrelated or are not enjoined in litigation. *Pampered Chef*, 737 F.Supp.2d at 965. The "common interest doctrine is not limited to defendants, to formal parties to litigation, or to litigated matters." *BDO Seidman, LLP,* 492 F.3d at 815. The common interest must relate to a legal matter, "though it need not relate to

litigation *per se*. *In re Sulfuric Acid Antitrust Litigation,* 235 F.R.D. at 416–17 (holding that "it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply."); *see also Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D.Ill.,2008) (holding that the common interest doctrine can include parties who are not a part of the same litigation or parties who will not be sued in the future). It includes situations where clients share a common legal interest but are represented by separate attorneys. *BDO Seidman*, 492 F.3d at 816. It even includes communications between parties who are not on the same side of the litigation or who seek the advice for different reasons. *Grochocinski*, 251 F.R.D. at 327 (holding that "the common interest rule is not limited to parties who are perfectly aligned on the same side of a single litigation, rather the party asserting the privilege must simply demonstrate actual cooperation toward a common legal goal); *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 294 (N.D.Ill.,2005) (holding that the fact that the two parties "had different business reasons for relying on the advice does not undermine that they had the identical interest in the legal advice itself.").

The common interest doctrine even extends to communications between two individuals or entitles where no lawyer is present. "The common interest rule covers communications between non-lawyers of multiple parties with a common interest, but only if (1) one party is seeking confidential information from the other on behalf of an attorney; (2) one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work-product that is related to the litigation." *Beneficial Franchise Co., Inc. v. Bank One*, N.A., 205 F.R.D. 212, 220 (N.D.Ill.,2001); *see also Stopka v. American Family Mut. Ins. Co., Inc.*, 816 F.Supp.2d 516, 527 (N.D.Ill.,2011)( holding that the "chain of privilege" can extend to communications between non-lawyers and the mere fact that an e-mail was not sent from or to an attorney did not mean that it was not privileged); *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. at 416 (holding that it is not necessary for an attorney to be present for a communication to be privileged); *Smithkline*

*Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D.Ill.,2000) (holding that the common interest doctrine recognizes protection of communications *among clients* and attorneys") *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 687–88 (D.C.Ind.,1985)(holding that "if a corporation with a legal interest in an attorney-client communication relays it to another related corporation, the attorney-client privilege is not thereby waived").

The documents and communications at issue in the spreadsheet presented to the Court are covered by the common interest doctrine. PSAE, Eagle Trust Fund, John Schlafly, Andrew Schlafly, Bruce Schlafly, Ed Martin, EFELDF, the Estate of Phyllis Schlafly, the Phyllis Schlafly Revocable Trust, Kathleen Sullivan, Liza Forshaw, and Ned Pfeifer, all share a common legal interest against the Individual Plaintiffs, and Eagle Forum.  The individuals listed above are either named defendants or counterclaimants in litigation involving the Individual Plaintiffs or Eagle Forum, are a plaintiff themselves in litigation against the Individual Defendants and Eagle Forum, or are trustees of members of the Board of a named party, be it as a defendant or counterclaimant.  As stated above, it does not matter that these entities are not part of the same litigation or any litigation, provided that they just need to demonstrate cooperation towards the same legal goal – here the protection of the Phyllis Schlafly Family of Marks and the ousting of the Cori Plaintiff as directors of Eagle Forum.  A reading of the pleadings in all of the various cases clearly establishes that the parties in Group 2 are litigating many similar claims with a common goal.  As most of these entities are actually co-plaintiffs or co-defendants in other suits against the Cori Plaintiffs in other jurisdictions, they quite literally have a common interest in defeating the Cori Plaintiffs as the opponent in those litigations, and are allowed to communicate with each other to develop a joint strategy.

As to Roger Schlafly, his declaration indicates his knowledge of the databases, web sites, and other intellectual property at issue in this and the other cases. As set forth above, the common

interest doctrine covers communications even between non-lawyers of multiple parties with a common interest. *See Stopka v. American Family Mut. Ins. Co., Inc.*, 816 F.Supp.2d 516, 527 (N.D.Ill.,2011)( holding that the "chain of privilege" can extend to communications between non-lawyers and the mere fact that an e-mail was not sent from or to an attorney did not mean that it was not privileged); *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. at 416 (holding that it is not necessary for an attorney to be present for a communication to be privileged). The emails at issue which include Roger Schlafly were inquiries related to and concerning the litigation against the Individual Plaintiffs. As such these emails are privileged.

All of the individuals and entities have worked with outside counsel and each other to achieve their common legal goals. These communications or documents were among counsel and their clients in response to the actions of the Individual Plaintiffs both before and after litigation was filed. PSAE, ETF, and the various entities and individual merely disseminated this information to each other, to develop a strategy and act towards their common interest against Individual Plaintiffs, or shared amongst the various entities' agents and advisors, who were part of the entities' control group and thus who needed the information to correctly advise and guide these various entities. As such, these communications and documents are subject to the attorney-client privilege, and where applicable, are work product, and not subject to disclosure.

### Communications with Runnymede Law Group and Smith Amundsen Prior to October 20, 2017

Opposing counsel has argued that because Runnymede Law Group and SmithAmundsen now represent Eagle Forum, that communications between it and the parties somehow waive the privilege and work product doctrine being asserted in this case. As the Individual Plaintiffs in this matter previously expressly disclaimed that Runnymede Law Group represented Eagle Forum, and

that prior to October 20, 2016, there was no relationship between the Individual Defendants and Eagle Forum, this position should be rejected by this Court.[4]

As set forth above, in *Cori v. Martin* the Individual Plaintiffs in this matter expressly disclaimed that Runnymede Law Group represented Eagle Forum. Furthermore, the Individual Plaintiffs also sued Eagle Forum in this case, naming it as a nominal Defendant. Thus, it is clear that there was significant adversity between the parties, and the communications between Runnymede and SmithAmundsen prior to October 20, 2017, should be deemed privileged or subject to the work product doctrine.

Boiled down to its most basic element, this case is a conflict between individuals who also control multiple entities, either as directors or trustees. This action was originally filed as a derivative action, clearly showing that at that time Eagle Forum was deemed an adverse party. The allegations of the pleadings from both sides in *Cori v. Martin* also clearly set out the adversarial nature of the parties, **including the explicit disclaimer by these Individual Plaintiffs that Runnymede Law Group did not represent Eagle Forum.** Furthermore, and although the Individual Plaintiffs have acted as if there is a final judgment as to the claims about control over Eagle Forum, the order relied

---

[4] At the first hearing on the issues relating to the privilege log counsel for the Individual Plaintiffs asserted that the issue of Eagle Forum's ability to waive the privilege was decided by the State Court in in *Cori v. Martin*. However, for the Individual Defendants to assert what is essentially a collateral estoppel argument they have the burden to establish the following elements: (1) the issue sought to be precluded is the same issue as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been represented in the prior action. *Midwest Operating Engineers v. Dredge*, 147 F. Supp. 3d 724 (N.D. Ill. 2015), aff'd sub nom. *Midwest Operating Engineers Welfare Fund v. Cleveland Quarry*, 844 F.3d 627 (7th Cir. 2016), cert. denied sub nom. *RiverStone Grp., Inc. v. Midwest Operating Engineers Welfare Fund*, No. 16-1350, 2017 WL 1881714 (U.S. Oct. 2, 2017). While not conceding that the Individual Plaintiffs can establish the other elements, it is clear that neither PSAE, Eagle Trust Fund, nor any of the other parties to the emails and documents at issue other than Mr. Martin or John Schlafly were represented at the hearing in Madison County. As such, the Individual Plaintiffs cannot rely upon any ruling in that case as applying to the other entities and individuals not a party to *Cori v. Martin* at the time of the ruling.

upon by the Individual Plaintiffs for control of Eagle Forum is a Temporary Restraining Order. The merits of control over Eagle Forum are still at issue. The Lanham Act claim and breach of fiduciary duty claims and copyright claims alleged in this lawsuit all also stem from the question of who should have legal control of the Schlafly marks copyrights, and other intellectual property, issues that also underlie the original Complaint, the First Amended Complaint, and the Counterclaim in *Cori v. Martin*. Much of the discovery that the Individual Plaintiffs are seeking in this mater actually concerns Group 2's defending against the allegations of the Individual Plaintiffs. The documents and communications were among thenm the trustees, thedirectors, and theirattorneys attempting to develop a strategy on how to respond to what was deemed as opponents within Eagle Forum, as well as the other individuals and entities as set forth above.

Because this case was originally filed as a derivative action, and the other cases stem from an internal power struggle and division among corporations, trusts, and individuals, for the purposes of determining opposing party's respective privilege rights, the issue of privilege should be treated like a derivative suit where the company is divided between the shareholders and the directors.

In shareholder derivative suits, the defending directors, despite being sued on behalf of the corporation, are still entitled to privilege. The seminal decision for this doctrine, dubbed the fiduciary duty exception, is *Garner v. Wolfinbarger*, a case from the Fifth Circuit which held that the directors, when being sued by their stockholders, and even by their company itself, were still entitled to their privileged documents and communications. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970) (stating that "[t]he attorney-client privilege still has viability," and that "[t]he corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders"); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 722 (D.C. Ill. 1978) (citations omitted); *Ferguson v. Lurie*, 139 F.R.D. 362, 365 (N.D. Ill. 1991). After all, "corporate management must manage…part of the managerial task is to seek legal counsel when desirable, and, obviously,

management prefers that it confer with counsel without the risk of having the communications revealed at the instance of one or more dissatisfied stockholders." *Hashim v. First Nat. Bank of Chicago*, 1987 WL 6563, at *4 (N.D. Ill.1987). Thus, even when stockholders have brought suit against the directors of a corporation on behalf of the corporation, and even though the privilege lies with the corporation and not with the directors, the directors are still entitled to assert privilege against the stockholders – it is not waived.

While *Garner* has never been expressly adopted by the Seventh Circuit Court of Appeals, it has been cited in that court and it has been applied in the federal district courts of Illinois. *See In re Witness Before Special Grand Jury* 2000-2, 288 F.3d 289, 294 (7th Cir. 2002); *In re Gen. Instrument Corp. Securities Litig.*, 190 F.R.D. at 529 (listing federal district cases discussing *Graner* in Illinois). Furthermore, *Graner* has been applied to cases beyond shareholder derivative suits, to other instances where a duty is owed, simply making the derivative suit an important factor in allowing for an exception. For example, in *Ferguson v. Lurie*, 139 F.R.D 362, 364 (N.D. Ill. 1991) the federal district court applied the fiduciary exception against general partners in a suit brought by limited partners to a partnership, and in *Chill v. Calamos Advisors LLC*, 2017 WL 1478123, at *2 (N.D. Ill., 2017) it was applied against a trustee by its beneficiaries.

Thus, there is no reason that *Graner's* rule that directors are allowed to exercise their privilege against their own corporation in a derivative suit, cited in multiple federal district of Illinois cases, should not be applied here as well. *Panter*, 80 F.R.D. at 722. In both matters, directors are being challenged by an entity on behalf of their corporation, to whom they owe a fiduciary duty, under allegations that they operated the corporation inimical to the interests of the corporation. If directors are allowed to invoke privilege against their corporation in a shareholder derivative suit, there is no reason that they would be unable to do so against opposing directors such as the Individual Plaintiffs in a director's suit, especially where the validity of the opposing directors'

authority is a chief issue of the case. If *Graner* applies and allows directors to invoke privilege against their corporation, then it follows that the opposing directors should be able to abrogate this privilege on a showing of good cause.

Under *Garner*, the persons attempting to abrogate the privilege may do so on a showing of good cause. However, the burden of establishing good cause is upon the party seeking to pierce the attorney-client privilege. *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 31 (D.C. Ill. 1980). As of today, the Individual Plaintiffs have put forth no arguments or evidence in support of a finding of good cause. As such, and until such arguments and evidence is forthcoming, the Individual Plaintiffs should be denied access to the emails with Runnymede Law Group and Smith Amundsen prior to October 20, 2016.

## **CONCLUSION**

As set forth above, it is clear that the parties to the emails had a common interest that was adverse to the Individual Plaintiffs. All communications among the counsel representing the individuals and the entities being sued, along with the individual, the trustees, and the board members, are privileged. Furthermore, as the Individual Plaintiffs previously denied that the Runnymede Law Group represented Eagle Forum, it cannot now claim the contrary in order to obtain access to communications between the adverse Board members and other counsel representing entities with interests common to those adverse to the Individual Plaintiffs. The same holds true for the communications with Smith Amundsen prior to the October 20, 2017, Order of the court in *Cori v. Martin*.

Wherefore, for the above stated reasons, Defendant Phyllis Schlafly American Eagles and Eagle Trust Fund respectfully request that the assertions of privilege set forth in the Privilege Log presented to this court be upheld; and for all other relief this Court deems just.

**RIEZMAN BERGER, P.C**.

By: /s/ *Nelson L. Mitten*
Nelson L. Mitten, IBN 6185899
Paul A. Grote, IBN 6307831
7700 Bonhomme, 7th Floor
St. Louis, Missouri 63105
(314) 727-0101 (phone)
(314) 727-6458 (facsimile)
nlm@riezmanberger.com
pag@riezmanberger.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on October 30, 2017, which will send notice to all counsel of record.

/s/ Nelson L. Mitten