# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAGLE FORUM, *et al.*,                  )
                                    )

    Plaintiffs,                     )

                                      )

v.                                       )  Cause No.: 3:16-cv-946-DRH-RJD

                                      )

PHYLLIS SCHLAFLY'S AMERICAN EAGLES,  )

    Defendant.                      )

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO PRIVILEGE CLAIMS OF DEFENDANT PHYLLIS SCHLAFLY'S AMERICAN EAGLES

Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry (collectively, "Plaintiffs"), for their Memorandum in Opposition to the Privilege Claims of Defendant Phyllis Schlafly's American Eagles ("PSAE"), state as follows:

## I.    <u>INTRODUCTION</u>

As this Court is aware, at the October 19, 2017 hearing, PSAE was directed to submit a memorandum in support of its contention that certain documents are privileged under the common interest doctrine and to provide Plaintiffs with an amended privilege log, specifying which documents it is claiming the common interest doctrine as well as identifying those documents that were reviewed by counsel for PSAE versus counsel for Eagle Trust Fund ("ETF").[1] *See* Minutes of Court, Doc. 97, pp. 1-2. Both the brief and the amended privilege log were due on or before October 30, 2017. *See id.*

On October 30, 2017, PSAE submitted a brief, but no amended privilege log. In its brief, PSAE, instead, chose to reargue issues previously presented to the Court at the October 19th

---

[1] PSAE submitted its brief on behalf of ETF as well. *See* Doc. 101. PSAE's continued refusal to separate itself from other entities with divergent interests is puzzling, particularly in light of the privilege trick bag in which it presently finds itself. Had PSAE recognized its own corporate form and formalities, it likely would not be in the current situation.

hearing, to present a novel (albeit fictional) history of events, and to assert a muddled and confused argument concerning the common interest doctrine. Several days later, on November 2, 2017, PSAE finally produced an "amended privilege log," but the log included only *half* of the documents over which PSAE continues to assert a privilege. Also, the privilege log introduces, for the first time, an entirely new law firm, Graves Garrett LLC, into the roster of firms that apparently participated in the review process – a firm that had not been previously disclosed in the myriad communications that have occurred regarding the privilege issue. Indeed, at the October 19th hearing, PSAE's counsel described how the review process had been conducted by Riezman Berger and the Craney Law Group, but never mentioned the Graves Garrett law firm. Now, it appears that Graves Garrett did the lion's share of the privilege log review. That Graves Garrett, the apparent laboring oar in the entire review process, was not disclosed to Plaintiffs or the Court is baffling. Graves Garrett has not entered in this case. It is lead counsel for Eagle Forum Education and Legal Defense Fund ("EFELDF") and has represented ETF at times, but has never represented PSAE.

Putting aside their mishandling of the review process, which itself constitutes a waiver of any applicable privilege, PSAE and ETF argue that they share a common interest with John Schlafly, Andrew Schlafly, Bruce Schlafly, Ed Martin, EFELDF, the Phyllis Schlafly Revocable Trust ("PSRT"), the Estate of Phyllis Schlafly, Kathleen Sullivan, Ned Pfeifer and Liza Forshaw.[2] That common interest, they contend, is a shared dislike for Plaintiffs—specifically, Anne Schlafly Cori. It goes without saying that this is not a common legal interest, but at most a shared personal grudge. PSAE and ETF next argue that these parties share a common interest across several litigations in "the Phyllis Schlafly Family of Marks." This too fails even the most

---

[2] The exclusion of Eagle Forum from PSAE and ETF's alleged "Groups" of interest holders is surprising. In doing so, PSAE and ETF tacitly concede that to include Eagle Forum in their lists would destroy the house of cards that they are attempting to build.

SL 2550771.4

cursory of inspections. As illustrated below, the other litigation involving Plaintiffs diverges widely in subject matter, from the breaches of fiduciary duty by Ed Martin and John Schlafly to general corporate governance, from life insurance proceeds to mail and P.O. Boxes. There is no common thread of intellectual property that runs through the various proceedings. Moreover, the proposed "common interest group" holds widely diverging interests in such intellectual property. Plaintiffs suspect that it would almost certainly be news to Liza Forshaw and Ned Pfeifer that communications among family members were actually part of a sophisticated scheme involving broad ranging intellectual property rights.

Put simply, PSAE and ETF treated the attorney client privilege recklessly. In their haste to bad mouth Plaintiffs, PSAE and ETF cavalierly passed around emails, memoranda and documents among family members, friends and perceived allies because they all shared a mutual dislike for Plaintiffs. By so doing, PSAE and ETF waived any protections afforded by the attorney client privilege. Now, after the fact, PSAE and ETF are attempting to unring the bell by claiming a common interest that would allow this narrow exception to swallow the privilege rule. The law treats the privilege as sacrosanct; however, in order to receive its benefits, the holder of the privilege must treat those communications with utmost care. That simply did not happen here.

PSAE and ETF's arguments fail for numerous reasons, but most importantly because (1) their version of events is merely an exercise in revisionist history; (2) their common interest argument is inadequate, misstates the law, and encourages this Court to adopt a position that would make the same utterly meaningless; (3) their inclusion of Eagle Forum in their plot to destroy Eagle Forum eviscerates any common interest; (4) their attempt to reargue issues related to Roger Schlafly and Liza Forshaw are misplaced and amount to no more than a *post hoc* effort

to justify the free sharing of potentially privileged information with siblings who share no legal interest in the outcome of the various litigations; and (5) the process by which PSAE and ETF conducted their privilege review evidences a wholesale waiver of any conceivable privilege. Notably, PSAE and ETF have failed to even attempt to meet their burden of proof with respect to the common interest doctrine, by failing to produce any affidavit or declaration to substantiate the same.

## II.     PROCEDURAL HISTORY & BACKGROUND

### A.     April 2016 Board Meeting

On April 11, 2016, the Eagle Forum Board of Directors held a board meeting which, among other things, terminated Ed Martin as President of Eagle Forum. That same day, Ed Martin and Phyllis Schlafly, ostensibly on behalf of Eagle Forum, formally engaged Steve Clark and the Runnymede Law Group ("Runnymede") "with respect to governance matters, Board disputes and litigation as necessary."[3] Late that same night, Andy Schlafly (a director of Eagle Forum) sent an email to Ed Martin, John Schlafly and Bruce Schlafly proposing to "start a new c4 using mother's name" that would "do better and be more effective in politics that [sic] 'Eagle Forum.'"[4] This was the real beginning of PSAE, an entity intended to pick up the pieces after Eagle Forum was destroyed. Later that evening, Ed Martin forwarded the email to Eagle Forum's own legal counsel at Runnymede. So, before any lawsuit had ever been filed, an unholy alliance had been created amongst Eagle Forum's attorneys (Runnymede), Eagle Forum's acting President (Ed Martin), and two of its directors (John Schlafly and Andy Schlafly) to replace the very organization they were duty-bound to protect.

---

[3] *See* Terms of Engagement dated April 11, 2016 between Runnymede and Eagle Forum, a true and accurate copy of which is attached hereto as **Exhibit A**.

[4] *See* Email correspondence dated April 11, 2016 between A. Schlafly, J. Schlafly, B. Schlafly and E. Martin, forwarded to S. Clark and J. Rohlf by E. Martin that same date, a true and accurate copy of which is attached hereto as **Exhibit B**.

SL 2550771.4

## B.    Madison County Action

On April 22, 2016, Plaintiffs, as the majority directors of the Eagle Forum Board of Directors, filed their lawsuit against Ed Martin, John Schlafly and Eagle Forum in the Circuit Court of Madison County (the "Madison County Action") to, among other things, obtain an accounting of Eagle Forum property, assets and resources and enforce the firing of Ed Martin. No claims had been asserted against ETF, EFELDF, PSRT, PSAE, or any of the following individuals: Bruce Schlafly, Roger Schlafly, Liza Forshaw and Ned Pfeifer.

ETF's first involvement in the Madison County Action was not as a defendant, but rather as a movant seeking to quash a subpoena served upon it by Plaintiffs. On August 26, 2016, Plaintiffs' counsel conferred with ETF's counsel, James Craney of the Craney Law Group, about the motion to quash. Mr. Craney stated that ETF was operating under a joint defense agreement with Eagle Forum, but refused to disclose the date, terms or parties to the joint defense agreement, or even whether it was oral or written. Shortly after that call, Mr. Craney emailed Runnymede to confirm that ETF "was under a joint defense agreement with [Runnymede] . . . I have never heard anyone indicate that we were not continuing to operate under that verbal agreement, so I assume it continues in effect going forward."[5]

## C.    Riezman Berger Memo

To further the plan to replace Eagle Forum, Riezman Berger (PSAE's counsel here) was engaged and prepared a memorandum describing how intellectual property law could be used to attack Eagle Forum. On June 22, 2016, Runnymede pressured Ed Martin for information about the "status of the IP analysis" because "[t]ime is of the essence."[6] That same day, Ed Martin sent

---

[5]    *See* Email correspondence between J. Craney and S. Clark dated August 26, 2016, a true and accurate copy of which is attached hereto as **Exhibit C**.

[6]    *See* Email correspondence dated June 22, 2016 between S. Clark, J. Rohlf and E. Martin, a true and accurate copy of which is attached hereto as **Exhibit D**.

SL 2550771.4

Runnymede a memorandum prepared by Riezman Berger detailing how intellectual property law could be used to "cause business interruption . . . that would threaten [Eagle Forum's] survival" (the "Riezman Berger Memo").[7]  Again, the Riezman Berger Memo, which has become the playbook for many of the claims that have been asserted against Eagle Forum and Plaintiffs, was addressed to Ed Martin and Phyllis Schlafly, the acting President and Chairman of Eagle Forum, and shared with Eagle Forum's lawyers at Runnymede.[8]  Needless to say, the circumstances surrounding Riezman Berger's engagement and work are very unusual, but continue to be shrouded in secrecy due to unfounded privilege claims.

### D.    PSAE Lawsuit

PSAE did not become a party to any litigation until August 24, 2016, when Plaintiffs filed the instant lawsuit.  ETF has only participated in this lawsuit as a non-party witness.  None of the other individuals or entities in the "common interest" group alleged by PSAE and ETF are parties to the instant lawsuit.

---

[7]   *See* Email correspondence dated June 22, 2016, between E. Martin, J. Rohlf and S. Clark, as well as attachment thereto, a true and accurate copy of which is attached hereto as **Exhibit E**.  Although more pertinent to issues of disqualification, the Riezman Berger Memo suggests that Riezman Berger was actually engaged by Eagle Forum.  The executive summary states: "Intellectual property law, with its focus on consumer protection, is probably a much more fertile area for client *than the corporate control issues it is concurrently fighting.*"  Only Eagle Forum was fighting "corporate control issues" at the time.

[8]   While the Riezman Berger Memo discusses intellectual property as a "sword" to be wielded against Eagle Forum, the campaign of bad acts undertaken by Andy Schlafly, John Schlafly and Bruce Schlafly have not been limited to this front.  Indeed, Andy Schlafly filed a lawsuit against two insurance companies to prevent them from disbursing policy proceeds, on the life of Phyllis Schlafly, to Eagle Forum despite the fact that Eagle Forum is the owner, financial obligor and stated beneficiary under such policies.  *See Andrew L. Schlafly v. the Lincoln National Life Insurance Corp., et al.*, Cause No. 2:17-cv-02522-ES-SCM.  John Schlafly and Bruce Schlafly, ostensibly on behalf of ETF and EFELDF respectively, have also opposed a change-of-address form filed by Eagle Forum with the United States Postal Service, in an attempt to block Eagle Forum from receiving mail directed to it at its former address, thereby initiating an action before the Judicial Officer Department of the United States Postal Service.  *See In the Matter of the Mail Disputes between Eagle Forum and John Schlafly & Bruce Schlafly*, P.S. Docket No. MD 17-13.

SL 2550771.4

### E.   EDMO Lawsuit

ETF did not become a party to a lawsuit until October 19, 2016, when ETF and PSRT filed their lawsuit against Plaintiffs (and not Eagle Forum) in the Eastern District of Missouri, captioned *Phyllis Schlafly Revocable Trust, et al. v. Anne Cori, et al.*, Cause No. 4:16-cv-01631-JAR (the "EDMO Lawsuit"). The EDMO Lawsuit initially involved ETF's and PSRT's assertion of exclusive control and ownership of intellectual property allegedly owned by Phyllis Schlafly in her individual capacity. EFELDF did not become a party to any lawsuit until April 17, 2017, when it was named as a plaintiff in the First Amended Complaint filed in the EDMO Lawsuit. EFELDF claims standing in that lawsuit as the largest licensee of intellectual property owned by PSRT and maintained by ETF. Notably, and notwithstanding the positions taken by PSRT, ETF and EFELDF in the EDMO Lawsuit, PSAE, in its dismissed counterclaim in the present action, repeatedly refers to its "exclusive" license of the intellectual property at issue in the EDMO Lawsuit.[9] The positions taken by ETF, PSRT, EFELDF and PSAE in the various lawsuits clearly are not aligned, but rather conflict with and contradict one another. How can these parties share a common interest when they each claim larger pieces of the same pie or exclusive rights to the whole pie?

### F.   Liza Forshaw, Ned Pfiefer and Roger Schlafly

PSAE's attempt to yoke individuals into its common interest scheme is likewise unavailing. For instance, Liza Forshaw is not engaged in any litigation adverse to Plaintiffs, in their capacities as directors and officers of Eagle Forum. PSAE offers no evidence to support her alleged alignment with the common interest group. Indeed, the evidence undermines PSAE's position. In response to Liza Forshaw allowing Anne Cori to visit her mother on her deathbed, Bruce Schlafly excoriated her as follows: "Liza, if I were litigious like Anne Cori, I

---

[9] *See* Counterclaim, Doc. 68, at ¶¶ 23-24.

would sue you and do everything possible legally to put you through the kind of emotional distress that Anne Cori inflicted upon mother and continues to inflict on John. … Maybe someday your children will show as little concern for your wishes at the end of life as you have shown for your mother's."[10]  Similarly, PSAE fails to articulate how Ned Pfeifer or Roger Schlafly, a director of EFELDF and an individual apparently kept intentionally far from any relevant entity, have any legal interest adverse to Plaintiffs, as directors and officers of Eagle Forum.

G.    **First Amended Complaint**

The first time many of these individuals and entities were joined in a particular case was on May 22, 2017, when the First Amended Complaint was filed in the Madison County Action, asserting claims against ETF, EFELDF, Kathleen Sullivan, Andy Schlafly, John Schlafly and Ed Martin for aiding and abetting breaches of fiduciary duty and civil conspiracy.  Prior to this time, the positions and interests of the parties (which PSAE now strains to align), across the myriad actions, were and continue to be simply too garbled and without basis to be unified under the banner of being "against Plaintiffs."

The foregoing, as a brief (and far from exhaustive) rebuttal to PSAE's revisionist history, demonstrates that there has never been unanimity of legal interest *against* Plaintiffs.  Each of the individuals and entities which PSAE now tries to place under one umbrella are distinguished by countervailing duties and obligations (whether to Eagle  Forum, the entities which seek to destroy Eagle Forum, or both) and a progressively evolving timeline.  Like their claim of "common interest," PSAE's self-serving recitation of the motives of the entities and individuals identified in their privilege log is fiction.

---

[10]  *See* Email correspondence between B. Schlafly and K. Sullivan dated September 6, 2016, a true and accurate copy of which is attached hereto as **Exhibit F**.

SL 2550771.4

## III.   ARGUMENT

Rule 501 of the Federal Rules of Evidence provides that federal privilege law applies to federal claims and state privilege law applies to diversity cases.  The instant action is brought pursuant to the Court's federal question jurisdiction based upon the federal claims asserted against PSAE, making federal common law privilege applicable.  In any event, the analysis under federal or Illinois law is largely similar.

The Seventh Circuit has articulated the elements of the attorney client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citing 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961)).  The burden falls squarely on the party invoking attorney-client privilege to establish every essential element.  *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

Because the privilege impairs the Court's search for truth, it must be narrowly construed.  *Evans*, 113 F.3d at 1461.  In other words, the scope of the attorney client privilege "should be strictly confined within the narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).  The same is true for any invocation of the common interest doctrine.  *See In re Teleglobe Communs. Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) ("Because the common-interest privilege is an exception to the disclosure rule, which exists to prevent abuse, the privilege should not be used as a *post hoc* justification for a client's impermissible disclosures.").

Generally, "the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney." *Evans*, 113 F.3d at 1462. This is true under Seventh Circuit precedent and Illinois law. *See id.*; *In re Walsh*, 623 F.2d 489, 495 (7th Cir. 1980); *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007); *In re Himmel*, 125 Ill. 2d 531, 542, 533 N.E.2d 790, 794, 127 Ill. Dec. 708 (1988) ("information voluntarily disclosed by a client to an attorney, in the presence of third parties who are not agents of the client or attorney, is not privileged information"). Sympathy toward the client's position, such as that of a family member, is insufficient to fall within the common interest doctrine. *Swyear v. Fare Foods Corp.*, No. 3:16-cv-01214-SMY-RJD, 2017 U.S. Dist. LEXIS 107939, at *4-5 (S.D. Ill. July 12, 2017).

### A.  <u>Common Interest Doctrine</u>

As mentioned above, the common interest doctrine "allows a defendant to assert the attorney-client privilege to protect his statements made in confidence not to his own lawyer, but to an attorney for a co-defendant for a common purpose related to the defense of both." *Evans*, 113 F.3d at 1467. This doctrine is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *Swyear*, 2017 U.S. Dist. LEXIS 107939, at *5 (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). It is only "applicable where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *Id*; *see also BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004) ("To maintain the privilege, the common interest must be a legal interest, not merely a business or financial interest."). "[T]his shared interest must be *identical*, not simply similar." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D.

316, 327 (N.D. Ill. 2008) (emphasis added) (holding that hoping a party wins a dispute is not a legal interest to protect communications from disclosure). "Of course, to assert the common interest doctrine as a shield to production, the parties asserting it must first establish that the underlying documents or communications withheld were otherwise privileged before the common interest arose." *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273-74 (N.D. Ill. 2004).

To begin, PSAE and ETF have "fail[ed] to argue the common interest privilege with any specificity, [and therefore, they] have failed to carry [their] burden of establishing that any emails fall within the common interest doctrine." *See Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-cv-00006-RLM-SLC, 2017 U.S. Dist. LEXIS 57370, at *29 n.9 (N.D. Ind. Apr. 14, 2017) (citing *Evans*, 113 F.3d at 1461 ("The party seeking to invoke the privilege bears the burden of proving all of its essential elements.")). As explained above, simply having a business/financial interest or an emotional investment in the outcome is insufficient to invoke the common interest doctrine. *See id.*; *Swyear*, 2017 U.S. Dist. LEXIS 107939, at *4-5.

Moreover, the "common interests" asserted by PSAE and ETF—i.e., "the Phyllis Schlafly Family of Marks and the ousting of the Cori Plaintiff [sic] as directors of Eagle Forum" (Doc. 101, p. 11)—defy logic and further illustrate the *post hoc* nature of this justification. First, from the beginning of 2016 through August 2016 (prior to the filing of the instant action), there was no lawsuit or potential lawsuit involving any intellectual property. The only legal interests at stake related to the corporate governance of Eagle Forum and bad acts and breaches of fiduciary duty by Ed Martin and John Schlafly. While they may prefer one side over the other, PSAE and ETF have no identifiable legal interest in the outcome of those disputes, nor does anyone else who is not a stakeholder in Eagle Forum. Insofar as PSAE and ETF claim that they were crafting a scheme to attempt to divest Eagle Forum of its intellectual property, it goes

SL 2550771.4

without saying that Eagle Forum and its officers and/or directors (i.e., Andy Schlafly, John Schlafly, Ed Martin and Kathleen Sullivan) are precluded from sharing that interest.[11]

Setting aside that ETF, PSAE, EFELDF, PSRT and their respective officers, directors or trustees have no colorable basis to assert any legal interest (much less a common one) in the make-up of Eagle Forum's board of directors, ETF, PSAE, EFELDF and PSRT have widely diverging, incongruous and, at times, outright antagonistic claims or interests in the purported "Phyllis Schlafly Family of Marks." For example, PSAE has asserted exclusive rights to the purported family of marks; at the same time, PSRT has asserted exclusive ownership over the "family of marks;" ETF has asserted, whenever convenient, that it is either the exclusive owner of the intellectual property or the entity charged with maintaining and servicing the marks for the benefit of some other owner; and EFELDF has claimed that it is either a licensee of all of the marks or that it too holds some undisclosed ownership claim to certain marks. Put simply, there is no and can be no commonality of interest between these various parties, as is evident from the incongruous positions taken by each of them.

Further, the restrictions on this doctrine are far stricter than PSAE and ETF suggest. PSAE and ETF contend that any communications flowing between various entities and individuals, with divergent interests and differing (and evolving) legal representation, should be protected wholesale from disclosure. This is contrary to the mountain of case law within the Seventh Circuit and elsewhere which clearly provides that "the doctrine is [to be] *limited strictly*." *See Swyear*, 2017 U.S. Dist. LEXIS 107939, at *5. Moreover, the doctrine only protects "communications by a client to his own lawyer . . . when the lawyer subsequently shares

---

[11] Though they appear to have already admitted as much in their brief, if PSAE and ETF and their respective principals are willing to stipulate that they conspired to undermine Eagle Forum and steal its property, such stipulation would alleviate the need to continue to litigate several claims in the Madison County Action.

them with co-defendants for purposes of a common defense." *Evans*, 113 F.3d at 1467 (quoting *United States v. McPartlin*, 595 F.2d 1321, 1336-1337 (7th Cir. 1979), *certiorari denied*, 444 U.S. 833, 62 L. Ed. 2d 43, 100 S. Ct. 65).

In the instant case, the clients, not the lawyers, were freely sharing and disclosing the communications with any Tom, Dick or Harry, who shared a dislike for Plaintiffs or would otherwise listen. Roger Schlafly has never shared any legal interest with any parties to any of the Eagle Forum-related lawsuits, much less a common one; the same is true for Liza Forshaw. Their non-legal interest is that they are siblings to John Schlafly, Andy Schlafly, and Bruce Schlafly. Similarly, Ned Pfeifer's interest in the litigation is that he is a cousin of Phyllis Schlafly. He has never had any interest in the composition of the directors and officers of Eagle Forum.

Moreover, the interests of John Schlafly, Andy Schlafly, Bruce Schlafly and Ed Martin are also dissimilar. John Schlafly and Ed Martin may share a common legal interest in the claims asserted against them by Plaintiffs and Eagle Forum in the Madison County Action; but that legal interest is not shared by Andy Schlafly and Bruce Schlafly. Bruce Schlafly and John Schlafly, in their capacities as co-trustees of ETF, may share a common legal interest with respect to ETF's purported interests in certain intellectual property; but that legal interest is not shared by Andy Schlafly and Ed Martin, who share no association with ETF.[12] The list could go on. In other words, there are conceivable ways that certain of the individuals could share a common legal interest; however, only those communications related to that narrow, shared legal interest could be protected. The doctrine requires caution *before* sharing in order to maintain protection—e.g., whether it is necessary to share a particular document in order to further an

---

[12] Even this suggested legal interest is not altogether clear, as Bruce Schlafly did not become a co-trustee until September of 2016, so he would have no basis to share a legal interest with John Schlafly prior to that date.

ongoing enterprise and whether the potential recipients share a common legal interest relative to the subject matter of the communication. The absence of caution by PSAE and others before sharing documents and information is part of their undoing.

Indeed, this type of analysis and care is evident from the cases on which PSAE and ETF rely. In *BDO Seidman*, the common interest doctrine was asserted to prevent disclosure of one particular document, and the Seventh Circuit spent paragraphs examining the purpose of the document and whether a legal interest was shared. *See BDO Seidman*, 492 F.3d at 814-817. Instead, here, PSAE and ETF have asserted the doctrine over nearly 1,000 documents based upon a shared dislike of Plaintiffs.

In *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, the defendant had recipients of privileged documents execute a confidentiality agreement prior to disclosing privileged documents, in order to maintain the privilege. 244 F.R.D. 412, 433 (N.D. Ill. 2006); *but see United States ex rel. Garbe v. Kmart Corp.*, No. 3:12-cv-00881-MJR-PMF, 2014 U.S. Dist. LEXIS 73261, at *9 (S.D. Ill. May 29, 2014) (rejecting use of confidentiality agreement to maintain privilege where the agreement was not specifically crafted to protect attorney work product and suggesting that the Seventh Circuit would reject the rule set forth in *Jaffe*); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option."). In stark contrast, PSAE and ETF did not prepare or execute a single memorandum of understanding or agreement to protect the thousands of documents over which they now claim privilege, nor have they presented this Court with any meaningful evidence to support their privilege claims now.

Some of the principals of ETF and PSAE (long before PSAE existed and prior to ETF's involvement) chose to freely share potentially privileged information among brothers/sisters/cousins/friends that they viewed as "on their side." This free sharing has continued throughout the course of this case and others irrespective of any common legal interest (or lack thereof). No agreements (whether joint defense agreements or even confidentiality agreements) have been executed to attempt to protect these documents from disclosure. Now, realizing the errors in their ways and faced with the required disclosure of potentially harmful documents, ETF and PSAE have concocted, after the fact, an insufficient and overly broad "common interest" to try to prevent the disclosure of these documents. This "*post hoc* justification for a client's impermissible disclosures*" is against the manifest weight of authority and must be rejected. *See Teleglobe*, 493 F.3d at 365. PSAE and ETF's argument is precisely the type of abuse contemplated by *Teleglobe*.

Additionally, as discussed at the October 19th hearing, ETF has produced documents similar to those which PSAE and ETF now attempt to shield from disclosure. In other words, PSAE and ETF are attempting to selectively waive their asserted privilege for documents they view as favorable to their cause, while simultaneously withholding documents that undermine it. *See Garbe*, 2014 U.S. Dist. LEXIS 73261, at *10 ("[T]he Seventh Circuit does not look favorably upon the selective waiver doctrine."); *CCC Info. Servs., Inc. v. Mitchell Int'l, Inc.*, No. 03 C 2695, 2006 U.S. Dist. LEXIS 87255, at *10 (N.D. Ill. Dec. 1, 2006) ("[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice."). "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; **selective disclosure is not an option**." *Burden-Meeks*, 319 F.3d at 899 (emphasis added).

SL 2550771.4

Here, ETF has disclosed myriad documents that would seemingly be privileged under the theories advanced by PSAE and ETF. *See* **Group Exhibit G**, consisting of a representative sampling of documents produced by ETF. ETF and PSAE cannot have it both ways: they cannot waive privilege to disclose favorable documents, while asserting privilege to prevent disclosure of others. Waiver as to some is waiver as to all. Any other result would reward the gamesmanship of ETF and PSAE in asserting this purported privilege as both sword and shield.

**B.**     **Communications Involving Counsel for Eagle Forum**

PSAE and ETF's arguments concerning communications with Eagle Forum are particularly confusing. Mostly, their arguments amount to a veritable word soup, containing various, conflicting positions to see if anything might stick—e.g., Plaintiffs (Eagle Forum's Majority Directors) had no relationship with Eagle Forum; Plaintiffs disapproved of Runnymede's representation of Eagle Forum; Plaintiffs consented to Runnymede's representation of Eagle Forum; the Madison County Action is a derivative action (it is not); this action was initially a derivative action (it is no longer). At its most basic level, PSAE and ETF are attempting to shield documents from Plaintiffs (Eagle Forum's board of directors) and Eagle Forum even though those documents have already been shared with Eagle Forum's own lawyers.

PSAE and ETF seem to argue that *maybe* Runnymede did not represent Eagle Forum, but instead represented John Schlafly, Ed Martin, Kathleen Sullivan and Andy Schlafly, in their capacities as directors and/or officers of Eagle Forum. This is demonstrably false, as Runnymede's engagement letter is clearly between it and Eagle Forum. *See* **Ex. A**.

Next, PSAE and ETF make a strained argument that Eagle Forum should be able to assert its privilege against its shareholders in a derivative action, as suggested by *Garner v. Wolfinbarger*, 430 F2d 1093 (5th Cir. 1970). Notwithstanding that *Garner* has never been

SL 2550771.4

approved by the Seventh Circuit, PSAE and ETF wholly misstate its holding (one that has been questioned repeatedly by other courts). *Garner* holds that shareholders can obtain otherwise privileged documents from a corporation in a derivative suit upon a showing of good cause. 430 F2d at 1103. It does not hold, as PSAE and ETF suggest, that directors of a corporation are allowed to shield corporate documents from disclosure to the corporation. In other words, this argument might be apt, if Eagle Forum were making it; but they are not: ETF and PSAE are attempting to assert Eagle Forum's own privilege against itself and Plaintiffs.

Moreover, the fiduciary duty exception recognized by *Garner* and a few other courts provides that "a communication between an attorney and a client is not privileged from those to whom the client owes a fiduciary duty." *Ferguson v. Lurie*, 139 F.R.D. 362, 365 (N.D. Ill. 1991). While this exception to privilege would provide a mechanism by which Plaintiffs and Eagle Forum could obtain any communications between Ed Martin, Andy Schlafly, Kathleen Sullivan and John Schlafly with any of their attorneys, that is not the issue before the Court. For example, this might be the analysis if Plaintiffs were attempting to gain access to communications between Ed Martin and his attorneys at Heyl Royster, since Ed Martin owes Plaintiffs and Eagle Forum fiduciary duties. In that instance, Ed Martin could assert that Plaintiffs have to show good cause before he is forced to disclose those communications. Here, however, Plaintiffs and Eagle Forum are demanding disclosure of documents previously shared with counsel for Eagle Forum. Simply put, *Garner* is inapplicable.

Finally, to the extent that PSAE and ETF are asserting that at one time they maintained a common legal interest with Eagle Forum, which should prevent disclosure, this contention is untenable. Eagle Forum has never maintained a common legal interest with an entity designed to replace it (PSAE) and an entity which has attempted to steal its tangible and intangible property

(ETF). The clearest illustration of this point is the Riezman Berger Memo, a document which on its face plots the destruction of Eagle Forum and which was shared with (and perhaps commissioned by) Eagle Forum. Eagle Forum cannot share a common legal interest with those who would seek to destroy it. The undersigned repeatedly advised Runnymede of these divergent interests and demanded that it protect its client's rights. *See* Correspondence attached hereto as **Group Exhibit H**. Even assuming a common legal interest could be crafted between these parties at one time (it cannot), Eagle Forum now has active claims against PSAE, ETF, EFELDF, and others; and these entities are maintaining claims against Eagle Forum. This adversity between these parties "precludes [any of them] from asserting the common interest privilege . . . in this [or any] lawsuit." *See Dexia*, 231 F.R.D. at 296. Accordingly, any documents or communications shared with counsel for Eagle Forum must be produced.

## C. Roger Schlafly and Liza Forshaw

The parties have already presented the Court with their positions concerning Roger Schlafly and Liza Forshaw; however, PSAE and ETF asserted additional arguments in their brief, which should be addressed. PSAE and ETF contend that Roger Schlafly "advised" his mother in setting up web sites and computer programs. This contention is remarkable in that the underlying statement is entirely unremarkable. Every son or daughter, at some time or another, assists their parent in overcoming the challenges of new technology—whether it is setting up a TV remote, showing them what e-mail is, or how to log on to their computer. These communications are not privileged! Then, PSAE and ETF argue that Roger Schlafly acted as some sort of expert in advising the parties with respect to certain technical issues. This is news to Plaintiffs and appears to be news to every other party to this litigation and others. Plaintiffs have propounded discovery to the other side repeatedly requesting the identities of individuals

with knowledge of the facts underlying the lawsuit and for retained and non-retained experts. At no point has anyone identified Roger Schlafly. *See* **Group Exhibit I**, containing a representative sampling of discovery responses. Either these discovery responses violate the parties' discovery obligations or this explanation concerning Roger Schlafly is something invented to prevent disclosing communications with him. Either way, these actions are improper.

PSAE and ETF also contend that Liza Forshaw falls within the common interest doctrine because she is involved with a probate matter involving Phyllis Schlafly's Estate. As explained above, any legal interest adverse to any Plaintiff is not sufficient to establish a common legal interest upon which to communicate with any other party who has any legal interest adverse to any Plaintiff. This is just another attempt by ETF and PSAE to try to define any interest (legal or not) broad enough to justify their refusal to disclose nearly 1000 documents.[13] Accordingly, PSAE and ETF's arguments concerning Roger Schlafly and Liza Forshaw should be rejected.

### D. Joint Review and Production of Privileged Materials

It should come as no surprise that PSAE and ETF fail to address, much less justify, their joint review and production of allegedly privileged materials in this case. As explained above, any common legal interest that could conceivably protect shared documents is necessarily limited and must be strictly construed. PSAE and ETF, ignoring the narrowness of this doctrine, provided unfettered access to all privileged documents to one another. Stated differently, it might be possible that there are a few, limited documents over which ETF and PSAE could share a common legal interest and could, therefore, share with one another. However, irrespective of

---

[13] Notably, PSAE has abandoned its argument that Liza Forshaw was her mother's lawyer. Plaintiffs suspect that this abandonment likely relates to PSAE's inability to produce any engagement agreement between Liza Forshaw and her mother because no such document exists. The lack of any declaration to support the arguments which have already been made by counsel is both telling and troubling.

SL 2550771.4

any shared legal interest, PSAE and ETF each provided all of their respective privileged documents to the other.

At the October 19th hearing before the Court, counsel for PSAE represented to the Court that his law firm, which represents PSAE and ETF, and the Craney Law Group, which only represents ETF, jointly reviewed and produced all documents of ETF and PSAE. The amended privilege log introduces yet another law firm into the mix, Graves Garret—one that has never represented PSAE. In other words, PSAE disclosed all of its documents, privileged and non-privileged, to a third-party, ETF. PSAE then relied on ETF to assert PSAE's privilege for it, and vice versa. By so doing, PSAE and ETF engaged in a wholesale waiver of the attorney client privilege for every document withheld from Plaintiffs.

Presumably, if there were some documents or agreements that could justify this unfathomable waiver, PSAE or ETF would have produced them to the Court. Nothing of the sort has been provided. At the time, Plaintiffs' counsel advised counsel for PSAE and ETF of the impropriety of any proposed shared privilege review; such advice was evidently ignored. Accordingly, all documents jointly reviewed and produced must be disclosed to Plaintiffs because PSAE and ETF's actions amount to a clear waiver of any conceivable privilege.

## VII.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that this Court overrule PSAE's assertions of privilege and order it to produce all communications addressed herein.

Respectfully submitted,

SPENCER FANE LLP

DATE: November 6, 2017

By: /s/ Erik O. Solverud
    Erik O. Solverud, #IL6231306
    (Lead Counsel)
    Megan D. Meadows, #IL6314885
    Eric D. Block, #IL6315217
    Arthur D. Gregg, #IL6319204
    1 N. Brentwood Blvd., Suite 1000
    St. Louis, MO 63105
    Telephone (314) 863-7733
    Facsimile (314) 862-4656
    esolverud@spencerfane.com
    mmeadows@spencerfane.com
    eblock@spencerfane.com
    agregg@spencerfane.com

*Attorneys for Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on November 6, 2017, which will send notice to all counsel of record.

/s/ Erik O. Solverud

SL 2550771.4