## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAGLE FORUM, et al.,          )
                                )
       Plaintiffs,         )
                                )
v.                              )     Case No. 3:16-cv-946-DRH-RJD
                                )
PHYLLIS SCHLAFLY'S AMERICAN EAGLES,  )
                                )
       Defendant.      )

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## RESPONDENT JOEL ROHLF'S MOTION FOR PROTECTIVE ORDER

Plaintiffs submit this Memorandum in Opposition to the Motion for Protective Order filed by Respondent in Discovery Joel Rohlf ("Respondent" or "Rohlf").

## I.    BACKGROUND

Respondent's Motion for Protective Order (the "Motion") attempts to reargue issues that are fully briefed and currently pending before this Court. (*See* Doc. Nos. 102, 103 and 109.) Respondent, through his malpractice insurance coverage counsel, further attempts to muddy the issues before this Court by presenting (yet another) invented version of events and by raising novel, albeit wholly inapposite and puzzling, legal theories. Respondent contends that his "history of events" and new legal theory support his position that directors and/or officers of Defendant Phyllis Schlafly's American Eagles ("PSAE"), not Eagle Forum, hold and can invoke Eagle Forum's privilege.

Respondent's strained contentions lack merit. His former client, Eagle Forum, will be present at his deposition and so will its legal counsel. If questions touch upon potentially privileged topics, Eagle Forum can either invoke the privilege or waive it. This is not complicated; Respondent's attempts to make it so are self-serving and unavailing.

## A. The Runnymede Representation

Respondent was formerly of counsel with the Runnymede Law Group ("Runnymede"). On April 11, 2016, Ed Martin and Phyllis Schlafly, on behalf of Eagle Forum, formally engaged Steve Clark, Respondent and Runnymede "with respect to governance matters, Board disputes and litigation as necessary."[1] Notably, the Runnymede engagement letter is addressed to Eagle Forum and is between Runnymede and Eagle Forum—not Ed Martin, not John Schlafly, and not Phyllis Schlafly.[2] *See* **Ex. 1**. There is no mention of the representation being limited to a certain "group" within Eagle Forum. *See id.* This is further confirmed by the Entry of Appearance filed by Runnymede in the Circuit Court of Madison County, wherein it enters "on behalf of Defendant, Eagle Forum"—again, no mention of the entry being limited to a minority "group." *See* April 26, 2016 Entry of Appearance, attached hereto as **Exhibit 2**. Critically, Ed Martin and John Schlafly *retained separate counsel*, Barry Noeltner, to represent them in their individual capacities in the Circuit Court of Madison County. Respondent and Runnymede terminated their representation of *Eagle Forum* (not Ed Martin, not John Schlafly, not Phyllis Schlafly, nor any specific group within Eagle Forum) on October 6, 2016. (*See* Motion, Ex. V, Doc. No. 112-22.) When it withdrew as counsel in the Circuit Court of Madison County, Runnymede made clear that its client was Eagle Forum—not a particular group.[3] *See* October 6, 2016 Motion to Withdraw, attached hereto as **Exhibit 3**.

---

[1] *See* Terms of Engagement dated April 11, 2016, attached hereto as **Exhibit 1**.

[2] That Respondent would choose not to attach the pertinent engagement letter to his Motion speaks volumes. That document leaves no doubt as to who the client was—namely, Eagle Forum. It also dispels any notion that the relationship was limited to Ed Martin, Phyllis Schlafly and John Schlafly.

[3] Runnymede eventually withdrew from its representation of Eagle Forum. Based upon the records contained in the Runnymede file (which were voluntarily transferred to SmithAmundsen, LLC, Eagle Forum's current counsel), the basis for withdrawal appears rooted in John Schlafly's refusal to comply with a direct order entered by the Circuit Court of Madison County on August 31, 2016. John Schlafly's recalcitrance apparently included, but was likely not limited to, making misrepresentations to Respondent about Eagle Forum property, refusing to correct misrepresentations made in public filings submitted by Runnymede and outright refusing to comply with the court's order to produce Eagle Forum's mailing and contact list to Plaintiffs, the majority directors

SL 2630958.3

As Respondent and Runnymede's own words make clear, any conceivable privilege that could have attached to communications between Eagle Forum and Respondent belongs to Eagle Forum, not to a faction of its former members, and not to any particular officer or employee. Indeed, Respondent articulated exactly this position to the Circuit Court of Madison County, when he stated: "Illinois law is clear that the privilege lies with the corporation itself [Eagle Forum], not with the individual officer and not with the individual employees." *See* August 31, 2016 Court Transcript, 68:17-20, relevant excerpts of which are attached hereto as **Exhibit 4**. That Respondent would now attempt to backpedal and represent to the Court that neither he nor former officers and directors of Eagle Forum could ever have imagined that their communications could be turned over to the corporation itself is baffling.

**B.    Runnymede and Respondent's Role in the Formation of PSAE**

On April 11, 2016, Andy Schlafly (a director of Eagle Forum) sent an email to Ed Martin, John Schlafly and Bruce Schlafly proposing to "start a new c4 using [Phyllis Schlafly's] name" that would "do better and be more effective in politics that [sic] 'Eagle Forum.'"[4] This was the beginning of PSAE, an entity intended to pick up the pieces after Ed Martin, John Schlafly and Andy Schlafly destroyed Eagle Forum. Later that evening, Ed Martin forwarded the email to Respondent, as counsel for Eagle Forum. Before any lawsuit had ever been filed, Respondent was aware of a scheme hatched by these individuals to destroy his purported client and to replace it with PSAE.

To further the plan to replace Eagle Forum, Riezman Berger (PSAE's counsel here) was engaged and prepared a memorandum describing how intellectual property law could be used to

---

of Eagle Forum. Notably, John Schlafly, Respondent's primary point of contact, is a director of PSAE, which stands accused of using Eagle Forum property (including its mailing and contact list) in an effort to unlawfully compete with Eagle Forum.
    [4] *See* Email correspondence dated April 11, 2016, attached hereto as **Exhibit 5**.

SL 2630958.3

attack Eagle Forum. On June 22, 2016, Runnymede pressured Ed Martin for information about the "status of the IP analysis" because "[t]ime is of the essence."[5] That same day, Ed Martin sent Respondent a memorandum prepared by Riezman Berger detailing how intellectual property law could be used to "cause business interruption . . . that would threaten [Eagle Forum's] survival" (the "Riezman Berger Memo").[6] Respondent was, yet again, notified and actively participated in a plan to destroy Eagle Forum, his purported client, and replace it with a competing organization, PSAE.

Simply put, Respondent and his colleagues at Runnymede were involved in the destruction of Eagle Forum, for the benefit of PSAE, up through Runnymede's withdrawal as counsel to Eagle Forum. Plaintiffs, who at all times relevant hereto were the majority of the board of directors for Eagle Forum, now wish to depose Respondent to ascertain the extent of his knowledge of and involvement with the aforementioned acts and event as well as the damage caused by him and others for the benefit of PSAE. This Court should allow this deposition to proceed.

### C.    Plaintiffs and Eagle Forum

Respondent, in his eagerness to avoid testifying, has presented the Court with a self-serving, invented history of events which wholly misstates the relationship between Plaintiffs and Eagle Forum. Plaintiffs, at all times relevant hereto, constituted the majority of Eagle Forum's board of directors. Plaintiffs were always entitled to have the final say in how Eagle Forum conducted its business. Respondent's contention that the Chairman of the Board, Phyllis Schlafly, and Eagle Forum's then-President, Ed Martin, had control over Eagle Forum lacks merit and turns long-established corporate law on its head. A corporation is controlled by its

---

[5] *See* Email correspondence dated June 22, 2016, attached hereto as **Exhibit 6**.
[6] *See* Email correspondence dated June 22, 2016, attached hereto as **Exhibit 7**.

SL 2630958.3

board of directors, and Plaintiffs from the outset comprised a majority of that board. While Ed Martin could have taken actions on Eagle Forum's behalf while President, he was required to answer to Eagle Forum's board of directors—i.e., Plaintiffs.

Moreover, Plaintiffs, as duty bound directors of Eagle Forum, have always doggedly pursued Eagle Forum's best interests (at times, in the face of opposition from Respondent and Runnymede). From the beginning of the Madison County action, and consistent with their fiduciary duties, Plaintiffs have fought to protect Eagle Forum's property and to prevent the misappropriation of the same by individuals, who chose to put their own interests above that of the corporation. Sadly, as the present situation makes clear, Ed Martin and John Schlafly, among others, chose to ignore their own fiduciary duties and to disregard the authority of Eagle Forum's board of directors, as did Respondent, which is why the parties are currently before this Court.

From the outset, and as confirmed by the actions set forth above, Respondent and Runnymede did not share these interests. Indeed, Plaintiffs, as the majority of Eagle Forum's board of directors, repeatedly demanded that Runnymede protect Eagle Forum's rights as it became increasingly clear that Respondent and Runnymede were not doing so. *See* Correspondence attached hereto as **Group Exhibit 8**. While the same cannot be said of Respondent and Runnymede, Plaintiffs have always been on Eagle Forum's side and advocated for its protection.

Additionally, Eagle Forum was included in the Madison County action as a "Nominal Defendant" because it was a necessary party to the litigation and because an accounting of Eagle Forum, for its benefit, was necessary to determine the nature and extent of the wrongdoings perpetrated by Ed Martin and John Schlafly.[7]

---

[7] This is further evidenced by the instant case. Plaintiffs initially brought this case derivatively against PSAE, naming Eagle Forum as a "Nominal Defendant." However, on November 22, 2016, Eagle Forum moved to

SL 2630958.3

### D. Control of Eagle Forum

Further, Respondent attempts to characterize Plaintiffs' control of Eagle Forum as a hostile takeover and as only temporary in nature, based upon the October 20, 2016 TRO entered in the Madison County action. Respondent misstates the facts.

First and foremost, there was no takeover of Eagle Forum. As the majority directors of the Eagle Forum board, Plaintiffs were, at all times relevant hereto, entitled to control Eagle Forum as a matter of law. Eagle Forum's board of directors should have the final say in any action taken by Eagle Forum. The authority of officers of Eagle Forum emanates from its board; and any officer must answer to the board for his or her actions. That said, Respondent is correct that two bad actors (Ed Martin and John Schlafly), with the help of Respondent and Runnymede, frustrated the lawful control of Eagle Forum by its board of directors. Notwithstanding these wrongful actions, there has been no "change in control group"—as a corporation, Eagle Forum has always been controlled by its board of directors and Plaintiffs, have at all relevant times, been in the majority of that board.

Shortly after Plaintiffs filed the Madison County action, the Madison County Circuit Court entered a TRO preserving the status quo: Ed Martin and John Schlafly retained their positions and responsibilities as officers of Eagle Forum and Plaintiffs were allowed full access to Eagle Forum's operations and property as directors. The initial TRO further ordered the parties to work cooperatively in their capacities as officers and directors of Eagle Forum, pending full litigation on the merits of Plaintiffs' claims. Ed Martin and John Schlafly, along

---

be realigned as a plaintiff because it "fully supports Plaintiffs' pursuit of this action and desires to enforce its intellectual property rights against [PSAE]." (*See* Motion for Realignment, Doc. No. 32, p. 2.) Eagle Forum further stated that "no actual controversy exists between Plaintiffs and Eagle Forum." (*See id.* at p. 3.) On January 9, 2017, this Court granted Eagle Forum's Motion for Realignment. (*See* Order dated Jan. 9, 2017, Doc. No. 36.) Since that time, Plaintiffs and Eagle Forum have each sought to protect Eagle Forum's rights and to tirelessly pursue PSAE for the wrongful acts perpetrated by it.

SL 2630958.3

with Respondent and Runnymede, repeatedly refused to respect the court's order. Due to Ed Martin's and John Schlafly's willful disregard of the initial TRO, the Madison County Circuit Court ultimately entered an amended order on October 20, 2016, removing Ed Martin and John Schlafly from their positions, and allowing Eagle Forum to be governed by its majority directors, Plaintiffs.

Prior to the October 20, 2016 TRO hearing, Runnymede withdrew from representation of Eagle Forum and SmithAmundsen was engaged as counsel for Eagle Forum by Ed Martin and John Schlafly. Notably, in the October 20, 2016 TRO, with the knowledge that any semblance of control over Eagle Forum would be stripped away from Ed Martin and John Schlafly, the Judge specifically addressed the relationship between Eagle Forum's counsel and Plaintiffs. The Order authorizes Plaintiffs, "if they see fit" to terminate legal counsel representing Eagle Forum. *See* October 20, 2016 Order, pp. 8-9, attached hereto as **Exhibit 9**. This makes sense: Plaintiffs, as the majority directors, should always have been entitled to terminate legal counsel representing Eagle Forum.

Further, the Court ordered that Eagle Forum's legal counsel retain and preserve the entirety of their legal file and transfer the same to any subsequent legal counsel. *See id.* In other words, the Circuit Court of Madison County ordered the law firm retained by Ed Martin and John Schlafly to represent Eagle Forum to turn over its legal file to any new counsel for Eagle Forum, who might be appointed by Plaintiffs. Plaintiffs, however, continued to utilize SmithAmundsen, who was engaged by Ed Martin and John Schlafly, as counsel for Eagle Forum. SmithAmundsen recognized that it represented Eagle Forum, not a minority faction within Eagle Forum—i.e., John Schlafly and Ed Martin.[8]

---

[8] It also bears mentioning that under Respondent's theory, SmithAmundsen could not have continued to represent Eagle Forum. This is alarming. Respondent's position appears to be that if engaged by a corporate officer

SL 2630958.3

Notwithstanding the October 20, 2016 TRO, Eagle Forum's board make up has changed significantly during the pendency of the disputes between the various parties. Originally, Eagle Forum's board was made up of eleven (11) individuals: the six (6) Plaintiffs, John Schlafly, Andy Schlafly, Phyllis Schlafly, Kathleen Sullivan and La Neil Wright Spivy. In September of 2016, Phyllis Schlafly passed away. On January 8, 2017, La Neil Wright Spivy resigned from her position as a director of the Eagle Forum board of directors. As a result, as of January 2017, the Eagle Forum board was made up nine (9) individuals: the six (6) Plaintiffs, John Schlafly, Andy Schlafly, and Kathleen Sullivan.

On January 28, 2017, Eagle Forum held a properly noticed meeting of its board of directors.[9] At the meeting, the board properly voted to remove John Schlafly, Andy Schlafly and Kathleen Sullivan from the board, and subsequently appointed several new board members. In other words, the "group" that Respondent points to as his client is no longer associated with Eagle Forum.[10] Nor could they be. These individuals have started an organization that directly competes with Eagle Forum, namely, PSAE. John Schlafly, Andy Schlafly, Kathleen Sullivan and Ed Martin are officers and/or directors of PSAE, a direct competitor of Eagle Forum. They

---

to represent a corporation, such counsel must ignore the best interests of its client and defer solely to the interests of the individual corporate officer that retained counsel. This is not only wrong, it is legal malpractice. SmithAmundsen put the interests of its client, Eagle Forum, first, as it is required to do. Respondent's implicit contention that SmithAmundsen should have put the interests of a corporate wrongdoer above those of the client is truly shocking.

[9] On January 6, 2017, Eagle Forum provided notice to its board of directors of a meeting to be held on January 28, 2017. Ed Martin and John Schlafly, via emergency motion in the Circuit Court of Madison County, attempted to prevent Eagle Forum's board from meeting. A hearing on this motion was held on January 27, 2017. *See* January 27, 2017 hearing transcript, relevant excerpts of which are attached hereto as **Exhibit 10**. Ed Martin and John Schlafly's attempt to stop the January 28, 2017 board meeting was roundly rejected by the Madison County Circuit Court. *See id.*, 44:16-45:12.

[10] It is worth noting that the "group" identified by Respondent is nothing more than an amorphous and undefined amalgamation of individuals that transforms throughout Respondent's Motion. Initially, it is defined as Phyllis Schlafly, Ed Martin and John Schlafly; however, two directors and an officer do not provide any control over an organization governed by eleven (11) directors. (*See* Motion, p. 2.) Later in the Motion, Respondent identifies the "group" as "the directors and officers in control of Eagle Forum." (*See* Motion, p. 10.) It is entirely unclear (by design) whether Respondent contends that he represented Andy Schlafly, Kathleen Sullivan and La Neil Wright Spivy. Even if that were the case, Respondent still would not have represented those in control of Eagle Forum, because it did not represent the majority of Eagle Forum's board of directors; any control over Eagle Forum, a corporate entity, must necessarily come from its board.

SL 2630958.3

cannot, ethically or as a matter of law, possess any positions with any semblance of control over Eagle Forum, due to the significant conflict of interest issues that would arise from their positions with PSAE.

E.     **The January 27, 2017 Hearing in Madison County Circuit Court**

As mentioned previously, the Circuit Court of Madison County held a hearing on January 27, 2017.  In addition to rejecting a motion to prevent Eagle Forum's January 28, 2017 board meeting, the court addressed issues similar to those currently raised by Respondent.  There, Defendants Ed Martin and John Schlafly attempted to prevent Eagle Forum from disclosing the Runnymede legal file to Eagle Forum's own board of directors, which included Plaintiffs.  Specifically, counsel for Ed Martin and John Schlafly (identified as Mr. Noeltner in the transcript) raised the same exact argument that Respondent is raising in the instant Motion: that the privilege is held by the former "control group" of Eagle Form, not Eagle Forum.  *See* **Ex. 10**, 10:8-11:20.  The court made clear that the "privilege belongs to Eagle Forum, not to the employees of Eagle Forum."  *See* **Ex. 10**, 34:20-23.  Counsel for Ed Martin and John Schlafly then asked the court to restrain Eagle Forum from using or disclosing the Runnymede legal file within or outside of the litigation; such request was wholly rejected by the court.  *See* **Ex. 10**, 35:17-36:23.  As previously stated by Respondent and held by the Circuit Court of Madison County, Eagle Forum, and Eagle Forum alone, owns the privilege.

## II.     <u>ARGUMENT</u>

The scope of discovery is governed by Rule 26 of the Federal Rules of Civil Procedure. "[F]or good cause shown," a court may enter a protective order "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters."  Fed. R. Civ. P. 26(c)(1)(A) & (D).  In order to determine if good cause exists, "the court must balance the interests of the parties, taking

SL 2630958.3

into account the harm to the party seeking the protective order and the importance of the disclosure to the nonmoving party." *Cent. States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.*, No. 10 C 2881, 2012 WL 2863478, at *2 (N.D. Ill. July 11, 2012) (citing *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997)). The burden of demonstrating that good cause exists rests squarely on the party requesting the protective order. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994).

### A.     The Deposition of Joel Rohlf Is Crucial.

Respondent complains that Plaintiffs have not shown the necessity of his deposition. Not true. Before any lawsuit had been filed, Ed Martin had sent Respondent, as counsel to Eagle Forum, an email confirming a plot to destroy Eagle Forum, Respondent's client, and replace it with PSAE. In furtherance of this plot, the Riezman Berger Memo was commissioned and drafted and, at Runnymede's urging, shared with Respondent. When it received the Riezman Berger Memo, Respondent was, yet again, notified and appears to have participated in an active plan to destroy Eagle Forum, his purported client. Simply put, Respondent and his colleagues at Runnymede were actively colluding with directors of PSAE and pursuing the destruction of Eagle Forum, for the benefit of PSAE, while purportedly representing Eagle Forum.

Even the withdrawal of Runnymede implicates directors or officers of PSAE trying to cripple Eagle Forum as their ability to exercise (unlawful) control over Eagle Forum crumbled. For instance, Respondent was primarily involved in attempting to secure John Schlafly's compliance with the August 31, 2017 directive to produce Eagle Forum's mailing and contact list to Plaintiffs. Upon information and belief, Respondent's failure to secure such compliance led to Runnymede's withdrawal. Notably, this list was never produced and, more importantly, upon information and belief, this list was provided to PSAE by John Schlafly to unfairly compete

10

with Eagle Forum, in an effort to destroy the same. Thus, like its representation, even Runnymede's withdrawal as purported counsel to Eagle Forum is directly relevant to the present litigation.

## B. Eagle Forum, Not Its Former Officers and Directors, Holds the Privilege.

It is well established that the attorney-client privilege attaches to corporations as well as to individuals. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). However, "a corporation must act through agents[,] . . . cannot speak directly to its lawyers[,] . . . [and] cannot directly waive the privilege when disclosure is in its best interest." *Id.* These actions must be taken by persons with the authority to act on the corporation's behalf. *Id.* "[F]or solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Id.* at 348-49.

The attorney-client privilege "does not belong to the individual agents of the corporation seeking advice; the privilege belongs to the corporation, because the corporation is the client." *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 277 (N.D. Ill. 2004). "That is the rule in federal courts, and it is also the rule in Illinois." *Id.* (citing *Weintraub*, 471 U.S. at 349 ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. . . . Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties") and *Hayes v. Burlington No. and Santa Fe Railway Co.*, 323 Ill.App.3d 474, 256 Ill.Dec. 590, 752 N.E.2d 470, 473 (2001) (in corporate context, court held that "[t]he attorney-client privilege belongs to and can

SL 2630958.3

only be waived by the client")).  When a former officer, director, employee or agent leaves the employ of the corporation, "the privilege, and the legal rights associated with it, do not leave" with that individual—it remains with the corporation, because it belongs to the corporation.  *Id.*

Indeed, "[c]ourts have consistently held that to invoke the attorney-client privilege on a company's behalf, the director or officer must be a current member of the management team." *Nat'l Lumber Co.*, 2012 WL 2863478, at *4; *see also Weintraub*, 471 U.S. at 349 ("New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney client privilege with respect to communications made by former officers and directors."); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, Nos. 05 C 4120, 05 C 5164, 2012 WL 874322, at *3 (N.D. Ill. Mar. 14, 2012) ("[A]ny privilege in the documents at issue remained with [the corporation] after [the officer's] departure; the privilege did not travel with him."); *Dexia*, 231 F.R.D. at 277.  "[F]ormer directors or officers . . . cannot invoke the attorney-client privilege on behalf of [the corporation]." *Nat'l Lumber Co.*, 2012 WL 2863478, at *4.

Applying *Weintraub*, "courts have found that the power to invoke or waive a corporation's attorney-client privilege is an incident of control of the corporation." *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 405 (N.D. Ill. 2007) (collecting cases). To that end, myriad courts have held that current management of a corporation, even if only a trustee in bankruptcy, are free to waive the attorney-client privilege with respect to communications with former management. *See In re Grand Jury Subpoena*, 274 F.3d 563, 568 (1st Cir. 2001); *In re Nat'l Trade Corp.*, 76 B.R. 646, 647 (N.D. Ill. 1987) (holding that bankruptcy trustee in control of corporation effectively waived privilege with respect to communications between former counsel and former management); *Parus Holdings, Inc. v.*

*Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1003 (N.D. Ill. 2008) (applying the same legal principles and holding that new corporate owner acquired the attorney-client privileges and relationships that had existed between predecessor company and its attorneys); *Weintraub*, 471 U.S. at 358 (holding that the trustee of a corporation in bankruptcy properly waived prebankruptcy privileged communications); *Nat'l Lumber Co.*, 2012 WL 2863478, at *4 (similar).

Here, Respondent and Runnymede's own words, in prior filings with the Circuit Court of Madison County, make clear that Respondent represented Eagle Forum, not a particular minority group. *See* **Exs. 1-3**. Further, case law is legion that current management can waive the privilege with respect to communications involving former management.

The most ludicrous aspect of Respondent's argument is his purported reliance on counsel for Ed Martin and John Schlafly for his decision to refuse to testify. This charade is contrary to established corporate law and amounts to no more than a transparent effort to invite former employees of Eagle Forum to invoke Eagle Forum's privilege for it. It is also ridiculous on its face, as Eagle Forum and Plaintiffs have active claims pending against both of these individuals for myriad breaches of fiduciary duty perpetuated against Eagle Forum. Moreover, these individuals are directors and/or officers of an entity that directly competes with Eagle Forum, PSAE. While unsurprising that Respondent does not wish to testify as to his complicity in harming Eagle Forum and enabling PSAE's wrongful activities, he cannot hide behind Eagle Forum to avoid his deposition. Eagle Forum, through its board of directors, controls its privilege and can waive it.

To that end, a reminder from *Weintraub* is illustrative: "The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests

SL 2630958.3

of the corporation and not of themselves as individuals." 477 U.S. at 348-49. Respondent's argument suggests that Eagle Forum's former officers and directors should be afforded special consideration because they ignored the best interests of the corporation and instead acted in their own self-interest. Respondent would have this egregious breach of their fiduciary duties function as a sword against Eagle Forum and a shield against the disclosure of their communications to their victim, Eagle Forum. This turns *Weintraub* on its head and is wholly unsupported by the law.

Moreover, Respondent's contention that Eagle Forum and Plaintiffs are adverse is similarly without merit. As Eagle Forum's Motion for Realignment makes clear, Plaintiffs have at all times been singularly focused on protecting Eagle Forum and its property. This is in perfect alignment with Plaintiffs' obligations as directors and fiduciaries of Eagle Forum. Unfortunately, others (Respondent included) chose to ignore their own fiduciary duties and to disregard the authority of Eagle Forum's board of directors, which is why the parties are currently before this Court. While Respondent has at times pursued or sanctioned conduct adverse to his own client, Plaintiffs have always sought what was best for Eagle Forum.

Respondent's reliance upon Plaintiffs' accounting claim directed to Eagle Forum (for its benefit) champions form over substance and, like Respondent's other arguments, rings hollow. Eagle Forum is a nominal defendant and a necessary party in Madison County, and as is apparent from the claim, Plaintiffs are seeking an accounting to uncover the myriad misdeeds perpetuated against Eagle Forum by Ed Martin, John Schlafly and others. For these reasons, Eagle Forum, via its board of directors, may waive the privilege between Respondent and Eagle Forum.

SL 2630958.3

## C.   Respondent's Contention That the Privilege Lies With Individuals Formerly Associated with Eagle Forum Is Unsupported and Lacks Merit.

The law presumes that the attorney represents only the corporate entity, not individuals within the corporate sphere or any purported control group within the corporate structure.  *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001).   Where an attorney attempts to raise the privilege on behalf of former employees of the corporate client, the attorney carries the burden of establishing the privilege and must demonstrate that he served as counsel to the former employees.   *In re Nat'l Trade Corp.*, 76 B.R. 646, 647 (N.D. Ill. 1987).   In order to determine whether the privilege applies to former employees or officers, courts have adopted the test set forth in *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120 (3d Cir. 1986).   *See In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001).   The test sets forth five benchmarks that must be met in order to establish that an attorney represented the former employee or "control group" personally:

> First, they must show [the employees] approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when [the employees] approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with [the employees] in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that the[] conversations with [counsel] were confidential. And fifth, they must show that the substance of the[] conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*Bevill*, 805 F.2d at 123; *accord Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1041 (10th Cir. 1998); *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997); *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir. 1994).

Here, Respondent has not even attempted to proffer any evidence, or argument for that matter, that his client was, in fact, a minority faction of Eagle Forum, nor could he.  Moreover, even a cursory review of the relevant benchmarks makes clear that Respondent cannot meet his

15

burden. As to the second factor, the engagement letter, Runnymede's entry of appearance and its withdrawal make clear that Respondent was retained by Eagle Forum, not any particular employee. Indeed, the individuals involved in the Madison County action (Ed Martin and John Schlafly) retained separate counsel to represent their individual interests. As to the fifth factor, there could be no conversations between Respondent and individuals formerly associated with Eagle Forum that did not concern the general affairs of the company; such communications would necessarily relate to the governance of Eagle Forum or a board dispute involving Eagle Forum, as the engagement letter makes clear.

As to the fourth benchmark, Respondent cannot establish the existence of such privilege because there was no reasonable expectation of privacy or confidentiality between Respondent, purported counsel for Eagle Forum, and individuals seeking its destruction. Respondent, throughout his Motion, complains that "[t]he members of Group 2 could not have reasonably anticipated that communications they had with the attorney they hired to defeat the takeover would later be divulged to the very people they had hired the attorney to stop." (Motion, p. 12.) This is absurd. First, the engagement letter between Runnymede and Eagle Forum provides:

> Please also note that you may not have any expectations of privacy in e-mails sent or received via an employer's e-mail system, computers, servers, internet service, or the like (or those of any associated entity with which you are associated) (collectively, "Company E-Mail). . . .

**Ex. 1**, p. 3. Second, Runnymede explicitly re-iterated that point by e-mail dated April 11, 2016: "We should not use the Eagle Forum emails in case the Cori group gets control of the servers." *See* Correspondence between Respondent, Runnymede, Ed Martin and others, attached hereto as **Group Exhibit 11**. Third, Runnymede underscored this policy to Phyllis Schlafly, Ed Martin, John Schlafly and Andy Schlafly yet a third time on April 30, 2016:

SL 2630958.3

> One <u>confidentiality/privilege</u> concern I have is whether the order giving Plaintiffs "access" to all Eagle Forum property gives them access to EF servers, and therefore email accounts. As such, *do not use* Eagle Forum email accounts for any legal strategy-related communications. This email is sent to the personal emails of Mrs. Schlafly, John, Andy, and Ed.

Ex. 11 (emphasis in original).

Respondent's position, that certain individuals were unable to anticipate that their communications with Eagle Forum's counsel may be disclosed to the individuals legally entitled (at all times) to control Eagle Forum (its board of directors) in the context of a proceeding to enforce the rights of the board of directors is utter fiction. Runnymede issued (at least) three written admonitions which would put any individual on notice that any privilege governing communications with Runnymede belonged to Eagle Forum. Moreover, the individual parties initially named in this lawsuit each took care to secure separate representation. These contrived arguments about the expectations of dissident individuals *formerly* associated with Eagle Forum are inapposite and, in any event, hold no water. In short, Respondent's arguments are not good faith arguments regarding misplaced expectations; they are about regret.

### D. Respondent's Cited Case Law Is Inapposite.

Unsurprisingly, Respondent has not found any case law to support his contention that former employees hold the privilege of the corporate client, nor has it found case law to support its contention that new management cannot waive the privilege as to communications involving former officers and directors. Instead, Respondent asks this Court to apply New York law relating to mergers and acquisitions. Respondent concedes that this case does not involve a merger or acquisition, but he somehow still asserts that this case law should apply.

To be clear, Plaintiffs were at all times the majority of Eagle Forum's board of directors—i.e., the body in control of Eagle Forum. There was no takeover. Plaintiffs should

SL 2630958.3

have always had access to Eagle Forum and its property as its directors. New York case law pertaining to negotiated mergers and acquisitions has no bearing on the issue before this Court. Moreover, as more fully set forth above, applicable case law is resolute that new management of a corporation retains control of the corporation's privilege. Respondent and individuals formerly associated with Eagle Forum chose to ignore its board of directors, the body charged with controlling it. A minority faction's wrongful actions designed to obstruct its board of directors and destroy the organization are not a merger—they are egregious breaches of fiduciary duties. Communications in furtherance of those breaches cannot be shielded from the corporation because they were communicated to corporate counsel. To the contrary, such communications should have immediately been turned over to the corporation by Respondent. Indeed, SmithAmundsen's actions in this regard are admirable. As soon as SmithAmundsen became aware of the Riezman Berger Memo and other troubling documents in the Runnymede file, it turned over the contents of the file to its client, Eagle Forum, and its board of directors.

Finally, the irony of Respondent attempting to speak to his ethical duties should not be lost on the Court. Respondent sat on information regarding an inside job to destroy his purported client; allowed Eagle Forum's former officers and directors to misappropriate its assets; assisted a competitor of Eagle Forum; and now refuses to speak with his former client, Eagle Forum, without his malpractice attorney present.

E. **Any Work Product Protection Has Similarly Been Waived.**

Consistent with the rationale above, Respondent's contentions concerning the work product doctrine are misplaced. A corporation's waiver of privilege and work product protections negates former counsel's potential claim of the same. *See In re Grand Jury Subpoena*, 274 F.3d at 574. In any event, "challenges to claims of work product immunity [are]

SL 2630958.3

evaluated with the understanding that the purpose of the immunity is to protect the adversary system. When work product immunity does not serve such purpose, there should be no immunity despite what may best serve individual interests." *In re ANR Advance Transp. Co., Inc.*, 302 B.R. 607, 616–17 (E.D. Wis. 2003). Moreover, former clients are not adversaries to their lawyers. *Id.* at 617. The work product doctrine cannot, therefore, be used to prevent disclosure of documents to a lawyer's former client. *Id.* In the case of a change of corporate management, denying new management "access would [] make [] law firms less accountable to their client. Non-disclosure in such a situation would prevent the client from discovering whether the attorney had effectively represented it and thus undermine the work product immunity goal of encouraging effective representation of clients." *Id.*

That is precisely the situation before the Court. Respondent is attempting to hide behind the work product doctrine to attempt to shield documents from his former client, Eagle Forum, and its board of directors. Plaintiffs, as the majority of Eagle Forum's board of directors, are not some unrelated third party—they are tasked with governing Eagle Forum and are within the scope of the privilege. If anything, Respondent has already waived any purported work product protection by disclosing it to officers and/or directors of PSAE—a competing entity. This situation defies logic: Respondent is looking to a competing entity and individuals who actively sought to destroy Eagle Forum in order to avoid turning over documents belonging to its former client, Eagle Forum, and its board of directors.

Finally, Respondent's legal file was turned over to Eagle Forum's board of directors, including Plaintiffs, a year ago.[11] The file included work product of Respondent. Indeed, that

---

[11] Regarding Runnymede's voluntary transfer of the legal file to SmithAmundsen back in October 11, 2016, Respondent is playing fast and loose with the facts. Respondent contends that SmithAmundsen took over the file on October 11, 2016 with the understanding that it should be kept confidential from Plaintiffs. The October 11, 2016 letter transferring the files says nothing of the sort. (*See* Motion, Ex. X, Doc. No. 112-24.) Instead, two

was the subject of the January 27, 2017 hearing in Madison County. Respondent has had a year, if not more, to seek a judicial determination as to the applicability of the doctrine and has instead sat on his hands. *See In re Hechinger Inv. Co. of Delaware*, 285 B.R. 601, 614 (D. Del. 2002) ; *In re Grand Jury (Impounded)*, 138 F.3d 978 (3d Cir. 1998). Respondent, by not timely seeking a judicial determination, has waived the protection.

## III.   CONCLUSION

The Madison County Circuit Court has already decided this issue—twice. In its October 20, 2016 Order, the court ordered that counsel retained by Ed Martin and John Schlafly for Eagle Forum turn over its entire legal file to counsel for Eagle Forum to be appointed and directed by Plaintiffs. The court also ordered that Plaintiffs had sole control over Eagle Forum and could hire and fire counsel for Eagle Forum at their discretion. The October 20, 2016 Order made clear that the entire legal file was to be turned over to Eagle Forum and necessarily to Plaintiffs. Thereafter, counsel for Ed Martin and John Schlafly attempted to raise the same arguments that Respondent raises herein at the January 27, 2017 hearing in Madison County. The Circuit Court of Madison County rejected these arguments then, and this Court should reject them again.

---

months later, in December 2016, Runnymede, along with counsel for myriad third parties (many of which are actively adverse or hostile to Eagle Forum), demanded that SmithAmundsen not turn over the legal file to its client, Eagle Forum. (*See* Motion, Ex. Y, Doc. No. 112-25.) Indeed, this letter came about after Runnymede, Respondent, and others became aware that their misdeeds had been discovered by SmithAmundsen and that SmithAmundsen, unlike Respondent, intended to protect its client.

SL 2630958.3

Respectfully submitted,

SPENCER FANE LLP

DATE: January 12, 2018

By: /s/ Erik O. Solverud
Erik O. Solverud, #IL6231306
(Lead Counsel)
Megan D. Meadows, #IL6314885
Eric D. Block, #IL6315217
Arthur D. Gregg, #IL6319204
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Telephone (314) 863-7733
Facsimile (314) 862-4656
esolverud@spencerfane.com
mmeadows@spencerfane.com
eblock@spencerfane.com
agregg@spencerfane.com

*Attorneys for Plaintiffs Anne Schlafly Cori,
Eunie Smith, Cathie Adams, Carolyn
McLarty, Rosina Kovar, and Shirley Curry*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on January 12, 2018, which will send notice to:

Nelson L. Mitten
Paul A. Grote
Riezman Berger, P.C.
7700 Bonhomme, 7th Floor
St. Louis, MO 63105

*Attorneys for Defendant
Phyllis Schlafly's American Eagles*

Thomas P. McGarry
Dawn A. Sallerson
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081

*Attorneys for Respondent Joel Rohlf*

James P. Sanders
SmithAmundsen, LLC
120 S. Central Ave., Suite 700
St. Louis, Missouri 63105

*Attorneys for Plaintiff Eagle Forum*

/s/ Erik O. Solverud

SL 2630958.3