1

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

ANNE CORI, et al.,            )
                              )
        Plaintiffs,           )
                              )
        vs.                   ) No. 2016-MR-000111
                              )
EDWARD R. MARTIN, JR., et     )
al.,                          )
                              )
        Defendants.           )

REPORT OF PROCEEDINGS

REPORT OF PROCEEDINGS of the hearing before Circuit Judge Dennis Ruth, commencing on January 27, 2017.

APPEARANCES:

MR. ERIK O. SOLVERUD and
MR. ARTHUR D. GREGG and
MR. ERIC BLOCK
SPENCER FANE
    Appears on behalf of the Individual Plaintiffs


MR. JAMES P. SANDERS and
MS. JESSICA POWERS
SMITH AMUNDSEN
    Appears on behalf of Eagle Forum

EXHIBIT 10

```
MR. BARRY S. NOELTNER and
MS. ALISHA L. BIESINGER
HEYL ROYSTER
     Appears on behalf of the Defendants



MS. JESSICA BRASEL
KNAPP, OHL & GREEN
     Appears on behalf of Anne Cori, Counterclaim
     Defendant



MR. JASON GOURLEY
DONOVAN, ROSE & NESTER
     Appears on behalf of Cathie Adams, Counterclaim
     Defendant
```

Kerri A. Smith
CSR #084-003937
Official Court Reporter
155 N. Main, Rm. 344
Edwardsville, IL 62025

10

1   as nominal defendant.  And they were adverse -- it was
2   an adverse position to plaintiffs.  There's no
3   question about that.
4            THE COURT:  Who owns the privilege?
5            MR. NOELTNER:  What's that?
6            THE COURT:  Who owns the attorney client
7   privilege?
8            MR. NOELTNER:  That privilege would be
9   owned by -- in this case when you have adverse action,
10  that would be owned by the organization as it
11  consisted at that time and control group, those people
12  who were feeding the information to those lawyers in
13  order to contest the plaintiffs' attempt to take over
14  of the organization.
15           This is not a situation where they're suing
16  an outside party and there's a change in ownership or
17  change in the board where that work product then
18  becomes the work product of the organization.  These
19  are clearly adverse parties at the time.
20           Okay.  So all we're asking, Judge, is that
21  there be no disclosure of that information; that we
22  wait for -- that's why it's an emergency hearing.  We
23  wanted to come in and make sure there was no
24  disclosure.  We can try to determine how we're going

```
 1   to go about determining what's attorney client, what's
 2   joint defense agreement, what's work product.  Because
 3   clearly there are things in all of our files that
 4   could be disclosed and others that are in files.  And
 5   there are a number of the sections of the code of
 6   professional conduct that apply to this.
 7             It's a very simple, logical argument.  They
 8   can't take the information they gain, which is adverse
 9   to the plaintiffs, and now use it against those same
10   parties.  Simply cannot.  And there's no authority
11   that allows --
12             THE COURT:  You mean adverse to the
13   defendants?
14             MR. NOELTNER:  Yeah.  Right.  In fact,
15   they're filing motions against the same people.  So,
16   Judge, we would ask, again, nothing prospective, just
17   a stop.  You can't disclose it.  We need to take a
18   further look at it, because they may have made the
19   disclosures.  They may not.  We're entitled to know.
20   Thank you.
21             MR. SANDERS:  James Sanders, Your Honor,
22   for Eagle Forum.  I don't think it's as simple as
23   Mr. Noeltner would portray.  I think the fact that you
24   were working on it last night until 11 is instructive
```

1  documents.  And it was then brought to my attention
2  that the decision was made that the disclosure would
3  occur.
4           That's the basis of the timing of this
5  motion.  And it is, in fact, an emergency, because if
6  it's not stopped, then it's, you know, the proverbial
7  un-ringing of a bell.
8           MR. SANDERS:  Your Honor, we've been
9  bombarded, our general counsel's office and one of the
10 founders of the firm, Glen Amundsen, by individuals
11 such that we had to block Mr. Martin from
12 communicating directly with Smith Amundsen's law
13 firm -- the law firm and our general counsel's office.
14          We, again, disclosed -- we disclosed to the
15 board that this information was out there in December.
16 At that point anyone, including Rummymede, Mr. Martin,
17 Mr. Schlafly, presumably someone could file another
18 lawsuit, could have taken action on this.  And they
19 waited until yesterday afternoon.
20          THE COURT:  Well, generally as it relates
21 to any privilege, as I just said, I believe that
22 privilege belongs to Eagle Forum, not to the employees
23 of Eagle Forum.  Any specific issues -- evidentiary
24 issues that come up during this hearing that you want

1  to raise, I'll address.  I don't even know if they're
2  going to be bringing any of these up, because we're
3  here really on your motion to stop a meeting tomorrow.
4  May not be titled that way, but that's the relief
5  that's asked for.
6              MR. SANDERS:  One more point, Your Honor.
7  If we'd be allowed seven days leave to file a written
8  response to Mr. Noeltner.
9              THE COURT:  On that underlying issue?
10             MR. SANDERS:  On that underlying issue.
11             THE COURT:  Yeah.
12             MR. SANDERS:  Thank you, Your Honor.
13             MR. NOELTNER:  And, Judge, I would --
14             THE COURT:  Preliminary issue, not the
15  underlying issue.
16             MR. SANDERS:  Fair enough.
17             MR. NOELTNER:  I would only ask that in
18  light of the seven days to respond there be no
19  disclosure beyond what's already been done during
20  those seven days.  Is that fair enough?
21             MR. SANDERS:  We have no intent to disclose
22  it to anyone other than the people who should
23  rightfully have it, the board of directors.
24             THE COURT:  Are you asking me to tell them

```
 1   not at tomorrow's meeting to divulge information?
 2              MR. NOELTNER:  That's --
 3              MR. SANDERS:  We certainly can talk to the
 4   board.
 5              THE COURT:  I thought the motion went
 6   toward today's hearing?
 7              MR. SANDERS:  Absolutely.
 8              MR. NOELTNER:  Our motion concerns --
 9              THE COURT:  Your motion is to stop
10   tomorrow's meeting.
11              MR. NOELTNER:  Well, that's the other
12   motion.  Yes, it is.
13              MR. SANDERS:  To stop --
14              THE COURT:  Are you telling me that you're
15   asking me to stop them from divulging outside of the
16   litigation?  I'm not gonna do that.
17              MR. NOELTNER:  Within litigation.  Yes.
18              THE COURT:  What's that?
19              MR. NOELTNER:  Your Honor, within the
20   litigation to disclose it to people that are not part
21   of that group.  They're not entitled.
22              MR. SANDERS:  Your Honor --
23              THE COURT:  Well, that's denied.
24              MR. SANDERS:  Judge, you ready for the
```

```
 1   asked for in the end is for me to stop a meeting
 2   tomorrow and for them to take action tomorrow.  That's
 3   an injunction.
 4            MR. NOELTNER:  It's compliance with the
 5   previous TRO.
 6            THE COURT:  Well, if they don't comply,
 7   then the other option is for me to say fine, come back
 8   after they don't comply.  You're either asking me for
 9   injunction today or you come back on Monday after
10   they've done what they intend to do and ask for a --
11   file a Motion for Contempt.  Those are your two
12   options.
13            MR. NOELTNER:  Thank you, Judge.
14            THE COURT:  We're gonna take an hour break.
15                 (A lunch recess was taken.)
16            THE COURT:  Ready to call witnesses?
17            MR. NOELTNER:  Judge, we are not calling
18   witnesses.  We are going to stand on our pleadings and
19   our argument as it relates to the Motion of Relief.
20            THE COURT:  You want say anything?
21            MR. SOLVERUD:  Your Honor, I think our
22   response addresses it.  But I think this is a TRO.
23   It's seeking injunctive relief.  It hasn't met any of
24   the requirements.  I think procedurally there's no way
```

```
 1  you can rule on what he's presented to the Court.  I
 2  think we lay that out --
 3            THE COURT:  Well, you said enough.  I agree
 4  it's the moving party's burden.  Motion is denied.  I
 5  will not take up any of the other matters.  And I
 6  don't know where the case will go as far as the other
 7  judge or not.  Okay.
 8            MR. NOELTNER:  Judge, would you like the
 9  parties to confer drafting these orders for today to
10  send it to --
11            THE COURT:  Well, write in one sentence,
12  "motion denied".
13            MR. SANDERS:  Motions denied?
14            THE COURT:  Well, motion for -- let's
15  define the motion, which is motion for -- I got so
16  many motions up here.  Emergency motion -- which one
17  is it?
18            MS. POWERS:  Emergency motion to enforce
19  the October 20, 2015 amended TRO and restrain and bar
20  the special meeting on January 28, 2017.
21            THE COURT:  That's a mouthful.
22            MR. SANDERS:  As well as the one we took up
23  first, Your Honor.
24            THE COURT:  Well, we can raise that
```