# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, an Illinois Not for Profit Corporation, | )<br>)<br>) |
| and | )<br>) |
| ANNE SCHLAFLY CORI, on behalf of EAGLE FORUM, et al., | )<br>) Case No.: 3:16-cv-946-DRH-RJD<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| PHYLLIS SCHLAFLY'S AMERICAN EAGLES, a Virginia Not for Profit Corporation, | )<br>)<br>) |
| Defendant. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This is a trademark infringement action in which Plaintiffs seek injunctive relief and damages arising from violations of federal and state law. On October 19, 2017, the undersigned held a discovery dispute conference concerning issues with the privilege log produced by Defendant Phyllis Schlafly's American Eagles (hereinafter referred to as "PSAE" or "Defendant") and Eagle Trust Fund. Following the conference, Defendant was directed to file a memorandum in support of its argument that the documents referenced in the log are privileged under the common interest doctrine. Defendant filed its memorandum[1] (Doc. 101) on October 30, 2017, and Plaintiffs filed their responses thereto on November 6, 2017 (Docs. 102-103). The Court held an additional discovery dispute conference concerning the privilege issue on November 15, 2017, and its ruling is set forth below.

---

[1] The memorandum is brought before the Court by both Defendant PSAE and Eagle Trust Fund. The Court notes that Eagle Trust Fund is not a defendant to this action, but rather, is an interested party as a respondent in discovery.

## BACKGROUND

Although the parties provide somewhat differing accounts concerning the genesis of this litigation, it is apparent that it was preceded by a fracture among the Eagle Forum Board Members transpiring on or about April 11, 2016. At the April 11, 2016 Eagle Forum board meeting, Ed Martin was terminated as President of Eagle Forum. According to Plaintiffs, prior to that meeting, Ed Martin and Phyllis Schlafly had engaged Steve Clark and the Runnymede Law Group ("Runnymede"), to provide certain services for Eagle Forum, including "representation and counsel with respect to governance matters, Board disputes and litigation as necessary (*see* Doc. 102-1). Plaintiffs further contend that late in the evening on April 11, 2016, Andy Schlafly (a director of Eagle Forum), sent an email to Ed Martin, John Schlafly, and Bruce Schlafly proposing to "start a new c4 using mother's name" that would "do better and be more effective in politics than 'Eagle Forum'." (*See* Doc. 102-2). This email was purportedly forwarded by Ed Martin to Runnymede later that evening (*See id.*). Plaintiffs, therefore, contend that an "unholy alliance" was created amongst Eagle Forum's attorneys (Runnymede), Eagle Forum's acting President (Ed Martin), and two Eagle Forum directors (John and Andy Schlafly) to replace the organization they were "duty-bound to protect."

Subsequent to the April 11, 2016 board meeting, the Individual Plaintiffs in this action (Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry) filed an action in the Circuit Court of Madison County, Illinois on April 22, 2016, against John Schlafly and Ed Martin (and naming Eagle Forum as a nominal defendant) (hereinafter referred to as the "Madison County Action") (*See* Doc. 101-1). In the Madison County Action, Plaintiffs sought an accounting of Eagle Forum property, assets, and resources, as well as declaratory relief to uphold and enforce the firing of Ed Martin. Plaintiffs also brought claims of

breach of fiduciary duty against John Schlafly and Ed Martin. Plaintiffs filed an amended complaint in the Madison County Action on March 23, 2017, naming as additional defendants Andrew Schlafly, Kathleen Sullivan, the Estate of Phyllis M. Schlafly, Eagle Trust Fund, and Eagle Forum Education and Legal Defense Fund (*See* Doc. 101-3).

The filing of the instant action followed the Madison County Action, initially as a derivative suit. Defendant asserts that prior to October 20, 2016[2], Smith Amundsen (retained by Ed Martin and John Schlafly to represent Eagle Forum on October 7, 2017[3]), only took actions at the direction of Martin and Schlafly; however, after the entry of a temporary restraining order in the Madison County Action, Smith Amundsen ceased communications with Martin and Schlafly and, upon information and belief, began taking instruction from the Individual Plaintiffs in this case. Defendant also asserts that at the time this suit was filed the Board of Directors for PSAE included the now late Phyllis Schlafly, Kathleen Sullivan, Ed Martin, John Schlafly, and Andrew Schlafly.

On October 16, 2016, after the filing of the instant action, the Phyllis Schlafly Revocable Trust ("PSRT") and the Eagle Trust Fund ("ETF") filed suit in the Eastern District of Missouri against the Individual Plaintiffs, as well as Jane and John Does ("the EDMO Lawsuit") (*See* Doc. 101-4). The EDMO Lawsuit involved ETF's and PSRT's assertion of exclusive control and ownership of intellectual property allegedly owned by Phyllis Schlafly, setting forth claims that the defendants had misappropriated and infringed on the intellectual property of Phyllis Schlafly. The complaint was amended on April 17, 2017, and Eagle Forum Education and Legal Defense

---

[2] Defendant makes reference to both October 20, 2016 and October 20, 2017 in its brief. It appears that any reference to October 20, 2017 is in error as the Madison County Order at issue was entered on October 20, 2016.
[3] Defendant's reference to October 6, 2017 appears to be in error as attorney's for Smith Amundsen entered their notice of appearance on behalf of Eagle Forum in this matter on October 17, 2016 (*see* Docs. 27 and 28).

Fund ("EFELDF") was named as a plaintiff and Eagle Forum was named as a defendant.

In January 2017, Andrew Schlafly brought an action against Eagle Forum and the Individual Plaintiffs in the Circuit Court of St. Louis County, Missouri. This action was later removed to the United States District Court for the Eastern District of Missouri, *Schlafly v. Eagle Forum, et al.*, Cause No. 4:17-cv-283-JAR. Also, Plaintiff Anne Cori brought an action in the Circuit Court of St. Louis County, Missouri, alleging that the defendants, John Schlafly, Bruce Schlafly, Andrew Schlafly, and Liza Forshaw asserted undue influence over the late Phyllis Schlafly as to her trusts and will.

Defendant PSAE contends that, based upon the litigation filed to date, the Individual Plaintiffs in this lawsuit (Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry) are adverse to the following individuals and entities: John Schlafly, Andrew Schlafly, Bruce Schlafly, Ed Martin, Eagle Trust Fund, Eagle Forum Education and Legal Defense Fund, The Phyllis Schlafly Revocable Trust, Phyllis Schlafly's American Eagles, Kathleen Sullivan, Ned Pfeifer, and Liza Forshaw. Defendant asserts that because the emails and documents identified on its privilege log are between parties and counsel representing one or more of the adverse entities (with the exception of Roger Schlafly), they are subject to the attorney-client privilege under the common interest doctrine.

Plaintiffs disagree, arguing that Defendants have oversimplified the common interest doctrine. Plaintiffs assert that the entities and individuals do not have identical common legal interests and it is inappropriate to blindly apply the common law doctrine to any party adverse to Plaintiffs in any litigation.

## ATTORNEY-CLIENT PRIVILEGE AND THE COMMON INTEREST DOCTRINE[4]

The attorney-client privilege is the oldest and one of the most carefully guarded privileges known to the common law. *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). "Its purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389.

The protection of the privilege extends to confidential communications made by a client to his lawyer "[w]here legal advice of any kind is sought … from a professional legal advisor in his capacity as such." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000). In order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The party seeking to invoke the privilege bears the burden of proving all of its essential elements. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

The attorney-client privilege does not extend to statements made by a client to his or her attorney in the presence of a third-party who is not an agent of either the client or attorney. *Id.* at 1462. In other words, knowing disclosure to a third-party almost invariably surrenders the privilege. *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013). The common interest doctrine is considered an "exception to th[is] rule …." *BDO Seidman*, 492 F.3d at 816.

As explained by the Seventh Circuit Court of Appeals:

---

[4] The Court finds, and the parties agree, that the federal common law is applicable, and will be applied, in this case. FED.R.EVID. 501.

> In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances. For that reason, the common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise.

*Id.* It is well settled that communications need not be made in anticipation of litigation to fall within the common interest doctrine. *Id.* However, for the doctrine to apply, the person with whom the privileged information is shared must have an *identical* — not merely similar — *legal interest* in the subject matter of the communication, which must be made in the course of furthering the ongoing, common enterprise. *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239 (N.D. Ill. 2014) (citing *BDO Seidman*, 492 F.3d at 816; *Pampered Chef v. Alexanian*, 737 F.Supp.2d 958, 963 (N.D. Ill. 2010)). "A shared rooting interest in the successful outcome of a case … is not a common legal interest." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 732 (N.D. Ill. 2014) (internal citations and emphasis omitted). Finally, the Seventh Circuit directs that the application of the common interest doctrine "must be strictly confined," as it acts "in derogation of the search for truth." *BDO Seidman*, 492 F.3d at 816 (internal citations omitted).

## DISCUSSION

Defendant asserts that the documents at issue are covered by the common interest doctrine as PSAE, Eagle Trust Fund, John Schlafly, Andrew Schlafly, Bruce Schlafly, Ed Martin, EFELDF, the Estate of Phyllis Schlafly[5], the Phyllis Schlafly Revocable Trust, Kathleen Sullivan, Liza Forshaw, and Ned Pfeifer (referred to by Defendant as "Group 2") all share a common legal interest against the Individual Plaintiffs and Eagle Forum. Defendant contends that these

---
[5] Although not included in Defendant's "Group 2" list, the Estate of Phyllis Schlafly is referenced by Defendant in its explanation of Group 2 (*see* Doc. 101 at 5).

individuals and entities are either named defendants, plaintiffs, or counterclaimants in litigation against the Individual Plaintiffs or Eagle Forum and are working toward the same legal goal — "the protection of the Phyllis Schlafly Family of Marks and the ousting of the Cori Plaintiff [*sic*] as directors of Eagle Forum."

In support of its argument, Defendant asserts that "[a] reading of the pleadings in all of the various cases clearly establishes that the parties in Group 2 are litigating many similar claims with a common goal … [and] they quite literally have a common interest in defeating the Cori Plaintiffs as the opponent in those litigations, and are allowed to communicate with each other to develop a joint strategy." Defendant's conclusory argument misses the mark. First, Defendant has failed to articulate the precise legal interest that binds the parties in "Group 2" (aside from "defeating" the Cori Plaintiffs). Indeed, what Defendant describes appears to be a mere "rooting interest" among these individuals and entities against the Individual Plaintiffs. While it is apparent that there are disputes concerning the Phyllis Schlafly Family of Marks and the corporate governance of Eagle Forum, the Court is not convinced that the interests of PSAE are c*learly aligned* with ETF, EFELDF, or PSRT, or any trustee or member of the Board of the same. If they are, Defendant has failed to meet its burden on this point. In particular, with regard to the ownership of the Family of Marks, it appears these entities have taken differing positions. Similarly, there has been no showing of a common legal interest between PSAE or members of its Board of Directors (Kathleen Sullivan, Ed Martin, John Schlafly, Andrew Schlafly, and Phyllis Schlafly at the time this lawsuit was filed) and the other individuals identified by Defendant in "Group 2" (Bruce Schlafly, Liza Forshaw, or Ned Pfeifer). While communications between Kathleen Sullivan, Ed Martin, John Schlafly, Andrew Schlafly, and counsel for PSAE concerning legal advice and strategy for this case are certainly protected, *see Wilstein v. San Tropai Condominium*

*Mater Ass'n*, 189 F.R.D. 371, 379 (N.D. Ill. 1999), the Court finds no basis to extend this privilege to communications with individuals not within the PSAE "control group." In other words, those communications identified on the privilege log that were not solely confined to controlling members of PSAE and PSAE's counsel are not protected by the common interest doctrine. Insofar as there are communications solely between controlling members of PSAE, the Court would need to address claims of privilege on a case-by-case basis.

With regard to Roger Schlafly in particular, the Court finds no basis to apply the common interest doctrine to communications in which he was a part. Defendant indicates that although Roger Schlafly is not a party to any of the ongoing litigation, he was very much involved in advising his mother, including setting up and maintaining databases, web sites, mailing lists, accounting programs, and other computer programs. Defendant also explains that he "advised lawyers concerning these matters during the course of litigation."

While the Court recognizes that the common interest doctrine can cover communications between non-lawyers of multiple parties with a common interest, Defendant's reliance on this point with regard to Roger Schlafly is misplaced. The common interest exception to a waiver only comes in to play once a party has first established that a privilege applies. *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273-74 (N.D. Ill. 2004) ("Thus, if a document is not already shielded from production by a privilege, then the common interest doctrine does not apply."). Defendant has not addressed why Roger Schlafly's familiarity with the litigation and knowledge of the databases, web sites, and other intellectual property at issue in this case and others entitles him to receive otherwise privileged communications in this litigation. Moreover, Defendant has failed to show how Roger Schlafly shares a common legal interest with Defendant. That Roger Schlafly made inquiries related to and concerning the litigation against the Individual Plaintiffs is

certainly not sufficient to except his communications from the general waiver rule.

Defendant further asserts that communications with Runnymede Law Group and Smith Amundsen prior to October 20, 2016[6] are privileged and need not be disclosed. In setting forth this argument, Defendant asks the Court to treat the asserted privilege here like a derivative suit where the company is divided between the shareholders and directors. In so doing, Defendant asks the Court to rely on *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), wherein the court held that the directors of a corporation, when being sued by the stockholders and the company itself, were still entitled to their privileged documents and communications. Defendant contends that this "fiduciary duty exception" is applicable in the instant suit, wherein directors are being sued by other directors. Defendant seeks to shield emails with Runnymede Law Group and Smith Amundsen from the Individual Plaintiffs on this basis. Defendant's argument is unconvincing and misplaced.

As mentioned by Plaintiffs, *Garner* holds that shareholders can only obtain otherwise privileged documents from a corporation in a derivative suit upon a showing of good cause. 430 F.3d at 1103. The *Garner* holding indicates that the privilege lies with the corporation. *See id.* ("The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders."). Accordingly, its application in this instance is dubious, as PSAE and ETF are seeking to enforce the privilege, not Eagle Forum. That there is ongoing litigation between directors of Eagle Forum in other venues does not allow one group of those directors to invoke privilege on behalf of the corporation in this litigation. Further, the Court does not find that PSAE

---

[6] Defendant makes reference to both October 20, 2016 and October 20, 2017. It appears that any reference to October 20, 2017 is in error as the Madison County Order at issue was entered on October 20, 2016.

and Eagle Forum shared a common legal interest before October 20, 2016[7].

## Conclusion

Based on the foregoing, the Court **OVERRULES** Defendant PSAE and ETF's assertions of privilege pursuant to the common interest doctrine as set forth in this Order. Defendant PSAE is **ORDERED** to produce all communications addressed herein and outlined in its privilege log, with the exception of those communications that were limited to the members of PSAE's Board of Directors (Kathleen Sullivan, Ed Martin, John Schlafly, Andrew Schlafly, and Phyllis Schlafly) and counsel for PSAE. Insofar as there are communications solely between these controlling members of PSAE and no counsel, it shall seek to enforce the privilege on a document-by-document basis. PSAE shall produce said documents by **February 16, 2018**.

At this time, it is not clear to the Court whether any privileged communications between PSAE members and its counsel were reviewed by outside counsel (e.g., Graves Garret). If there is an issue concerning any such communication, the parties shall bring it to the Court's attention. Further, insofar as issues remain concerning Defendant's invocation of work product privilege, the parties should bring said disputes to the Court's attention as necessary.

**IT IS SO ORDERED.**

**DATED: February 1, 2018**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

[7] Although this action was originally filed as a derivative suit with Eagle Forum named as a nominal defendant, the Court granted Eagle Forum's motion for realignment in which it indicated that it agreed with the Individual Plaintiffs that PSAE is illegally using the intellectual property of Eagle Forum (Docs. 32 and 36). Eagle Forum further indicated that no actual controversy existed between it and the Individual Plaintiffs (Doc. 32).