# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Cause No.: 3:16-cv-946-DRH-RJD ) |
| PHYLLIS SCHLAFLY'S AMERICAN EAGLES, | ) ) |
| Defendant. | ) ) |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO RESPONDENT JOEL ROHLF'S APPEAL AND OBJECTIONS TO MAGISTRATE'S MARCH 29, 2018 ORDER

Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry (collectively, "Plaintiffs"), for their Response in Opposition to the Appeal and Objections to Magistrate's March 29, 2018 Order (Doc. 129) filed by Respondent Joel Rohlf ("Respondent" or "Rohlf"), state as follows:

### I.  INTRODUCTION

Respondent's Appeal and Objections to Magistrate's March 29, 2018 Order (the "Appeal") is the latest in a long line of tenuous and unfounded assertions of privilege in this case. Put simply, Respondent's Motion for Protective Order, Reply in Support thereof, and instant Appeal make clear that Respondent will attempt to avoid, at all costs, being called to account for his assistance to Defendant Phyllis Schlafly American Eagles ("PSAE") in its quest to compete with and destroy Eagle Forum. Incredibly, Respondent was Eagle Forum's own attorney while he counseled others in their attempts to destroy it. These circumstances provide additional context as to why Respondent's apparent malpractice insurance counsel is fighting so hard to prevent his client's deposition.

Respondent contends that the March 29, 2018 Order (the "Order") is clearly erroneous or contrary to law because: (1) its finding that Plaintiffs, the majority of Eagle Forum's board of

directors, have always constituted the majority of Eagle Forum's board of directors is premature; (2) Respondent disagrees with the Order's recognition that Eagle Forum is a nominal defendant in the Madison County Action; and (3) Respondent maintains that others may also possess relevant information of which he has knowledge. These assertions lack merit for several reasons: first, this finding—that the majority directors of Eagle Forum are, in fact, the majority directors of Eagle Forum—is not meaningfully in dispute; second, Respondent's misdeeds in his representation of Eagle Forum do not change Eagle Forum's status as a nominal defendant in the Madison County Action; and third, Respondent's contention that, notwithstanding his knowledge relevant to the instant dispute, others should be deposed before him is misplaced and unsupported.

## II.  BACKGROUND FACTS

Eagle Forum is a not-for-profit corporation organized under the State of Illinois with its principal place of business located in Madison County, Illinois. In April of 2016, Plaintiffs constituted a majority of the Board of Directors of Eagle Forum. The minority of the Board of Directors of Eagle Forum was comprised of Kathleen Sullivan, Phyllis Schlafly, John Schlafly and Andy Schlafly (collectively, the "Schlafly Minority"), as well as LaNeil Wright Spivy, who eventually resigned from the Board and later passed away. At that time, Ed Martin was the purported President of Eagle Forum. Phyllis Schlafly served as Chairman; Anne Schlafly Cori served as Vice Chairman; Eunie Smith served as First Vice President; Cathie Adams served as Second Vice President; and John Schlafly served as Treasurer.

On March 29, 2016, Cathie Adams, Shirley Curry and Eunie Smith noticed a meeting of the Eagle Forum Board of Directors to convene by telephone on April 11, 2016 at 2:00 PM. On April 10, 2016, Plaintiffs received a demand letter from the Clark Law Firm, LLC d/b/a

RUNNYMEDE law group ("Runnymede"). *See* April 10, 2016 demand letter, attached hereto as **Exhibit 1**. The demand letter sought to enjoin the April 11, 2016 meeting. The demand letter accused Plaintiffs of violating numerous provisions of the Eagle Forum Bylaws in noticing the April 11, 2016 meeting and took numerous uninformed (and ultimately untrue) positions in favor of Ed Martin, the purported President of Eagle Forum at that time, and against Plaintiffs.[1]

On April 11, 2016, Runnymede was formally retained by Eagle Forum via an engagement letter signed by Ed Martin (as President) and Phyllis Schlafly (as Board Chair). *See* April 11, 2016 engagement letter, attached hereto as **Exhibit 2**.

On April 11, 2016, the meeting of the Eagle Forum Board of Directors was convened and a motion was called and passed which provided (1) that neither Runnymede, nor any other law firm, had been engaged to represent Eagle Forum; (2) that Eunie Smith shall advise Runnymede that it does not represent Eagle Forum and that it should not hold itself out to any third party as Eagle Forum's legal counsel; and (3) that only the Eagle Forum Board of Directors shall have the authority to engage legal counsel to represent Eagle Forum. Eunie Smith sent a letter to Runnymede on April 11, 2016 regarding this resolution.

On the evening of April 11, 2016, Andy Schlafly sent an email to Ed Martin, John Schlafly and Bruce Schlafly (another brother, unaffiliated with Eagle Forum) proposing to start a new not-for-profit "using [Phyllis Schlafly's] name" to replace Eagle Forum:

> A brand new organization would have the vitality of Eagle Forum in the 1970s and 1980s, without attracting people who do nothing but complain.
>
> …

---

[1] For instance, the demand letter claims that Ed Martin "has presided over innumerable meetings of the organization and taken countless acts on behalf of the organization, all of which you have ratified." In fact, since his "election" to President in January of 2015 (which did not comply with the Bylaws), Ed Martin merely delivered a report before being dismissed from the annual Board of Directors meeting in September of 2015.

> A lot of dead wood has accumulated over the years. … Also, let's work with a smaller number of state chapters, and more selective state leadership. But nearly everyone would migrate to our Phyllis Schlafly Forum rather than go with the Gang of 6, if given the opportunity.
>
> Meanwhile, litigation over the assets in Eagle Forum can drag on for years. The Gang of 6 won't be accomplishing the mission of Eagle Forum, and there could be claims of breach of fiduciary duty with respect to the donations in addition to the Bylaws violations of today.

Ed Martin forwarded this email to Runnymede that same evening, making Eagle Forum's then legal counsel aware of a plot to destroy Eagle Forum and replace it with a competitor (the soon-to-be-formed PSAE); yet, Runnymede and Respondent made no mention of this plot to the Eagle Forum Board of Directors and took no action. *See* email from E. Martin dated April 11, 2016, attached hereto as **Exhibit 3**.

Thereafter, in response to a lawsuit filed by Plaintiffs to enforce the resolutions passed at the April 11, 2016 meeting, Runnymede entered its appearance on behalf of Eagle Forum on April 26, 2016.

From its initial engagement (in April of 2016) to its eventual withdrawal (in October of 2016), Runnymede and Respondent received numerous correspondence from Plaintiffs challenging Runnymede's representation of Eagle Forum as improper; objecting to Plaintiffs' exclusion from the operations of Eagle Forum; detailing the harm befalling Eagle Forum at the behest of Ed Martin, Andy Schlafly and John Schlafly; and urging Runnymede to intercede on Eagle Forum's behalf. Notwithstanding that it continued to act as Eagle Forum's legal counsel, Runnymede never provided a meaningful response to these letters or otherwise took any action to protect Eagle Forum. A representative sampling of Runnymede's (and Respondent's) misdeeds includes the following:

- Runnymede refused to share with Plaintiffs (the majority directors and officers of Eagle Forum) documents related to their representation of Eagle Forum. *See* May 6, 2016 letter from E. Solverud regarding Runnymede file, attached hereto as **Exhibit 4**, and May 12, 2016 response letter from S. Clark, attached hereto as **Exhibit 5**;

- Runnymede refused to intercede on Eagle Forum's behalf to suppress misleading and harmful (to Plaintiffs and Eagle Forum) "litigation updates" sent by Andy Schlafly to an undisclosed mailing list. *See* May 9, 2016 letter from E. Solverud regarding Andy Schlafly's misleading "litigation updates," attached hereto as **Exhibit 6**, and May 13, 2016 response letter from S. Clark, attached hereto as **Exhibit 7**;

- Runnymede refused to grant Plaintiffs access to the contact and membership lists of Eagle Forum and appeared to be assisting the Schlafly Minority's claims that the Eagle Forum contact and membership lists never even belonged to Eagle Forum (in an attempt to divest Eagle Forum of its own property out of spite for Plaintiffs). *See* May 31, 2016 letter from E. Solverud regarding Eagle Forum's contact and membership lists, attached hereto as **Exhibit 8**, and June 2, 2016 response letter from S. Clark, attached hereto as **Exhibit 9**;

- Runnymede refused to grant Plaintiffs access to the contact and membership lists of Eagle Forum, as granted by a temporary restraining order, absent certain extra conditions and stated "Eagle Forum is making no statement regarding its ownership in any database or list beyond the State Leaders list." *See* August 12, 2016 letter from E. Solverud regarding Eagle Forum's contact and membership lists, attached hereto as **Exhibit 10**; August 19, 2016 response letter from J. Rohlf, attached hereto as **Exhibit 11**; and August 30, 2016 reply letter from E. Solverud, attached hereto as **Exhibit 12**;

- Runnymede refused to suppress threats from Ed Martin and Phyllis Schlafly against State Eagle Forums and stated "[o]ur representation of Eagle Forum is limited to this corporate governance dispute and does not extend to intellectual property issues." Moreover, instead of disputing Phyllis Schlafly's claims regarding intellectual property, Runnymede apparently advised acquiescence: "Eagle Forum has a number of options to respond to Mrs. Schlafly's request for approval to use her name, likeness, writing and the eagle name and logo." *See* August 19, 2016 letter from E. Solverud regarding threats against State Eagle Forums, attached hereto as **Exhibit 13**, and August 24, 2016 response letter from J. Rohlf, attached hereto as **Exhibit 14**;

- Runnymede refused to address or even acknowledge the impropriety of Ed Martin misrepresenting facts to non-party witnesses in an attempt to influence deposition testimony. *See* August 23, 2016 letter from E. Solverud regarding misrepresentations to Bott Radio Network, attached hereto as **Exhibit 15**;

- Runnymede refused to acknowledge or assert Eagle Forum's ownership of Eagle Council, the annual event for the gathering of members of Eagle Forum. *See* August 24, 2016 letter from E. Solverud regarding Eagle Council, attached hereto as **Exhibit 16**; September 2, 2016 response letter from J. Rohlf, attached hereto as **Exhibit 17**; and September 7, 2016 reply letter from E. Solverud, attached hereto as **Exhibit 18**;

- Runnymede refused to acknowledge the impropriety of the creation of PSAE as a competitor of Eagle Forum by the Schlafly Minority, each of whom was a *current* director and/or officer of Eagle Forum. Runnymede also refused to disclose its role in the creation of PSAE and provide documents regarding the same (such as the April 11, 2016 email from Andy Schlafly). *See* September 4, 2016 letter regarding the creation of PSAE and improper use of Eagle Forum property, attached hereto as **Exhibit 19**;

- After the death of Phyllis Schlafly, Runnymede refused to provide information regarding the key man life insurance policies owned by Eagle Forum including the status of Eagle Forum's claims thereunder. *See* September 21, 2016 letter regarding Phyllis Schlafly life insurance policies, attached hereto as **Exhibit 20**;

- Runnymede refused to acknowledge or otherwise protect Eagle Forum from the egregious breach of fiduciary duty perpetrated by John Schlafly in changing the registered owner of eagleforum.org domain name from Eagle Forum to Eagle Trust Fund. *See* September 28, 2016 letter regarding change to the eagleforum.org domain name, attached hereto as **Exhibit 21**; and

- Following the change to the eagleforum.org domain name, Runnymede refused to confirm that appropriate action had been taken by Eagle Forum "to preserve and protect the Paradox database and all other databases, membership lists, mailing lists or other lists used to send mass mailings, emails and/or robocalls." *See* September 28, 2016 letter regarding security of Paradox database, attached hereto as **Exhibit 22**.

Not only did Runnymede and Respondent fail to acknowledge or appropriately respond to Plaintiffs' attempts to protect the best interests of Eagle Forum, during this period Runnymede and Respondent were implicated in the plot to destroy Eagle Forum. Indeed, in May of 2016, Runnymede assisted the Schlafly Minority in retaining an intellectual property attorney to further the Schlafly Minority's plot to destroy Eagle Forum.

Emmett McAuliffe of Riezman Berger subsequently prepared a memorandum describing how intellectual property law could be used to attack and destroy Eagle Forum ("Riezman

Berger Memo"). On June 22, 2016, Runnymede pressured Martin for information about the "status of the IP analysis" because "[t]ime is of the essence." *See* June 22, 2016 email from Runnymede, attached hereto as **Exhibit 23**. That same day, Ed Martin sent Runnymede the Riezman Berger Memo, which, among other things, detailed how intellectual property law could be used to "cause business interruption ... that would threaten [Eagle Forum's] survival." *See* email from Ed Martin dated June 22, 2016 attaching memorandum prepared by Riezman Berger, attached hereto as **Exhibit 24**.

By June 29, 2016, Runnymede had reviewed and analyzed the Riezman Berger Memo (*i.e.*, the "emmett analysis") and then provided Ed Martin advice "on the issue of Phyllis['s] [IP] in her name and all of that." *See* Transcript of June 29, 2016 voicemail from S. Clark to E. Martin, attached hereto as **Exhibit 25**. Specifically, in the voicemail, Mr. Clark mentions calling a reporter and then following up with Ed Martin about the scheme to divest Eagle Forum of its intellectual property in favor of the theory provided in the Riezman Berger Memo. Mr. Clark further advised Ed Martin that "it's important … that you all are having that discussion" regarding the plot outlined in the Riezman Berger Memo. He then directed Ed Martin to share the Riezman Berger Memo with others, if he had not already.

Incredibly, Runnymede never disclosed the Riezman Berger Memo to the Eagle Forum Board or otherwise took any action to protect Eagle Forum from the scheme set forth in the Riezman Berger Memo or to assert Eagle Forum's interests and rights to the intellectual property that would eventually come under attack by the Schlafly Minority. The existence of the Riezman Berger Memo and the fact that Runnymede possessed a copy of the same was not discovered until after Runnymede had ceased its representation of Eagle Forum. The successor law firm

made the Runnymede legal file available to the entire Eagle Forum Board of Directors, including Plaintiffs—something that Respondent, counsel for Runnymede, and Mr. Clark tried to prevent.

On August 31, 2016, the Circuit Court for Madison County, Illinois entered its Order "direct[ing] Defendants [including Eagle Forum] to grant Plaintiffs access to and use of the 14,000 person list, and that both Plaintiffs and Defendants may access and use the list." Shortly thereafter, rather than comply with the August 31 Order, attorneys from Runnymede, including Respondent, offered a litany of (untrue) excuses as to why compliance would take a substantial amount of time, before eventually stating they were researching procedures to challenge the order. *See* Plaintiffs' Second Motion for Contempt Related to the Mailing List, attached hereto as **Exhibit 26**.

On October 6, 2016, Runnymede notified Ed Martin and John Schlafly that it was terminating its representation of Eagle Forum and filed a motion to withdraw as counsel for Eagle Forum. On October 21, 2016, Runnymede's motion to withdraw was granted. On October 10, 2016, Ed Martin and John Schlafly directed Runnymede to transfer its file to Eagle Forum's successor counsel, SmithAmundsen, LLC.

### III. ARGUMENT

Local Rule 73.1(a) of the Southern District of Illinois provides:

> (a) Appeal of Non-Dispositive Matters—28 U.S.C. § 636(b)(1)(A)
>
> Any party may appeal a Magistrate Judge's order determining a motion or matter within **14 days** after issuance of a Magistrate Judge's order, unless a different time is prescribed by the Magistrate Judge or a District Judge. The party shall file with the Clerk of the Court and serve on all parties a written request for an appeal which shall specifically designate the order or part of the order that the parties wish the Court to reconsider. A District Judge shall reconsider the matter and shall set aside any portion of the Magistrate Judge's order found to be ***clearly erroneous or contrary to the law***. A District Judge may also reconsider sua

sponte any matter determined by a Magistrate Judge under this rule.

(emphasis added). Similarly, Federal Rule of Civil Procedure 72(a) provides that a court may modify or reverse a magistrate judge on a non-dispositive issue only upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to the law." A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."); *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) ("To be clearly erroneous, a decision must strike [the Court] as more than just maybe or probably wrong; it must ... strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.") (cited by *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001)); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 495312, at *1 (S.D. Ill. Jan. 22, 2018).

Accordingly, the Court should affirm Judge Daly's decision "unless [her] factual findings are clearly erroneous or [her] legal conclusions are contrary to law." *Williams v. Butler*, No. 15-CV-00457-DRH-CJP, 2016 WL 3414698, at *2 (S.D. Ill. June 22, 2016) (citing Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A); S.D. Ill. Local Rule 73.1(a)).

### A. The Order Properly Held New York State Law On Mergers And Acquisitions Inapposite Because Plaintiffs Have Been In Control Of Eagle Forum At All Relevant Times.

Before Judge Daly, Respondent asserted that this Court should ignore longstanding, binding precedent relating to the attorney-client privilege and should instead apply New York

state law concerning mergers and acquisitions, which provides an exception for confidential communications related to acquisitions. Judge Daly "decline[d] to follow the approach adopted by New York courts in the context of mergers and acquisitions *because the factual scenario here is not analogous*." Order, Doc. 128, p. 6. The Order further provides:

> … Because a corporation is generally controlled by its board of directors, *see Weintraub*, 471 U.S. at 358 n.4, the individual Plaintiffs, in their capacity as majority directors, have had control over Eagle Forum, and ultimately its privilege, at all times relevant. Despite the clear fissure in Eagle Forum's Board and management, there never was an occurrence akin to an acquisition. That Eagle Forum is named as a nominal defendant in the Madison County action and is actively litigating the same does not affect the Court's reasoning as such status does not create the adversity professed by Rohlf. Further, Rohlf correctly points out that the TRO in the Madison County action indicated that its purpose was to "maintain the status quo … and allow defendants Martin and John Schlafly to maintain custody, possession and control of the Eagle Forum property and assets while working cooperatively with Plaintiffs" (*see* Doc. 112-27). The court's statement, however, does not support the finding proposed by Rohlf — that Ed Martin and Phyllis Schlafly controlled Eagle Forum prior to the April 11, 2016 meeting. Rather, it supports the general proposition that officers and directors work together to manage a corporation.
>
> Based on the foregoing, the undersigned finds no reason to deviate from the well-established principle that the right to waive a corporation's attorney-client privilege is an incident of control of the corporation. The individual Plaintiffs, acting as Eagle Forum's majority directors, have control of Eagle Forum and, as such, have the power to waive attorney-client privilege on its behalf. Plaintiffs' position is further strengthened insofar as Eagle Forum has, at all times relevant, ultimately been in their control (albeit only in their capacity as majority directors). Because the ability to waive privilege lies with Eagle Forum, not Ed Martin and John Schlafly, the Court declines to quash the subpoena directed to Joel Rohlf or enter a protective order concerning the same on the basis of privilege. However, of course, Eagle Forum shall decide whether or not to waive privilege.

*See* Order, Doc. 128, pp. 6-7.

SL 2689678.1

Indeed, New York case law pertaining to negotiated mergers and acquisitions has no bearing on the issue before this Court. Respondent, Runnymede and individuals formerly associated with Eagle Forum chose to ignore its board of directors, the body charged with controlling it. The Schlafly Minority's wrongful actions (aided and abetted by the corporation's counsel) designed to obstruct its board of directors and destroy the organization are not a merger—they are egregious breaches of fiduciary duties. Communications in furtherance of those breaches cannot be shielded from the corporation because they were communicated to corporate counsel. To the contrary, such communications should have immediately been turned over to Eagle Forum's board by Respondent and Runnymede, who were duty bound to act in Eagle Forum's best interests.

Before Judge Daly, Respondent argued that this Court should ignore well-established federal law and should instead apply the law of a state with no connection to the parties or this action. Judge Daly declined. Recognizing that following controlling precedent cannot be contrary to law, Respondent instead argues that the Order should not have found that Plaintiffs have at all times relevant comprised the majority of Eagle Forum's board of directors. This issue is not reasonably in dispute (nor is it material to the instant Order). Indeed, there is no dispute that "[t]he individual Plaintiffs, acting as Eagle Forum's majority directors, have control of Eagle Forum and, as such, have the power to waive attorney-client privilege on its behalf." *See* Order, Doc. 128, p. 7. Judge Daly merely stated that the foregoing proposition, itself dispositive, is further bolstered "insofar as Eagle Forum has, at all times relevant, ultimately been in their control (albeit only in their capacity as majority directors)." *Id*.

Respondent now claims that Judge Daly should have refrained from deciding a "hotly contested issue in pending state court litigation" concerning the status of Plaintiff Rosina Kovar

11

SL 2689678.1

as a proper board member of Eagle Forum. Respondent's disappointment with Judge Daly's finding does not make it clearly erroneous. Indeed, if this issue were so "hotly contested" (it is not), Respondent should not have waited until his Appeal to raise it for the first time. This argument was wholly absent from Respondent's initial Motion (Doc. 112) and his subsequent Reply (Doc. 116).[2]

In his Reply, Respondent's sole argument on this point was that the April 29, 2016 TRO in the Madison County Action "indicated that its purpose was to 'maintain the status quo … and allow defendants Martin and John Schlafly to maintain custody, possession and control of the Eagle Forum property and assets while working cooperatively with Plaintiffs' (*see* Doc. 112-27)." *See* Order, Doc. 128, p. 7. Judge Daly rejected Respondent's argument, finding instead that the quoted language refuted, rather than supported, his position: "The court's statement, however, does not support the finding proposed by Rohlf — that Ed Martin and Phyllis Schlafly controlled Eagle Forum prior to the April 11, 2016 meeting. Rather, it supports the general proposition that officers and directors work together to manage a corporation." *Id*.

Respondent also takes issue with Judge Daly's recognition that control of Eagle Forum is not at issue in the Madison County action—*i.e.*, "it is well settled that the majority of a corporation's board of directors ultimately has control of the corporation." *See* Order, Doc. 128, p. 7, n. 2 (citing *Weintraub*, 471 U.S. at 358, n. 4; 805 Ill. Comp. Stat. 5/8.03). Respondent relies on a quote from a March 26, 2018 Order from the Circuit Court of Madison County concerning Riezman Berger's representation of Missouri Eagle Forum, a subsidiary or affiliate of Eagle

---

[2] Notably, the purported significance of Respondent's fictitious argument regarding Ms. Kovar is puzzling. Even assuming, *arguendo*, Ms. Kovar was not a proper director of Eagle Forum (she was), this still would not change that the other five Plaintiffs were members of the body in control of Eagle Forum. Further, it would not change the fact that the Schlafly Minority lost further standing on the board following Phyllis Schlafly's death and the resignation of LaNeil Spivy Wright. Even under Respondent's argument (which is unfounded), control of Eagle Forum passed to Plaintiffs in September 2016, following Phyllis Schlafly's death, and was further bolstered by LaNeil Spivy Wright's resignation in January 2017.

Forum. The Circuit Court of Madison County declined, at that time, to disqualify Riezman Berger until evidence was adduced that Missouri Eagle Forum is in fact the alter ego of Eagle Forum. *See* Doc. 129-1, p. 7.

In examining this issue, the Circuit Court stated that "control over membership, control over assets, control over organizational policy, and control over direction and objectives" is at issue in the Madison County Action. *See id*. at p. 6. Notably absent is any mention of control over Eagle Forum—this issue is not in dispute. Not only have Plaintiffs always been the majority of its board of directors, the bad actors who conspired with Respondent to divest Eagle Forum of its property and destroy it (*i.e.*, John Schlafly, Ed Martin, Andy Schlafly and Kathleen Sullivan) have been properly removed from their positions with Eagle Forum. *See* Plaintiffs' Opposition to Respondent's Motion for Protective Order, Doc. 115, pp. 8-9. These issues of "control" over Eagle Forum's property only exist because Respondent and Runnymede failed to act in Eagle Forum's best interests while John Schlafly, Ed Martin and others pillaged and attempted to destroy Eagle Forum.

Respondent's arguments concerning "control" and the number of directors are transparent red herrings—attempts to point to anything other than his actions in assisting the Schlafly Minority in their plans to compete with and destroy Respondent and Runnymede's client, Eagle Forum. Regardless, Respondent and Runnymede had a duty to advise all directors, both majority and minority, and to act in the best interest of Eagle Forum—Respondent and Runnymede did neither. Indeed, this is exactly what is required by Rule 1.13(b) of the Illinois Rules of Professional Conduct, which provides:

> (b) If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the

> organization, … and is likely to result in substantial injury to the organization, **the lawyer shall proceed as is reasonably necessary in the best interest of the organization**. … Such measures may include among others:
>
>> (1) asking reconsideration of the matter;
>> (2) advising that a separate legal opinion on the matter be sought for representation to appropriate authority in the organization; and
>> (3) **referring the matter to higher authority in the organization**, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.

(emphasis added). Instead, Respondent and Runnymede did nothing, apart from continuing to assist the Schlafly Minority and PSAE in their scheme until Runnymede's withdrawal.

Judge Daly's March 29, 2018 Order is well written and clearly sets out the reasons for her ruling. She considered both the arguments of Plaintiffs and Respondent and, in a thorough analysis, held that Eagle Forum controls its privilege (not Respondent and not individuals formerly associated with Eagle Forum). Moreover, Judge Daly certainly had the discretion to find as she did and, therefore, her ruling is not subject to a finding that it is clearly erroneous or contrary to the law. Accordingly, the Order should be affirmed and Respondent's Appeal should be denied.

**B. The Order Properly Found That Eagle Forum Is A Nominal Defendant In The Madison County Action.**

Respondent next contends that Judge Daly clearly erred in finding that Eagle Form was a nominal defendant in the Madison County Action. Respondent argues that because he views Plaintiffs as adverse to Eagle Forum in the Madison County Action, Eagle Forum should be precluded from waiving its privilege. Respondent's entire argument amounts to a *non-sequitur* and relies solely upon a false premise. Regardless of its status relative to anyone, Eagle Forum controls its own privilege and may waive it. As noted by Judge Daly, "[t]hat Eagle Forum is

named as a nominal defendant in the Madison County action and is actively litigating the same does not affect the Court's reasoning … ." *See* Order, Doc. 128, p. 6.

Eagle Forum was included in the Madison County action as a "Nominal Defendant" because it was a necessary party to the litigation and because an accounting of Eagle Forum, for its benefit, was necessary to determine the nature and extent of the wrongdoings perpetrated by Ed Martin and John Schlafly.[3]  Respondent's reliance upon Plaintiffs' accounting claim directed to Eagle Forum (for its benefit) champions form over substance.  Further, Respondent's contention that his and Runnymede's actions in choosing to disobey orders of the Circuit Court of Madison County while imperiling Eagle Forum's property (thus requiring Plaintiffs to seek Court intervention via Motions for Contempt) misses the mark.  Respondent's actions required the filings that he now points to as evidence of an adversarial relationship—Runnymede and Respondent caused such relationship, not Eagle Forum.  As stated by Eagle Forum in the instant case, "no actual controversy exists between Plaintiffs and Eagle Forum."  *See* Motion for Realignment, Doc. 32, p. 3.

For these reasons, Judge Daly properly disregarded Respondent's contention that Eagle Forum should be precluded from controlling its privilege because it is not a nominal defendant. Accordingly, the Order should be affirmed.

---

[3] This is further evidenced by the instant case.  Plaintiffs initially brought this case derivatively against PSAE, naming Eagle Forum as a "Nominal Defendant."  However, on November 22, 2016, Eagle Forum moved to be realigned as a plaintiff because it "fully supports Plaintiffs' pursuit of this action and desires to enforce its intellectual property rights against [PSAE]." *See* Motion for Realignment, Doc. 32, p. 2.  On January 9, 2017, this Court granted Eagle Forum's Motion for Realignment.  *See* Order dated Jan. 9, 2017, Doc. 36.  Since that time, Plaintiffs and Eagle Forum have each sought to protect Eagle Forum's rights and to tirelessly pursue PSAE for the wrongful acts perpetrated by it.

**C. The Order Properly Concluded That Respondent's Deposition Was Necessary.**

Respondent next contends that Judge Daly erred in finding that his deposition was necessary. Specifically, Respondent points to *Will v. Gen. Gynamics Corp.*, No. 06-698-GPM, 2007 WL 3145058, at *9 (S.D. Ill. Oct. 25, 2007), which holds that a party seeking to depose an opposing party's attorney must show that: "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to preparation of the examining party's case." First, as Judge Daly suggested, this holding is not applicable given the posture of the case at bar. *See* Order, Doc. 128, p. 7. Plaintiffs are not seeking to depose counsel for an opposing party. Plaintiffs seek to depose Respondent, former counsel to Eagle Forum, on whose board Plaintiffs sit and with whom "no actual controversy exists." *See* Motion for Realignment, Doc. 32, p. 3.

Notwithstanding its inapplicability, Judge Daly examined the rule set forth in *Will* and determined that Respondent's deposition is necessary. Before any lawsuit had been filed, Ed Martin had sent Respondent, as counsel to Eagle Forum, an email confirming a plot to destroy Eagle Forum, Respondent's client, and replace it with PSAE. In furtherance of this plot, the Riezman Berger Memo was commissioned and drafted and, at Runnymede's urging, shared with Respondent. When it received the Riezman Berger Memo, Respondent was, yet again, notified and appears to have participated in an active plan to destroy Eagle Forum, his purported client. Indeed, the June 29, 2016 voicemail transcript from Mr. Clark to Ed Martin suggests significant involvement on the part of Runnymede to further the aspirations of the Riezman Berger Memo— the destruction of Eagle Forum. Simply put, Respondent and his colleagues at Runnymede were actively colluding with directors of PSAE and pursuing the destruction of Eagle Forum, for the benefit of PSAE, while purportedly representing Eagle Forum.

Further, as more fully set forth above, only Respondent and Runnymede can answer as to the actions they took in furtherance of the plot to destroy Eagle Forum and assist PSAE. Specifically, Runnymede's refusal to grant Plaintiffs access to contact and membership lists of Eagle Forum and its disavowal of Eagle Forum's property rights appear to have been done in furtherance of PSAE's unfair competition. Runnymede's refusal to suppress threats against State Eagle Forums, which threats damaged its own client, appears to have been done in furtherance of the plot to destroy Eagle Forum. Runnymede's refusal to assert Eagle Forum's ownership of Eagle Council appears to have been part of a plan to divest Eagle Forum of its property all to the benefit of PSAE. Indeed, Runnymede refused to even acknowledge the impropriety of the creation of PSAE as a competitor of Eagle Forum by the Schlafly Minority, each of whom was a *current* director and/or officer of Eagle Forum.

Given that Respondent and Runnymede were well aware of the Schlafly Minority's plans to create PSAE in April 2016 and possessed a memorandum outlining the destruction of their client in June 2016, each of the foregoing actions, and others, appear to be part of a plan to destroy Eagle Forum, Respondent's own client, for the benefit of PSAE. Only Respondent can answer for his own actions, inaction and acquiescence and the motivations for the same.

As the foregoing makes clear, "Rohlf's deposition is not only relevant, but crucial to [the] case insofar as it relates to PSAE's alleged pursuit to destroy Eagle Forum." *See* Order, Doc. 128, pp. 7-8. Judge Daly's March 29, 2018 Order thoughtfully considers the arguments of both Plaintiffs and Respondent and clearly sets out the reasons for her ruling. Judge Daly had the discretion to find as she did and, accordingly, her ruling clearly is not contrary to the law or clearly erroneous.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court affirm Magistrate Judge Reona J. Daly's March 29, 2018 Order and deny Respondent Joel Rohlf's appeal of the same.

Respectfully submitted,

SPENCER FANE LLP

DATE: April 26, 2018

By: /s/ Erik O. Solverud
Erik O. Solverud, #IL6231306
(Lead Counsel)
Megan D. Meadows, #IL6314885
Eric D. Block, #IL6315217
Arthur D. Gregg, #IL6319204
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Telephone (314) 863-7733
Facsimile (314) 862-4656
esolverud@spencerfane.com
mmeadows@spencerfane.com
eblock@spencerfane.com
agregg@spencerfane.com

*Attorneys for Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on April 26, 2018, which will send notice to all counsel of record.

                                                /s/ Erik O. Solverud