# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, an Illinois Not for Profit Corporation, et al., )<br>)<br>Plaintiffs/Counterclaim Defendants, )<br>)<br>v. )<br>)<br>PHYLLIS SCHLAFLY'S AMERICAN EAGLES, )<br>a Virginia Not for Profit Corporation, )<br>)<br>Defendant/Counterclaimant. ) | Cause No. 3-16-cv-946-DRH- RJD |

**DEFENDANT PHYLLIS SCHLALFLY'S AMERICAN EAGLES' AND EAGLE TRUST FUND'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR CIVIL CONTEMPT AND REQUEST FOR CLARIFICATION**

Defendant Phyllis Schlafly's American Eagles ("PSAE") and Eagle Trust Fund ("ETF") hereby submit this supplemental memorandum pursuant to the Court's May 30, 2018 Order, respectfully requesting that this Court deny the Motion for Civil Contempt filed by Plaintiffs Anne Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry ("Plaintiffs").

I. **The Court's February Order for Production of Documents Should Not Be Deemed to Include the Production of Communications Solely Between the Non-PSAE Entities and their Respective Legal Counsel**.

A. **Information Concerning Representation.**

As requested by the Court, attached is a chart showing the representation of the various entities listed in the emails and identified in the Privilege Log, as well as the law firms that represented them. Exhibit A, Entities' Legal Representation Chart ("Chart"). The Chart also identifies the respective Board members, Trustees, and other legal representatives for each party that is not an individual. Also attached is Exhibit B, Affidavit of John Schlafly, verifying most of the

information within the chart. The Entry of Appearances by Nelson L. Mitten for Eagle Forum Education and Legal Defense Fund, Eagle Trust Fund, Andrew Schlafly, the Estate of Phyllis Schlafly, and Kathleen Sullivan, in *Cori, et al. v. Martin, et al.*, USDC-SDIll Cause No. 3:17-cv-590-DHR-RJD, which indicates when Riezman Berger, P.C., began representing these parties in litigation. Exhibit C, Entries of Appearance. This chart also shows the date such representation began.

   **B. E-Mails Between Counsel and Their Specific Clients Remain Confidential.**

The Order of February 1, 2018, focused on the issue of the common interest doctrine, i.e., emails between counsel and clients of various entities. However, the Order did not address the issue of emails between counsel and their specific clients. As evidenced by the attached documentation listing the dates of legal representation of the non-PSAE Entities[1], much of the remaining discovery sought by Plaintiffs contains documents and communications solely between the non-PSAE Entities and their respective legal counsel.

The emails remaining on the Privilege Log fall into five categories:

1. Emails between PSAE and Riezman Berger, P.C.
2. Emails between PSAE Board members.
3. Emails between clients and individual law firms that represent them.
4. Emails between clients and the co-counsel that represent them.
**5.** Certain emails involving Roger Schlafly.

Category 1 was held privileged by this Court's Order, and Category 2 was said to be subject to individual review by the Court in the same Order. Multiple emails involving Roger Schlafly have

---

[1] The "Non-PSAE Entities" includes ETF, Eagle Forum Education Legal Defense Fund, Phyllis Schlafly Revocable Trust, John Schlafly, Ed Martin, the Estate of Phyllis Schlafly, Kathleen Sullivan, and Andrew Schlafly.

been produced, but certain emails appear to be requesting specific legal advice, and it is requested that these also be reviewed by the Court.

Thus, the remaining disputes involve the emails that fall into categories 3 and 4. Based upon oral argument, it is anticipated that Plaintiffs will suggest waiver of the privilege on three grounds, which will be addressed below.

First, Plaintiffs contend that because James Craney and Graves Garrett, LLC ("Graves Garrett") were involved in the gathering and review of the emails any privilege was waived. As established by Exhibit A, the Chart, Graves Garrett began representing Eagle Trust Fund in January, 2017, before the subpoena dated February 8, 2017, was issued to Eagle Trust Fund in this case. *See* Exhibit A to Motion to Quash of Eagle Trust Fund (Doc. No. 47) Both the representation of Eagle Trust Fund by Riezman Berger and James Craney preceded the representation of Graves Garrett. As such, any involvement with the review and production of records by Graves Garrett on behalf of ETF clearly falls within the attorney client privilege.

As to PSAE, Riezman Berger requested the assistance of both James Craney and Graves Garrett in the review and production of records. Thus, both of these firms became agents and hired experts of Riezman Berger on behalf of PSAE, a relationship that does not waive the privilege.

Attorney-client privilege covers the communications or documents, which a representing attorney provides to his or her agents during the course of representation. "The complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others, [and] the attorney-client privilege must include all the persons who act as the attorney's agents." *Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.*, 244 F.R.D. 412, 420 (N.D. Ill. 2006)(citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961)): *See also U.S. v. McPartlin*, 595 F.2d 1321, 1337 (7th Cir.1979) (holding that "It has never been questioned that the privilege protects communications to the attorney's . . . agents"); *Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D. Ill.

2009)(holding that the "attorney-client privilege applies to third parties who are agents of either the lawyer or the client); *Equity Residential v. Kendall Risk Management, Inc.*, 246 F.R.D. 557, 563 (N.D. Ill. 2007)(holding that communications to a representative of an attorney are also privileged).

This agent privilege includes third parties used to assist in the production of documents. *See Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 13 (N.D. Ill. 1972) (stating that the confidentiality of documents furnished to third parties is not destroyed if he third person was hired by the attorney "to facilitate his rendition of legal services") (citing to *United States v. Judson*, 322 F.2d 460, 463 (9th Cir. 1963) and *Kovel*, 296 F.2d at 921); *See also Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F.Supp.2d 1032, 1039 (N.D. Ill. 2009) (holding that it is reasonable for attorneys to use non-lawyer paralegals for document review, due to the number of documents);

Attorney client privilege also covers the communications and materials provided to an expert who is retained by an attorney to better facilitate his legal services. *See Jenkins v. Bartlett*, 487 F.3d 487, 491 (7th Cir. 2007) (holding that the attorney-client privilege reaches "retained experts… when the expert assists the attorney); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir.2000) (holding that material transmitted to an accountant, who was assisting the attorney in providing legal advice, remained privileged). *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 13 (N.D. Ill. 1972) (stating that the confidentiality of documents furnished to third parties is not destroyed if the third person was hired by the attorney "to facilitate his rendition of legal services") (citing to *United States v. Judson*, 322 F.2d 460, 463 (9th Cir. 1963)). To hold otherwise would hamstring an attorney's ability to adequately represent his client by forcing him to choose between refusing the outside assistance required to successfully litigate his client's case and waiving privilege to all documents disclosed to obtain that necessary assistance. *Heriot*, 257 F.R.D. at 666–67 ("in today's market, attorneys need to be able to have confidential communications with [experts] ... to render adequate legal advice).

In an age where lawsuits require lawyers to sift through and determine the responsiveness and privilege of hundreds of thousands of pages of documents, it has become part of standard practice to hire an outside firm to assist to sift through all this chaff. This practice is not only ubiquitous; it is beneficial as it allows for the efficient production of discovery and expedites litigation that would otherwise lie dormant for years solely due to the volume of discovery. This is why courts have determined that using paralegals and non-lawyers to review documents is reasonable and would not waive privilege. *Coburn Group, LLC* 640 F.Supp.2d at 1039.

There is no reason to hold that the hiring an outside firm solely to review the privileged status of documents throws away the document's privilege, where that law firm, much like an accountant or investigator, is an agent and hired expert of the attorney. In the same way that a lawyer can hire an accountant or investigator to assist in the development of his case through their knowledge, so too should a lawyer be allowed to hire a third-party firm to assist him in the development of his case through that attorney's knowledge, particularly since there is no discernable difference between accounting expertise or forensic expertise and legal expertise. Nor have plaintiffs cited to any case which states that the privilege regarding experts does not extend to a legal expert. In fact, such a case would clash the modern practice of law where firms hire out skilled litigators to represent their clients in court or retain local counsel to help facilitate their own legal representation in an out of state matter.

Furthermore, when the materials provided to an agent or expert constitute an attorney's work product, that disclosure by itself cannot waive the work product privilege. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 736 (N.D. Ill. 2014) (holding that "a disclosure to a third party does not automatically waive work-product protection"). A waiver only occurs when the protected documents are disclosed in a manner that "substantially increases the opportunity for potential adversaries to obtain the information." *Id.* This is because the work product doctrine promotes the

adversary-judicial system by protecting papers prepared by one attorney from their use by the opposing counsel. *Id.* So long as the disclosure does not substantially increase the chance that opposing counsel will obtain the information, then work product privilege is not waived.

If this court were to hold that all documents sent to an outside firm for review had their privilege waived, then it would be ignoring the present state of ligation and destroying the only means that many firms have for efficient and productive document review. It would stymie federal litigation by consigning all law firms to review their own documents, even if millions must be analyzed. It would also stop most small to mid-sized law firms from accepting any case which might produce more than a few thousand documents, which would drastically decrease a party's access to diligent representation and thus the legal system as a whole.

As such, the review of documents by James Craney and Graves Garrett does not waive any privilege or work product disclosure as to either PSAE or ETF, or their counsel of record.

Second, e-mails between the various law firms and the representatives of the various entities does not waive the privilege. The Court's ruling on the common interest doctrine does not cover the issue of the joint defense privilege. While the common interest doctrine and joint defense privilege are similar, they remain distinct. *See Pampered Chef v. Alexanian*, 737 F.Supp.2d 958, 965 (N.D. Ill. 2010). The common interest doctrine extends to cover communications between different parties and those parties' different lawyers, but the joint defense privilege covers communications between one lawyer who represents co-parties in a suit. *Id.* "Where two or more persons jointly consult an attorney concerning a mutual concern, their confidential communications with the attorney, although known to each other, will of course be privileged in the controversy of either or both of the clients with the outside world." *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215–16 (N.D. Ill. 2001); *see also U.S. v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979); *IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc.*, 1999 WL 617842, at *3 (N.D. Ill. 1999); *Diemer v.*

*Fraternal Order of Police, Chicago Lodge 7,* 242 F.R.D. 452, 457 (N.D. Ill. 2007) (holding that attorney client privilege was not waived when communications occur between a client and multiple lawyers employed by client).

This privilege extends to documents and can only be waived by the consent of both co-parties. *See Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 689 F.Supp. 841, 844–45 (N.D. Ill. 1988). "A document is subject to the privilege if it contains material that is part of a joint defense effort; the party to whom the document is directed is not controlling"); *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215–16 (N.D. Ill. 2001) ("Moreover, the joint defense privilege cannot be waived without the consent of all parties to the defense, except in the situation where one of the joint defendants becomes an adverse party in a litigation.").

Thus, a firm that represents multiple entities, such as Riezman Berger, may communicate to all of the entities it represents without waiving the privilege. As long as the firm represents all entities on the email, it may communicate to all clients and the other firms that represent them without waiving the privilege. As such, these emails remain privileged, and should not be ordered produced.

Third, the mere existence of emails between individual clients other than ETF and PSAE and their counsel on this log does not waive the privilege as to those entities. These emails were pulled during production only because of their existence on the source of electronic data, a fact that does not waive the privilege. See Affidavit of John Schlafly at Paragraph 4. The ESI Protocol established for this production allowed for emails to be obtained based on their email address. This resulted in emails in the database that may have involved parties in capacities other than as a board member of PSAE or ETF. See Exhibit D, Correspondence of James Craney to Eric Block.

Plaintiffs essentially argue that because these emails were extracted from a common server that their privileged status was automatically waived. This is simply not the law. *DeGeer v. Gillis*, 2010

WL 3732132, at *9 (N.D. Ill. 2010) (holding that private communications do not lose their privilege merely for passing through a third-party business server). If it was the law, then every individual with a Yahoo Mail or Gmail account could never retain privilege for any of their emails since those servers are owned by third parties who pool thousands of other accounts into one location. It would be untenable in today's digital age to deny privilege to those peoples' private e-mail communications where large documents are routinely e-mailed to individuals and businesses, in order to save the large expense and time of physical mail and would upend a lawyer's ability to quickly and efficiently communicate to their clients by e-mailing them attached documents related to their cases.

Finally, an issue has arisen concerning the use by Bruce Schlafly of his wife's email address. Bruce Schlafly and his wife are married. Se Exhibit E – Affidavit of Dr. Bruce Schlafly. As a result, disclosure to a spouse does not waive the attorney client privilege held for communications between the other spouse and attorney due to the existence of the marital privilege. *See, e.g., Kirzhner v. Silverstein,* 870 F. Supp. 2d 1145, 1152-3 (D. Colo. 2012). As such, there is no waiver by Dr. Schlafly's use of his wife's email.

## II.  The Privilege Analysis "Question Tree" Improperly Analyzes the Privilege Issue

At oral argument, counsel for Plaintiffs presented a Memorandum called "Privilege Analysis", which contained a series of questions which they suggested would assist the Court in its analysis of the issues presented here. A close review of it indicates that it oversimplifies the issues. For example, it completely avoids the issue that Riezman Berger represents both PSAE and ETF, and assumes that review of the documents produced by ETF by Riezman Berger somehow waives the privilege, despite Riezman Berger's representation of ETF. The series of questions also avoids the issue that James Craney was designated an agent of PSAE to assist in the review process. It also assumes that the privilege is waived as to all emails between individual clients and their respective
{00464845- 4 27647-008}   8

counsel merely because they appear on the log. As such, it is urged that the Court not use this analysis, and rather rule upon the categories as set forth above.

WHEREFORE, Defendants Phyllis Schlafly's American Eagles and Eagle Trust Fund pray that this Court deny Plaintiffs' Motion for Contempt, that it enter an Order clarifying its Order of February 1, 2018, and protecting the communications which are solely between the Estate of Phyllis Schlafly, John Schlafly, Andrew Schlafly, Bruce Schlafly, Ed Martin, Kathleen Sullivan, Ned Pfeifer, Eagle Forum Education and Legal Defense Fund, the Phyllis Schlafly Revocable Trust, or ETF and their respective counsel, and for any other relief this Court deems just and proper.

**RIEZMAN BERGER, P.C**.

By: */s/ Nelson L. Mitten*
Nelson L. Mitten, IBN 6185899
Paul A. Grote, IBN 6307831
7700 Bonhomme, 7th Floor
St. Louis, Missouri 63105
(314) 727-0101 (phone)
(314) 727-6458 (facsimile)
nlm@riezmanberger.com
pag@riezmanberger.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on June 4, 2018, which will send notice to all counsel of record.

*/s/ Nelson L. Mitten*