# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, an Illinois Not for Profit Corporation, | ) ) ) |
| and | ) ) |
| ANNE SCHLAFLY CORI, on behalf of EAGLE FORUM, et al., | ) ) ) Case No.: 3:16-cv-946-DRH-RJD |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| PHYLLIS SCHLAFLY'S AMERICAN EAGLES, a Virginia Not for Profit Corporation, | ) ) ) |
| Defendant. | ) ) |

## ORDER

**DALY, Magistrate Judge:**

This matter is before the Court on Defendant Phyllis Schlafly American Eagles' and Eagle Trust Fund's Request for Clarification filed in Response to Plaintiffs' Motion for Civil Contempt, which the Court construes as a Motion for Clarification (Doc. 136). The Motion for Clarification is **GRANTED**.

### I. BACKGROUND

The Court presumes the parties' familiarity with the background and posture of this case, but briefly recites the background relevant to the motion now before it.

This is a trademark infringement action in which Plaintiffs seek injunctive relief and damages arising from violations of federal and state law. On May 2, 2018, Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry filed a motion for contempt (Doc. 132) concerning an ongoing discovery dispute as to certain

privilege designations assigned by Defendant Phyllis Schlafly's American Eagles ("PSAE") and Respondent Eagle Trust Fund ("ETF") to approximately 1,000 documents. In the Court's order dated February 1, 2018, the undersigned overruled PSAE and ETF's assertion of privilege based on the common interest doctrine and ordered the production of all communications withheld on such basis (Doc. 117). The Court carved out a limited exception to its order for communications limited to the members of PSAE's Board of Directors (Kathleen Sullivan, Ed Martin, John Schlafly, Andrew Schlafly, and Phyllis Schlafly) and counsel for PSAE. The Court noted that it was not clear whether any privileged communications between PSAE members and its counsel were reviewed by outside counsel and advised the parties that if there were issues concerning the same it should be brought to the Court's attention, along with issues concerning work product protections (*see id.*). PSAE and ETF appealed the undersigned order to District Judge Herndon and, after the appeal was denied, sought a writ of mandamus from the Seventh Circuit Court of Appeals that was denied on April 26, 2018 (*see* Doc. 130).

In their motion for contempt, Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry ("the individual Plaintiffs") explain that on April 26, 2018, after receipt of the Seventh Circuit's denial of the mandamus petition, they reached out to PSAE and ETF to coordinate their compliance with this Court's order. Despite various assurances, PSAE and ETF failed to produce any documents by the date Plaintiffs' motion was filed on May 2, 2018. Plaintiffs now seek entry of civil contempt sanctions against PSAE and ETF for their failure to comply with this Court's order, including payment of reasonable attorneys' fees and other sanctions deemed appropriate by this Court. Said request shall be addressed in a Report and Recommendation entered contemporaneously with this Order.

In response to Plaintiffs' motion, PSAE and ETF assert that any delay in complying with

the Court's order prior to April 26, 2018 was due to their seeking appropriate and timely review of this Court's February 1, 2018 order. Subsequent delays were caused by technical issues related to a change in vendor which caused issues with the bates numbering of the documents contained on the privilege log. PSAE and ETF assert that as of the date of their filing (May 9, 2018), all documents for which the assertion of privilege was based solely on the common interest doctrine have been produced.

In their response to Plaintiffs' motion, PSAE and ETF also ask for clarification of the Court's February 1, 2018 order, noting that said order only protected communications between PSAE's Board and its counsel, but did not address whether communications between any of the other Entities and their legal counsel embroiled in parallel litigation may remain privileged. Their request for clarification is now before the Court.

Plaintiffs replied to PSAE and ETF's response, asserting that only 250 of the nearly 1,000 documents being withheld have been produced. Plaintiffs complain that the 250 documents that were produced contain bad-faith redactions, including cropped documents, phantom attachments, non-privileged emails with withheld attachments, and corrupted and/or intentionally cropped emails and documents.

The Court held a hearing on Plaintiffs' motion on May 29, 2018. At the hearing, Plaintiffs reiterated their complaints concerning PSAE's repeated discovery delays in this matter that relate back to initial discovery requests that were served in December 2016. Plaintiffs posited that the delay tactics used by PSAE is part of its litigation strategy, citing certain emails produced as "Martin-JSchlafly-00590859" and "Martin-JSchlafly-00593736." Plaintiffs also asserted that many of the documents currently being withheld are not privileged as they were sent to third-parties, such as Roger Schlafly, which the Court's February 1, 2018 order specifically addressed.

Also at the hearing, counsel for PSAE and ETF reiterated the issues delaying the recent document production, explaining that their vendor suffered a technical glitch. Counsel represented that PSAE and ETF intended to produce the Roger Schlafly emails, aside from three or four wherein he was seeking legal advice. Counsel explained that the emails about which he seeks clarification were uploaded to the document production database in this case due to the intertwining of various organizations' involvement in parallel litigation. Counsel indicated that this issue had not yet been fully briefed and he requested leave to do the same.

The undersigned granted leave for PSAE to supplement its response. PSAE's supplemental response was received on June 5, 2018 (Doc. 141). Plaintiffs' supplemental reply was filed on June 11, 2018 (Doc. 143).

## II. DOCUMENTS REMAINING ON PRIVILEGE LOG

As set forth in PSAE and ETF's Supplemental Response, the remaining documents included in PSAE's Privilege Log fall into the following five categories:

a. Communications between PSAE and Riezman Berger, P.C.

b. Communications between PSAE Board members.

c. Communications between clients and individual law firms that represent them.

d. Communications between clients and the co-counsel that represent them.

e. Certain emails involving Roger Schlafly.

The Court considers each of these categories individually as set forth below.

**A. Communications between PSAE and Riezman Berger, P.C.**

Pursuant to the Court's February 1, 2018 Order, these emails are privileged and need not be produced (*see* Doc. 117). It appears that many of these documents, however, were reviewed by the law firm of Graves Garrett or Craney Law. The Court notes there is no indication in the

record that either Graves Garrett or Craney Law was retained to represent PSAE. Rather, PSAE asserts that Riezman Berger requested the assistance of James Craney and Graves Garrett in the review and production of records. PSAE asserts that these firms were agents and hired experts of Riezman Berger on behalf of PSAE and, as such, there is no waiver of any privilege for documents reviewed by the same. Plaintiffs point to the obvious issue in PSAE's argument — that PSAE does not purport to have ever been represented by Craney Law or Graves Garrett and there is no retention agreement or other documentation evidencing this relationship before the Court. Notwithstanding PSAE's failure to provide documentation concerning this agreement, the Court finds retention of a third-party to engage in document review does not waive an entitlement to privilege. Law firms routinely engage non-lawyers and third-parties to conduct document review and courts recognize that disclosure in this context does not destroy the confidentiality of the documents. *See Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F.Supp.2d 1032, 1039 (N.D. Ill. 2009); *see also Heriot v. Byrne*, 257 F.R.D. 645, 660 (N.D. Ill. 2009). Plaintiffs have not provided the Court with authority to support their position and the Court finds that attorney-client privilege often attaches even with no written documentation evidencing a formal relationship. Further, the Court agrees with PSAE that a finding here that all documents sent to an outside firm for review would waive attorney-client privilege would unnecessarily hamper the litigation process. For these reasons, the Court finds that communications between PSAE Board Members and its counsel, Riezman Berger, that were reviewed by either Craney Law or Graves Garrett retain attorney-client privilege and may properly be withheld.

The next issue concerning these documents is the purported disclosure of the same to ETF. Plaintiffs assert that PSAE disclosed all of its documents, privilege and non-privileged, to ETF, and then relied on ETF to assert PSAE's privilege. PSAE and ETF invoke the "joint defense

privilege," asserting that because Riezman Berger represented both ETF and PSAE, any communications among these entities remain privileged, even if shared. Plaintiffs contend that PSAE is merely attempting to relitigate the common defense doctrine that was squarely addressed in the Court's February 1, 2018 order. The Court agrees.

PSAE asserts that although the common interest doctrine and joint defense privilege are similar, they are distinct insofar as the common interest doctrine applies to communications between different parties and those parties' different lawyers, while the joint defense privilege applies to communications between one lawyer who represents co-parties in a suit. While acknowledging this subtle difference, many courts have used the common interest doctrine and joint defense privilege interchangeably. *See, e.g., United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997) ("The joint defense privilege, more properly identified as the 'common interest rule,' has been described as 'an extension of the attorney client privilege'.") (citation omitted). PSAE and ETF have failed to establish that they were endeavoring in a "joint defense" (as ETF is *not* a party to this lawsuit) and they have wholly failed to meet their burden in proving the same. Indeed, PSAE and ETF merely assert that "[a]s long as the firm represents all entities on the email, it may communicate to all clients and the other firms that represent them without waiving the privilege." PSAE and ETF provide no authority for this broad reading of the "joint defense privilege" and fail to establish how it is relevant or applicable in this instance. Accordingly, the Court finds that PSAE documents that were disclosed to ETF fall under the purview Court's February 1, 2018 order and are not entitled to attorney-client privilege protection.

### B. Communications between PSAE Board Members

As set forth in the Court's February 1, 2018 order, these documents may be subject to individual review by the Court. There does not appear to be any need for further clarification

regarding this subset of documents.

### C. Communications between Clients and Individual Law Firms and Co-Counsel that Represent Them

PSAE and ETF assert that many of the documents that remain on the privilege log are communications solely between non-PSAE Entities, including ETF, Eagle Forum Education Legal Defense Fund ("EFELDF"), Phyllis Schlafly Revocable Trust ("PSRT"), John Schlafly, Ed Martin, the Estate of Phyllis Schlafly, Kathleen Sullivan, and Andrew Sullivan, and their respective legal counsel. PSAE explains that these documents were produced solely because of their existence on the source of electronic data. Indeed, according to the Affidavit of John Schlafly (Doc. 141-2), he used the same email address for his communications and all email that was received or sent pursuant to this litigation was access, viewed, and stored through Gmail, and the nature of the communication can only be determined from the sender or recipient, or the content[1]. PSAE and ETF further assert that the ESI Protocol established for document production in this case allowed for emails to be obtained based on their email address, which resulted in emails in the database that may have involved parties in capacities other than as a board member of PSAE or ETF. Although Plaintiffs contend this is a work-around for the Court's common interest ruling, the Court disagrees with this characterization. It is apparent that counsel for ETF and PSAE were sharing documents and communications that had been produced. However, based on the affidavit of John Schlafly and a review of PSAE's privilege log, it appears there are communications to which John Schlafly was a party, but not in his capacity as a PSAE Board Member (*see, e.g.*, documents 21 and 23 on PSAE's May 24, 2018 privilege log). In this instance, the Court finds

---

[1] John Schlafly held positions on the Board of PSAE, ETF, EFELDF, and was a sole and/or co-trustee of the Phyllis Schlafly Revocable Trust and personal representative of Phyllis Schlafly and/or the Estate of Phyllis Schlafly at times relevant to this lawsuit.

that the collection of these communications, while possibly haphazard, does not constitute an intentional waiver of the attorney-client privilege. As such, these communications remain protected by attorney-client privilege and need not be produced[2]. If there are other instances wherein communications of the other Entities and their counsel are included on the privilege log (to which John Schlafly was not a part), the Court has no evidence as to how they were procured and, as such, no privilege attaches as it is PSAE's burden to demonstrate privilege. Communications that were solely between Board Members (with no counsel on the communication) for the other Entities at issue may be addressed by the Court on a document-by-document basis. The Court also notes that insofar as there are ETF documents that were produced by PSAE, the Court's discussion above applies and the documents are not privileged under the joint defense privilege.

The Court briefly addresses another issue concerning Bruce Schlafly's use of his wife's email account. Bruce Schlafly and his wife, Jeanne Schlafly, are married and Bruce Schlafly has attested that the email address jmschlafly@yahoo.com is a joint email account he shares with his wife. PSAE and ETF contend that disclosure to a spouse does not waive the attorney-client privilege held for communications between the other spouse and attorney due to the existence of marital privilege. In support of this position, they rely on *Kirzhner v. Silverstein* from the District Court of Colorado, 870 F.Supp.2d 1145, 1152-53 (D. Colo. 2012). The court in *Kirzhner* found that disclosure of documents to one's spouse does not waive the attorney-client privilege. *See id.* The Court has not found, and the parties have not cited, any case law from this Circuit addressing

---

[2] The Court notes Plaintiffs' position that many of the dates of representation provided on PSAE's "Representation Chart" are incomplete or inaccurate. If PSAE continues to assert attorney-client privilege for a document in which Plaintiffs believe the retention of counsel or the date of said retention is an issue, said document should be specifically brought to the Court's attention.

the issue. However, the Eastern District of Missouri has applied Missouri's "third person-reasonably necessary" exception to waiver, which construes attorney-client privilege to extend communications made in the presence of spouses so long as those communications were made to further the interest of the client or are otherwise reasonably necessary for transmission or accomplishment of the purpose of the consultation. *See Cromeans v. Morgan Keegan & Co., Inc.*, No. 4:14-mc-00274-JAR, 2014 WL 7338830, *2 (Nov. 21, 2014 E.D. Mo.). Absent binding authority to the contrary, the Court is not inclined to find that Bruce Schlafly's shared use of his email account with his spouse waived attorney-client privilege.

### D. Certain Emails involving Roger Schlafly

The Court's February 1, 2018 order dealt directly with Roger Schlafly and the undersigned found no basis to apply the common interest doctrine to communications in which he was a part. Insofar as there are emails in which Roger Schlafly was specifically requesting legal advice, the Court will review these communications in camera if PSAE and ETF continue to assert privilege.

### III. CONCLUSION

PSAE and ETF's request for clarification of the Court's February 1, 2018 Order is **GRANTED** and said order is hereby clarified as set forth above. In light of this clarification, PSAE is **ORDERED** to produce any documents referenced herein that are currently being withheld on the basis of privilege, but that the undersigned has deemed not privileged. In conjunction with said production, PSAE is **ORDERED** to provide Plaintiffs with an updated privilege log. The production of documents and the updated privilege log shall be completed by **December 14, 2018**. If the parties seek an *in camera* review of any documents remaining on the privilege log, said request must be brought to the Court's attention by **December 28, 2018**.

**IT IS SO ORDERED.**

**DATED: November 29, 2018**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**