IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 3:16-CV-946-NJR-RJD |
| ) | |
| PHYLLIS SCHLAFLY'S AMERICAN EAGLES, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
EAGLE TRUST FUND'S MOTION TO QUASH SUBPOENA
TO IAN A. NORTHON AND FOR A PROTECTIVE ORDER**

Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry (collectively, "Plaintiffs"), for their Memorandum in Opposition to the Motion to Quash Subpoena to Ian A. Northon ("Northon") and for a Protective Order [Doc. 182] filed by non-party Eagle Trust Fund ("ETF"), state as follows:

**INTRODUCTION**

On May 13, 2019, Plaintiffs served Northon with a subpoena to provide testimony in this matter. Northon was subpoenaed because written discovery obtained in this litigation, as well as in related matters, showed that beginning in June of 2016, Northon was actively conspiring with the founding members of defendant Phyllis Schlafly's American Eagles ("PSAE"), each of whom was also a director and/or officer of Eagle Forum. For instance, in June of 2016, Northon and his wife were appointed by Ed Martin ("Martin") as the directors of a so-called "Phyllis Schlafly Constitution Center" in Florida; these organizations were intended to replace the "grassroots" state-level organizations of Eagle Forum. Plaintiffs have also discovered that Northon was actively advising John Schlafly (a director and officer of Eagle Forum) about actions that Eagle Forum should take in this litigation. Northon was also involved in efforts to engage a public

relations firm, allegedly on behalf of Eagle Forum, to attack Plaintiffs and Eagle Forum. As a result of Northon's activities, a lawsuit was filed (and remains pending) in the United States District Court for the Middle District of Pennsylvania, captioned *Quantum Communications Ltd v. Eagle Forum, Eagle Forum Education and Legal Defense Fund, Ian A. Northon, Roetzel and Andress, LPA and Edward R. Martin, Jr.* (Case No. 1:17-CV-01640-JEJ), in which Northon and his former law firm are named as co-defendants along with Eagle Forum. Finally, Plaintiffs have also learned that ETF's co-trustee, John Schlafly, has identified Northon as a fact witness and a non-retained expert witness in a related lawsuit.

Notwithstanding that he is clearly a fact witness in this case and has agreed to testify as both an expert witness and fact witness in a related case, ETF spares no argument in its efforts to avoid a deposition of Northon in this case. ETF argues that Northon cannot be deposed, under any set of facts, because he represents ETF and ETF will not consent to his being deposed. ETF is wrong. ETF also argues about the logistics of the deposition, but Northon has rejected Plaintiffs' efforts to address his concerns. ETF even tries to argue that Northon's deposition is barred by the scheduling order, which its own counsel (certain of whom also represent PSAE) have largely ignored. Standing alone, none of ETF's arguments demonstrate the requisite good cause for entry of a protective order. Instead, in concert, ETF's arguments herald a return to the obstructionist tactics and needless combativeness that have plagued written discovery efforts in this case. *See* Plaintiffs' Memorandum in Opposition to ETF's Motion to Quash and for a Protective Order [Doc. 181] at 11.

To be clear, Northon is a fact witness. This lawsuit is about PSAE's efforts to attack, unfairly compete against, destroy and eventually replace Eagle Forum. Northon has been on the front line of these efforts, and his testimony is directly relevant and germane to the claims and

2

defenses in this lawsuit. Accordingly, because ETF has failed to meet its burden of demonstrating good cause for the issuance of a protective order, its motion to quash should be denied and Northon should be required to provide deposition testimony as a fact witness in this case.

## BACKGROUND

On April 11, 2016, Martin and the Schlafly brothers, including Bruce Schlafly, Andy Schlafly and John Schlafly, agreed to create a new organization to destroy and eventually replace Eagle Forum. According to Andy Schlafly:

> A three-pronged approach is needed:
>
> 1. Ignore the Gang of 6 and their invalid Board meeting, and their letter demands that follow from it.
> 2. Litigate.
> 3. Start a new c4 using mother's name. I suggest "Phyllis Schlafly Forum."
>
> …
>
> A lot of dead wood has accumulated over the years. It would be poetic justice if the Gang of 6 picks up the DC office and its immense expense and personnel issues, which is a c4 expense. Also, let's work with a smaller number of state chapters, and more selective state leadership. But nearly everyone would migrate to our Phyllis Schlafly Forum rather than go with the Gang of 6, if given the opportunity.
>
> Meanwhile, litigation over the assets in Eagle Forum can drag on for years. The Gang of 6 won't be accomplishing the mission of Eagle Forum, and there could be claims of breach of fiduciary duty with respect to the donations in addition to the Bylaws violations of today.

*See* E-Mail from A. Schlafly dated April 11, 2016, a true and accurate copy of which is attached hereto as **Exhibit A**. The plan was that, if Martin and the Schlafly brothers were not able to retain exclusive control over Eagle Forum in court, they would immediately launch a new (c)(4) organization to take Eagle Forum's "best state leaders" and do the things that Eagle Forum was organized to do. *Id.*

On May 9, 2016, an existing Virginia nonprofit corporation was renamed Phyllis Schlafly's American Eagles (or PSAE) with the help of Bill Wilson.[1] Shortly thereafter, Martin and the Schlafly brothers started work on establishing new state organizations to supplant the various Eagle Forum state chapters. On June 21, 2016, Martin and Northon agreed that Northon would "play a big role" in a new Florida organization. *See* E-Mail from Northon to Martin dated June 21, 2016, a true and accurate copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

On June 22, 2016, Martin provided Northon with a draft press release announcing that Northon and his wife will serve as co-directors of the Florida Center for Protecting the Constitution. *See* E-Mail from Martin dated June 22, 2016, a true and accurate copy of which is attached hereto as **Exhibit C** and incorporated herein by reference. These so-called "Constitution Centers" were intended to be the "grassroots" presence of PSAE and undermine Eagle Forum's state and local chapters.[2]

At the beginning of PSAE, Northon appears to have been in regular contact with Martin.[3] For instance, on June 20, 2016, Martin sent Northon a copy of a motion to disqualify he had filed against Plaintiffs' counsel in a related action. *See* E-Mail from Martin to Northon dated June 20, 2016, a true and accurate copy of which is attached hereto as **Exhibit D** and incorporated herein by reference. On August 12, 2016, Martin sent Northon a link to a video wherein Phyllis

---

[1] Notwithstanding that he still claimed to be President of Eagle Forum, Martin was actively plotting with Bill Wilson on how to attack Plaintiffs and steal Eagle Forum's donors. On April 12, 2016, Wilson provided Martin with a list of recommendations, including things like "smear the living shit out of everyone involved and fast," "attack the liberal greedy rump board with reckless abandon," and "[i]f at all possible, sue the crap out of the board members personally … make them feel personal and public pain now." *See* E-Mail from B. Wilson to Martin dated April 12, 2016, a true and accurate copy of which is attached hereto as **Exhibit E** and incorporated herein by reference.

[2] *See* PRESS: Phyllis Schlafly Constitution Centers to Open in Five States (available at: https://www.phyllisschlafly.com/press-releases/press-phyllis-schlafly-constitution-centers-to-o-1591/).

[3] None of these communications could possibly be privileged as Northon was not acting as counsel to Martin or any Schlafly-related organization at the time.

4

Schlafly claims to restrict use of her alleged intellectual property. *See* E-Mail from Martin to Northon dated August 16, 2016, a true and accurate copy of which is attached hereto as **Exhibit F** and incorporated herein by reference. By August 22, 2016, Northon was under consideration for appointment as a State President of PSAE. *See* E-Mail from Martin to Kathleen Sullivan dated August 22, 2016, a true and accurate copy of which is attached hereto as **Exhibit G** and incorporated herein by reference.

Even more surprising was that, during this same time, Northon was apparently also providing John Schlafly legal advice intended for *Eagle Forum*. On September 1, 2016, John Schlafly reported to Andy Schlafly, Martin and Eagle Forum's lawyers (namely, Joel Rohlf and Steve Clark) that he had a lengthy conversation with Northon about "strategies" for filing a motion to dismiss on behalf of *Eagle Forum* and for challenging Eagle Forum's trademark rights in the name *Eagle Forum. See* E-Mail from J. Schlafly dated September 1, 2016, a true and accurate copy of which is attached hereto as **Exhibit H** and incorporated herein by reference. To be clear, it appears that Northon was recommending positions to be taken by Eagle Forum while also devising strategies on how to attack Eagle Forum's intellectual property rights in the same conversation with an officer and director of Eagle Forum.

In addition to the foregoing, in September 2016, Northon was also actively involved in efforts to execute on the plot by Martin and Bill Wilson to smear and attack Plaintiffs with "reckless abandon … [and] make them feel personal and public pain." *See* **Ex. E**. Specifically, in September 2016, Northon allegedly assisted Eagle Forum to engage Quantum Communications LTD ("Quantum"), a public relations firm, to provide "communication-consulting services to protect and enhance Eagle Forum's reputation," including providing litigation support, developing press releases and creating a strategic communications plan for Eagle Forum. *See* Complaint,

5

*Quantum Communications LTD v. Eagle Forum, et al.*, Case No. 1:17-CV-01640, at ¶¶ 13, 16-18 and Exhibit A thereto, a true and accurate copy of which is attached hereto as **Exhibit I** and incorporated herein by reference. Notwithstanding that Northon allegedly used Quantum's services "aggressively" for seven months, Northon allegedly failed and refused to pay Quantum approximately $130,000, resulting in a breach of contract lawsuit being filed by Quantum in the United States District Court for the Middle District of Pennsylvania against Northon, Eagle Forum and others, captioned *Quantum Communications, Ltd. v. Eagle Forum, et al.* (Cause No. 1:17-cv-01640-YK). *Id.* at Counts I and II; s*ee also* E-Mails regarding Quantum Communications, true and accurate copies of which are attached hereto as **Group Exhibit J** and incorporated herein by reference. Again, to be clear, Northon is named as a co-defendant with Eagle Forum because he allegedly engaged a public relations firm on behalf of Eagle Forum to attack Eagle Forum's directors, and then refused to pay the bill.

Finally, and perhaps most damaging to ETF's motion, John Schlafly has identified Northon in another lawsuit as (1) a potential non-retained expert which he intends to call to testify at trial, (2) a fact witness with "personal knowledge" concerning Phyllis Schlafly's mental capacity in 2016, and (3) a fact witness with "personal knowledge" of Phyllis Schlafly's testamentary capacity due to Northon's interactions with her. *See* Respondent John F. Schlafly's, as Trustee, Answers to Petitioner Anne Schlafly Cori's First Set of Interrogatories, a true and accurate copy of which is attached hereto as **Exhibit K** and incorporated herein by reference, pp. 3, 6 and 11. John Schlafly's discovery responses expose more gamesmanship: while ETF argues that Northon is unable to testify in this litigation based on privilege, John Schlafly has expressly endorsed Northon to testify as both a fact and expert witness in a related case.

**ARGUMENT**

I. **ETF'S INVOCATION OF THE ATTORNEY-CLIENT PRIVILEGE IS PREMATURE AND MERITLESS.**

ETF's efforts to quash the subpoena and obtain a protective order because compliance with the subpoena might violate the attorney-client privilege are premature and misguided. As an initial matter, the scope of discovery is governed by Rule 26 of the Federal Rules of Civil Procedure. "[F]or good cause shown," a court may enter an order limiting the scope of discovery. Fed. R. Civ. P. 26(c)(1)(A) & (D). "The burden to show good cause for a protective order is upon the party seeking the order." *Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D. Ill. 1997); *see also Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). To demonstrate good cause, and thus meets its burden, a party must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *See Ball Corp. v. Air Tech of Michigan, Inc.*, 329 F.R.D. 599, 603 (N.D. Ind. 2019) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 FN 16 (1981) (internal citation omitted)); *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) ("[T]he party seeking a protective order must show specific facts showing good cause to justify the protective order."). Ignoring its burden to show specific facts, ETF objects to the subpoena because "it would violate both the attorney-client privilege and Illinois Rule of Professional Conduct 1.6 for Attorney Northon to give" and that "almost all of Attorney Northon's knowledge relevant to this lawsuit was obtained through privileged communications with ETF's representatives and agents." *See* Motion [Doc. 182], p. 8. ETF's conclusory objections are not just premature, they are patently false.

First, "there is no 'blanket immunity' that exempts attorneys from being deposed." *See S.E.C. v. Buntrock*, 217 F.R.D. 441, 445 (N.D. Ill. 2003) (cited by ETF); *see also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("We do not hold that opposing trial counsel

is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition."). Therefore, while ETF may object to specific questions during Northon's deposition based on attorney-client privilege, it is improper and premature for ETF to object to *any* deposition of Northon.

Second, the circumstances surrounding Northon's role and involvement with PSAE, and the written discovery adduced so far, clearly demonstrate that Northon has been deeply involved with the mission of PSAE and his testimony is directly relevant and germane to the claims and defenses at issue in this lawsuit. Such circumstances include, but are certainly not limited to, (1) Northon's role and involvement in the conspiracy to create PSAE to replace Eagle Forum; (2) Northon's appointment to lead the Florida Center for Protecting the Constitution; (3) Northon's regular contact with Martin during the early months of PSAE; (4) the consideration of Northon for appointment as a State President of PSAE; (5) the legal advice provided by Northon to John Schlafly for Eagle Forum; and (6) Northon's role and involvement in PSAE's effort to attack and/or undermine Plaintiffs and Eagle Forum, including the engagement of Quantum Communications on behalf of Eagle Forum.

Third, there is no possible claim of privilege regarding Northon's involvement in the foregoing acts; each predates Northon's engagement by ETF or *any* Schlafly-related organization. Accordingly, when ETF represents that virtually all of Northon's knowledge relevant to this lawsuit was obtained through privileged communications with ETF, they are flat wrong.[4] Not only do much of Northon's relevant interactions predate his engagement by ETF, but John Schlafly, a co-trustee of ETF, has identified Northon as a fact witness and endorsed Northon an expert witness

---

[4] ETF's objections, as they relate to legal advice Northon gave to Eagle Forum or the retention of Quantum Communications on behalf of Eagle Forum are especially improper; "the privilege belongs solely to the client." *See* Motion [Doc. 40], p. 7.

in a related lawsuit to testify about Phyllis Schlafly's conduct and mental health in 2016, *i.e.*, the year she was a director of Eagle Forum; allegedly participated in the formation of PSAE; allegedly authored and/or lent her name, image and likeness to a solicitation to benefit PSAE; and received a demand letter from Plaintiffs, on behalf of Eagle Forum, to cease the wrongful operation of PSAE. *See* First Amended Complaint [Doc. 40], ¶¶ 37-38, 42-48, Exhibit G thereto. Such an endorsement is catastrophic to ETF's assertion that Northon's only knowledge is protected by privilege; if that were true, how could John Schlafly authorize him to testify elsewhere without waiving any privilege? These contradictory and self-serving positions by ETF and John Schlafly are the definition of gamesmanship.

In light of the foregoing, ETF clearly cannot meet its burden to show good cause for a protective order. Because they cannot meet their burden, they instead seek to shift the burden to Plaintiffs to justify Northon's deposition. ETF argues that under *S.E.C. v. Buntrock*, Plaintiffs must show that "(1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information sought is crucial to the preparation of the case." *See* Motion [Doc. 182], pp. 8-9. However, as threshold matter, ETF is not an opponent in the present litigation and Northon is not opposing counsel. Instead, ETF is a respondent in discovery. *Id.* at 3 ("ETF was not named as a defendant, nor has it been named in the almost three years since."). Such a distinction is clearly significant under the authority cited by ETF. *See Shelton*, 805 F.2d at 1327 (noting that "[t]he practice of forcing *trial counsel* to testify as a witness, however, has long been discouraged...").[5] Again Northon is not even opposing counsel, much less trial counsel, in this case.

---

[5] Plaintiffs dispute that they must show the factors set forth in *S.E.C. v. Buntrock* prior to taking Northon's deposition. However, it is clear that the factual circumstances surrounding Northon's involvement with PSAE demonstrate that his deposition is relevant, non-privileged and crucial in the present case. This is especially true with

In any event, all of ETF's arguments ring hollow when you consider that John Schlafly, a trustee of ETF, has already affirmatively endorsed Northon as an expert and fact witness in a related matter. ETF's Motion is yet another misguided attempt by John Schlafly and his new counsel to interfere with discovery in this case. Because ETF's Motion is premature and fails to meet its burden to show good cause, it should be denied and Northon should be required to appear for his deposition like any other fact witness.

II.  **ETF'S COMPLAINTS ABOUT THE LOCATION AND A WITNESS FEE ARE A RED HERRING.**

As ETF is well aware, this Court has admonished the parties' counsel to "make a good faith effort to confer and resolve [discovery] issues before seeking court intervention." *See* Order dated May 4, 2017 [Doc. 69], p. 3. On May 24, 2019, Northon sent Plaintiffs' counsel a letter objecting to the absence of a witness fee (there was no mention of the location) and stating: "I am, therefore, ethically bound **not to appear** for a deposition without the consent of ETF, which has not been granted, nor will it be without a court order." *See* Letter from I. Northon dated May 24, 2019, a true and accurate copy of which is attached hereto as **Exhibit L** and incorporated herein by reference. In a response, Plaintiffs' counsel stated:

> As previously indicated, **we are willing to work with you regarding the scheduling of and logistics for your depositions**. Likewise, to the extent that you believe that there are "technical" deficiencies in the subpoenas, **please feel free to contact us so that we can address any of your concerns.** However, those efforts would be for naught if your position is that you will not comply with any subpoena served upon you "without a court order." Please let us know if you believe that we have misread your position.

*See* Letter from E. Solverud dated May 27, 2019, a true and accurate copy of which is attached hereto as **Exhibit M** and incorporated herein by reference. Plaintiffs received no response from

---

regard to Northon's knowledge of Phyllis Schlafly's conduct and mental state in 2016, as Mrs. Schlafly passed away in September of 2016.

10

SL 3377535.5

Northon. Plaintiffs remain willing to address any logistical or technical concerns that ETF may have, including any such issues regarding a witness fee and/or the location of the deposition. Rather than work with Plaintiffs on this issue or otherwise attempt to limit the scope of the discovery dispute to the real issue (i.e., that Northon will not appear for a deposition without an order from this Court), ETF has included these technical issues vicariously on behalf of Northon to buttress up its Motion and unnecessarily involve this Court on matters which Plaintiffs have already expressed a willingness to confer on. Concerns about a witness fee or deposition location are not grounds for a protective order prohibiting Northon's deposition altogether.

### III.   ETF'S RELIANCE ON THE SCHEDULING ORDER IS MISPLACED.

As an apparent last gasp, ETF objects that the subpoena is untimely because the Amended Scheduling Order [Doc. 154] provides that "Plaintiffs' deposition(s) shall be taken by April 5, 2019," and Northon was served with the subpoena on May 13, 2019. *See* Motion [Doc. 182], p. 10. ETF's interpretation of the Amended Scheduling Order is simply wrong. "Plaintiffs' deposition(s)" refers to depositions *of* the Plaintiffs and does not limit Plaintiffs' ability to subpoena Northon. If "Plaintiffs' deposition(s)" limited Plaintiffs' ability to take depositions *after* April 5, 2019 (as ETF suggests), this would directly conflict with the subsequent deadline for deposition of "Defendants' expert(s)" (which also clearly means depositions *of* PSAE's experts). This interpretation would be absurd given the overall discovery deadline of July 26, 2019, and has not been recognized by any of the parties to this action.[6] Indeed, Plaintiffs recently took the deposition of Martin, as a director and officer of PSAE, on June 4, 2019. The deposition of plaintiff

---

[6] Although incorrect, ETF's argument about the deposition deadlines does raise the issue of the viability of the current scheduling order. In addition to the parties' present disputes regarding depositions (*see* Docs. 177, 181, 182, 183), ETF's and PSAE's compliance with written discovery is still being litigated. Indeed, this Court's inspection of documents withheld by ETF and PSAE as privileged is still underway. *See* Order [Doc. 171]. Because the parties have been and continue to be embroiled in litigation over ETF's and PSAE's compliance with its discovery obligations and Order of this Court, many deadlines under the Amended Scheduling Order are now untenable and require amendment.

Shirley Curry is also currently set for June 20, 2019. ETF's argument is especially bewildering because ETF is represented by Randy Grady and Riezman Berger, who also represent PSAE in this matter. Stated differently, ETF's own counsel of record has acted inconsistently with the strained position taken by ETF and Northon here.

## CONCLUSION

In light of the foregoing, ETF's motion to quash should be denied; Northon should be ordered to appear for deposition at a date and location agreed to by the parties. If the parties are unable to agree, the deposition should be conducted at the Courthouse in Benton, Illinois within fourteen (14) days. Plaintiffs should be awarded their reasonable attorneys' fees and costs.

Respectfully submitted,

SPENCER FANE LLP

DATE: June 12, 2019

By: /s/ Erik O. Solverud
Erik O. Solverud, #IL6231306
(Lead Counsel)
Arthur D. Gregg, #IL6319204
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Telephone (314) 863-7733
Facsimile (314) 862-4656
esolverud@spencerfane.com
agregg@spencerfane.com

*Attorneys for Plaintiffs Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar and Shirley Curry*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document was filed with the Court's electronic filing system on June 12, 2019, which will send notice to all counsel of record.

/s/ Erik O. Solverud

SL 3377535.5