IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EAGLE FORUM, an Illinois Not for Profit Corporation<br><br>Plaintiff,<br><br>v.<br><br>PHYLLIS SCHLAFLY'S AMERICAN EAGLES, a Virginia Not for Profit Corporation,<br><br>Defendant | ) | Case No. 3:16-cv-00946-DRH-RJD |

**PLAINTIFF EAGLE FORUM'S RESPONSE IN OPPOSITION TO DEFENDANT PHYLLIS SCHLAFLY'S AMERICAN EAGLES' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Eagle Forum ("Eagle Forum" or "Plaintiff"), by and through its attorneys, SmithAmundsen LLC, pursuant to FED. R. CIV. P. 56(C) and L.R. 7.1, and for its Response in Opposition to Defendant Phyllis Schlafly's American Eagles' ("PSAE" or "Defendant") Motion for Summary Judgment ("Motion"), states as follows[1]:

**Introduction**

PSAE's Motion for Summary Judgment is little more than a recitation of the facts which PSAE believes supports its defense. Unlike a true motion for summary judgment, PSAE relies on facts supported only by testimony and affidavits from witnesses under its control, instead of admissible evidence produced from witnesses controlled by the non-moving party. As PSAE has failed to show either that the material facts are beyond dispute or that it is entitled to judgment as a matter of law, the Court should deny PSAE's Motion.

[1] On August 30, 2019, Eagle Forum filed a motion pursuant to Rule 56(d), in which it requested that the Court stay consideration of PSAE's Motion for Summary Judgment until the completion of discovery. Out of an abundance of caution, Eagle Forum files its Response in Opposition, as required by the Rules, but requests that the Court grant it leave to amend this Response at the completion of discovery.

**Standard**

Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). The party moving for summary judgment bears the initial burden to demonstrate an absence of genuine issues of material facts and the right to judgment as a matter of law. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of genuine issues of material fact." *Mitchell v. Baker*, No. 13-cv-0860, 2015 WL 5076938, at *2 (S.D.Il. Aug. 27, 2015) (citing *Celotex*, 477 U.S. at 322); *see also Bank of Commerce v. Hoffman*, 829 F.3d 542, 545-46 (7th Cir. 2016) ("If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial."). "[S]ummary judgment is a drastic remedy, and where doubt exists as to the right therefor, the wiser judicial policy is to permit resolution of the dispute by trial." *Baur v. Powerscreen USA, LLC*, , 2007 WL 951936, at *3 (S.D.Il. March 28, 2007).

**Response to Defendant's "Statement of Undisputed Facts"**

At the outset, Plaintiff is compelled to briefly address the impropriety with which Defendant presents its purported "Statement of Undisputed Facts" to the Court. Rule 56(c) and L.R. 7.1 require that motions for summary judgment be supported by objective statements of fact not in dispute, separately stated in such a manner so as to permit the Court and the non-movant to differentiate those purported facts and the alleged factual support. Defendant's Statement of

Undisputed Facts fails this requirement and instead presents its facts in an argumentative, subjective narrative which includes unnecessary (and unsupported) commentary and even footnotes. This is wholly improper under the Rules.

Nevertheless, Plaintiff herein attempts to pick apart Defendant's Statement to adequately respond to each of the purported stated facts therein. To that extent any such fact is not included following Plaintiff's effort to cure Defendant's deficiencies, Plaintiff respectfully denies the same as it was unable to ascertain that said fact was indeed intended to be stated as such.

1. Plaintiff is an Illinois non-profit corporation founded in 1975 by Phyllis Schlafly ("Phyllis") to advance politically conservative causes. Ex. B (Affidavit of John Schlafly)

**Response: Admitted. Stating further, Plaintiff notes that Defendant and its purported members have previously denied this to be the case in separate litigation.**

2. Plaintiff's purposes include, without limitation: informing the public on "current national and local subjects beneficial to the community," promoting "social welfare and individual freedom," and distributing educational literature to the public and sponsoring seminars and public meetings "to alert the public about present or proposed governmental actions, legislation, or policies." Ex. A (Eagle Forum Bylaws), Art. II.

**Response: Admitted.**

3. Prior to creating Plaintiff, Phyllis founded Eagle Trust Fund ("ETF"), a separate organization, in 1967. Ex. B, ¶ 3.

**Response: Denied. Eagle Trust Fund is an unincorporated associationn. *See* Testimony of John Schlafly, attached hereto as Ex. 1, at pp. 36:1–40:23.**

4. In 1981, Phyllis founded Eagle Forum Education and Legal Defense Fund ("EFELDF"), a non-profit corporation, for educational purposes and to further conservative causes. Id., ¶ 5.

**Response: Denied. This statement is unsupported and John Schlafly does not have the basis to assert this in an affidavit. The purposes of Eagle Forum Education and Legal Defense Fund are stated in its founding documents and By-Laws, which Plaintiff attaches hereto as Ex. D.**

5. These entities operated jointly.

**Response:** **Objection. Defendant does not provide any factual or evidentiary basis for this statement. Therefore, pursuant to FED. R. CIV. P. 56 and L.R. 7.1(d), it is not properly considered by the Court in its determination of Defendant's Motion.**

**Subject to and without waiving said objection, Eagle Forum denies this statement and Defendant cites to no evidence to support such a finding.**

6. For instance, Phyllis solicited subscriptions to the "Phyllis Schlafly Report," a political newsletter, and in solicitations made references to "Eagle Forum" and would request a "check made payable to: Eagle Trust Fund." Ex. J (Annual Renewal Notice for The Phyllis Schlafly Report in 2007).

**Response:** **Denied. Exhibit J does not stand for the proposition stated, nor does it exemplify the previously-unsupported statement that the entities operated jointly. Further, Exhibit J is hearsay and Defendant has failed to lay adequate foundation to demonstrate that Exhibit J is admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)-(2); *see also Outley v. City of Chicago*, 354 F.Supp.3d 847, 867 (N.D. Ill. 2019) (articles, without proper foundation, "are hearsay, which is inadmissible in summary judgment proceedings").**

7. ETF published "The Phyllis Schlafly Report." Id.; Ex. K (Eunice Smith Depo.) 59:22-24, 60:1-5, 135: 4-11.

**Response:** **Denied. Exhibit J does not stand for the proposition stated, nor does it exemplify the previously-unsupported statement that the entities operated jointly. Further, Exhibit J is hearsay and Defendant has failed to lay adequate foundation to demonstrate that Exhibit J is admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)-(2); *see also Outley v. City of Chicago*, 354 F.Supp.3d 847, 867 (N.D. Ill. 2019) (articles, without proper foundation, "are hearsay, which is inadmissible in summary judgment proceedings").**

**In further response, Plaintiff states that Defendant's Exhibit J lists "Eagle Forum," not Eagle Trust Fund as its publisher. *See* Ex. J, p. 2.**

**In further response, Defendant's Exhibit K, the cited testimony of Eunice Smith, does not stand for the proposition stated. In fact, in that testimony, she denied having knowledge of the publisher of "The Phyllis Schlafly Report" and testified she "assumed" the identity of the publisher.**

8. Plaintiff claims it registered the service mark, "Eagle Forum," with the US Patent and Trademark Office on August 7, 2001. First Amended Complaint, ¶ 17 [Doc. 40].

**Response:** **Admitted. Stating further, this fact is not just an allegation. Rather, Plaintiff did in fact register its service mark with the U.S. Patent and Trademark**

**Office, which is evidenced by the registration materials attached as Exhibit A to Plaintiff's First Amended Complaint.**

9. Phyllis, however, used the word "Eagle" for all of her organizations, including ETF and EFELDF. Ex. I (Dr. Bruce Schlafly Depo.), 28:2-23.

**Response: Admitted, in part, denied, part. Plaintiff admits that the word "Eagle" is a word that was used in connection with ETF and EFELDF. Plaintiff denies that the word was used for "all of her organizations," and that is not supported by the testimony cited.**

10. Phyllis believed and expressed that an "Eagle" referred to "all of those people that are drawn to her work and her issues and legacy over 70-plus years." Ex. F (Edward Martin Depo.) 364:11-15.

**Response: Denied. Defendant's Exhibit F, the testimony of Ed Martin, is not competent evidence to support a factual statement as to what Phyllis "believed or expressed." It is inadmissible hearsay and lacks any foundation to be admitted at trial. Stating further, Defendant's reliance on this portion of testimony is misleading and does not stand for the proposition stated, as Martin's hearsay statement was made in response to an inquiry relating to his own understanding of the term "Eagle," not Phyllis Schlafly's belief or understanding.**

11. ETF currently has two co-trustees: John Schlafly and Dr. Bruce Schlafly. Ex. I: 45:18-22, 70:9-16.

**Response: Admitted.**

12. Therefore, the Cori faction, discussed *infra*, has no control in ETF. The Cori faction also has no control in EFELDF.

**Response: Defendant objects to this statement as an improper conclusion of law. *See American Safety Cas. Ins. Co. v. City of Waukegan*, 776 F.Supp.2d 670, 676-77 (N.D. Ill. 2011) ("… a party may not include legal opinions or conclusions of law in its statement of facts in support of summary judgment.").**

**Defendant further objects to Statement #12 as it does not provide any factual or evidentiary basis for this statement. Therefore, pursuant to FED. R. CIV. P. 56 and L.R. 7.1(d), it is not properly considered by the Court in its determination of Defendant's Motion.**

**Subject to and without waiving these objections, Plaintiff denies these unsupported statements and further refers to its September 3, 2019 Complaint in the *Cori, et al v. Martin, et al*, Madison County, Illinois Case**

**No. 2016 MR 000111 matter, which clearly demonstrates such a dispute exists. Plaintiff attaches said Complaint as Exhibit 2, hereto.**

13. Dr. Bruce Schlafly is a director for EFELDF. Ex I: 143:2-4.

**Response: Admitted.**

14. Plaintiff at all relevant times has been a tax-exempt entity under § 501(c)(4) of the Internal Revenue Code. Ex. L (Verified Madison County Complaint), ¶ 1.

**Response: Admitted.**

15. Defendant cites to the Verified Madison County Complaint for the purposes of establishing this tax status. In addition, 26 USC § 501(c) articulates the distinction between these classifications. For purposes of this case, the important distinction is that a § 501(c)(4) entity's donations are non-tax deductible, whereas a § 501(c)(3) entity's donations are tax deductible.

**Response: Defendant objects to this statement as an improper conclusion of law. *See American Safety Cas. Ins. Co. v. City of Waukegan*, 776 F.Supp.2d 670, 676-77 (N.D. Ill. 2011) ("… a party may not include legal opinions or conclusions of law in its statement of facts in support of summary judgment.").**

**Defendant further objects to Statement #15 as it does not provide any factual or evidentiary basis for this statement. Therefore, pursuant to FED. R. CIV. P. 56 and L.R. 7.1(d), it is not properly considered by the Court in its determination of Defendant's Motion.**

**Subject to and without waiving said objections, Plaintiff states that the United States Tax Code speaks for itself.**

16. Plaintiff was and is largely funded by discretionary third-party donations and investment gains. Ex. B, ¶ 10.

**Response: Admitted in part, denied in part. Plaintiff admits that it receives third-party donations and that it has made gains on investments. Plaintiff expressly denies that John Schlafly has the requisite knowledge to make the statement in ¶10 of his Affidavit, which is relied upon by Defendant. In fact, in his own statement, John Schlafly admits that his statement, to the extent it refers to Plaintiff beyond April, 2016, nearly three and a half years ago, is based upon his own inference, not personal knowledge. *See* Ex. B, ¶10 ("… and I infer still is…").**

17. Phyllis was a "terrific fundraiser," Ex. D (Depo. of Rosina Kovar): 81:1-19, and was responsible for virtually all of Plaintiff's financial and political success. Ex. B ¶¶ 10-11.

**Response:** **Admitted in part, denied in part. Plaintiff admits that during her life, Phyllis Schlafly was a prolific fundraiser. Plaintiff denies Defendant's separate statement as to her responsibility for "virtually all" of its financial and political success, as this is, at best, an opinion expressed in an affidavit from John Schlafly. John Schlafly has not been designated as an expert in fundraising or political matters, nor have any expert opinions of his been disclosed. Therefore, his personal opinion is inappropriate to be considered as a purported fact in support of summary judgment.**

18. Ms. Kovar was one of Plaintiff's directors. She left the board in 2017. Ex. D, 7:17-20, 10:16-18.

**Response:** **Admitted in part, denied in part as incomplete. Plaintiff admits that Ms. Kovar was first elected as a director in 2007, but her successor was not elected until January 2018.**

19. In January 2015, Edward Martin was elected to succeed Phyllis as Plaintiff's president in a disputed vote. Ex. D: 88:2-15.

**Response:** **Denied. By this statement's own wording, the purported election of Ed Martin was "disputed." Stating further, Ed Martin was not properly elected by a two-thirds vote of the directors of Eagle Forum. *See* Ex. 2; *see also*, Minutes from January 2015 meeting, attached hereto as Exhibit 3.**

19. In early 2016, Plaintiff had eleven directors: Phyllis, LaNeil Wright Spivy, Andrew Schlafly, John Schlafly, Kathleen Sullivan, Anne Cori ("Cori"), Eunie Smith, Shirley Curry, Cathie Adams, Rosina Kovar and Carolyn McLarty. Ex. L, ¶ 21; Ex. G (April 11, 2016 Board Meeting Minutes). The validity of this meeting, and the actions taken during the purported meeting, are disputed in another pending case. This document was prepared by Ms. Kovar. Ex. D, 76:6-11.

**Response:** **Plaintiff objects to this statement as purposefully misleading and incomplete. This statement does not define what and when is meant by the term "early 2016."**

**Further, by Defendant's own words, inartfully included in an associated footnote, it admits that the validity of the meeting and the actions taken are "disputed," which logically therefore cannot serve as a statement of undisputed fact. *See* FED. R. CIV. P. 56.**

**Further, Plaintiff states that the composition of its Board changed on multiple occasions in 2016, due to death and resignation. At the end of 2016, Plaintiff's board consisted of: Andrew Schlafly, John Schlafly, Kathleen Sullivan, Anne Cori Schlafly, Eunie Smith, Shirley Curry, Cathie Adams, Rosina Kovar, and Carolyn McLarty. *See* Ex. 4. By the end of January, 2017, Plaintiff's board consisted of: Anne Cori Schlafly, Eunie Smith, Shirley**

**Curry, Cathie Adams, Rosina Kovar, Carolyn McLarty, Lois Linton, Colleen Holcomb, and Pat Andrews. *Id.***

20. Plaintiff also had roughly $4,000,000 in cash and securities. Ex. B, ¶ 10.

**Response: Plaintiff admits, while not properly stated or supported by Defendant, that in or around April, 2016, it had approximately $4,000,000 in assets.**

21. Phyllis and John Schlafly had signature authority over these assets. Id.

**Response: Plaintiff objects to this statement as purposefully misleading and incomplete. This statement does not define when Defendant alleges Phyllis or John Schlafly had signature authority over the assets.**

**Subject to and without waiving said objections, Plaintiff states that following John Schlafly's proper removal from Plaintiff's Board, for cause, his signature authority over Plaintiff's accounts was removed. *See* Minutes from January 2017 Meeting, attached hereto as Exhibit 4.**

22. On April 10, 2016, Phyllis requested in writing that Cori and her faction – Eunie Smith, Shirley Curry, Cathie Adams, Rosina Kovar and Carolyn McLarty – resign from EF. Ex. H (Phyllis Schlafly Letter).

**Response: Plaintiff objects to the argumentative use of the term "faction" in this statement. Plaintiff further objects to as Exhibit J is hearsay and Defendant has failed to lay adequate foundation to demonstrate that Exhibit H is admissible evidence. *See* FED. R. CIV. P. 56(C)(1)-(2). Further, Defendant does not adduce any evidence that Phyllis Schlafly, in fact, authored Exhibit H and/or that she was not unduly influenced in doing so. Plaintiff further states this statement is irrelevant because, pursuant to Plaintiff's by-laws, the directors were each duly appointed and entitled to remain as directors of Plaintiff, regardless of Phyllis Schlafly's alleged request.**

23. On a telephone call on April 11, 2016, Cori and five other directors removed Phyllis' and John Schlafly's access to the roughly $4,000,000 in assets over Phyllis' objections. Ex. G; Ex. B, ¶ 12.

**Response: Denied. Plaintiff states that on April 11, 2016, at a duly noticed and conducted board meeting of the directors of Plaintiff, properly and effectively authorized that Anne Cori, Eunie Smith and Lois Linton were authorized to transact business with respect to Plaintiff's accounts with banks and other financial institutions and revoked any resolutions providing other signatory authority. *See* Ex. G.**

24. On April 22, 2016, Cori and her five cohorts filed a lawsuit in Madison County, Illinois against Plaintiff (as a "nominal defendant"), John Schlafly and Edward Martin. Ex. L.

**Response:** **Plaintiff objects to the argumentative use of the term "cohorts" in this statement. Subject to and without waiving said objection, admitted. The pleadings in the Madison County case speak for themselves.**

25. On or about May 12, 2016, "Citizen Empowerment League" changed its name to "Phyllis Schlafly's American Eagles." Ex. B, ¶ 13

**Response:** **Admitted.**

26. Phyllis created and/or founded Defendant. Id.

**Response:** **Denied. Plaintiff states that Phyllis Schlafly was ostensibly held out as one of Defendant's purported founders or creators, but that the evidence is such that she did not even know about the creation of Defendant at the time. For example, on May 14, 2016, Phyllis Schlafly responded to John Schlafly's support of a resolution to create PSAE by stating "Did you do this??????????????"** ***See*** **E-Mail attached hereto as Exhibit 5.**

27. Defendant's directors as of May 12, 2016 included Phyllis, Edward Martin, Andrew Schlafly, John Schlafly and Kathleen Sullivan. Id., ¶ 14

**Response:** **Admitted. Stating further, Ed Martin, Andrew Schlafly, John Schlafly and Kathleen Sullivan were in fact the "founders" and "creators" of Defendant, and their efforts in doing so are the basis of the civil conspiracy and breach of fiduciary duty claims brought against them in the Madison County litigation.** ***See*** **Ex. 2.**

28. A majority of those in control of Plaintiff at the time did not apparently support Donald Trump during the presidential elections. Id.,¶ 20.

**Response:** **Plaintiff objects to this statement as it is completely unsupported by the record. The only evidence cited by Defendant is the baseless affidavit of John Schlafly, which makes this bald statement only "on information and belief," which is not sufficient evidence to support a motion for summary judgment. Further, on its face, this statement is not a fact as Defendant employs the term "apparently," conceding that it does not have actual evidence to support the statement.**

**Stating further, this statement is denied. Plaintiff and its directors supported Donald Trump when he was the Republican nominee for president of the United States.**

29. Therefore, Defendant was formed and/or re-organized in May 2016 to advance conservative principles, particularly those pertaining to the 2016 US Presidential Election. Id., ¶ 19.

**Response:** **To the extent this statement relies on statements in Paragraph 28 above with its use of the term "therefore," Plaintiff incorporates by reference its response to Paragraph 28 above as if set forth fully herein.**

**Stating further, Plaintiff states that this is not a properly-taken statement of fact due to its employment of the term "and/or" which, by definition, does not state a fact with requisite certainty or absence of dispute.**

30. Defendant's mission is to "promote the Trump Agenda." Ex. F, 92:3-7.

**Response:** **Denied. The directors of Defendant conspired and stated in writing that Defendant was formed and its mission is to harm and destroy Plaintiff. *See* E-Mail from Andrew Schlafly, attached hereto as Exhibit 6.**

31. As such, it is "educational" and for the "public benefit." Id., 93:14-21.

**Response:** **Denied. *See* Response to Paragraph 30 above.**

**Stating further, to the extent this statement of fact is intended to relate to tax or legal implications relating to Defendant, Plaintiff objects to this statement as it is as an improper conclusion of law. *See American Safety Cas. Ins. Co. v. City of Waukegan*, 776 F.Supp.2d 670, 676-77 (N.D. Ill. 2011) ("… a party may not include legal opinions or conclusions of law in its statement of facts in support of summary judgment.").**

32. Defendant has never intended to sell, transfer, or assign the websites www.psamericaneagles.org or www.psamericaneagles.com to a third-party for gain. Ex. B, ¶ 21.

**Response:** **Plaintiff objects to this statement as it is only supported by the Affidavit of John Schlafly, in which he does not identify himself as testifying or swearing on behalf of Defendant and in which he does not demonstrate adequate knowledge or basis to make the statement in question. Stating further, Plaintiff asserts that discovery on this issue from Defendant, which Defendant has sought to deny, is precisely why Plaintiff's Motion to Stay determination of Defendant's Motion for Summary Judgment should be granted.**

33. Defendant is treated as tax-exempt under § 501(c)(4) of the Internal Revenue Code. Ex. F, 298: 22-24.

**Response:** **Plaintiff objects to this statement as it an improper conclusion of law. *See American Safety Cas. Ins. Co. v. City of Waukegan*, 776 F.Supp.2d 670, 676-77 (N.D. Ill. 2011) ("… a party may not include legal opinions or conclusions of law in its statement of facts in support of summary judgment.").**

**Stating further, Plaintiff states that the testimony cited is not sufficient evidence to support a fact for purposes of summary judgment. Ed Martin was not deposed as a corporate representative testifying on behalf of Defendant.**

34. Phyllis was involved in the discussion of naming Defendant "Phyllis Schlafly's American Eagles." Id., 309:10-14.

**Response:** **Denied. Plaintiff states that Phyllis Schlafly was ostensibly held out as one of Defendant's purported founders or creators, but that the evidence is such that she did not even know about the creation of Defendant at the time.** ***See*** **Ex. 5.**

35. Neither Phyllis nor anyone associated with Defendant ever attempted to divert consumers, donors, or supporters from Plaintiff to Defendant. Ex. B, ¶ 18; Ex. F. 265: 1418.

**Response:** **Denied. Plaintiff has not had the opportunity to depose Defendant to fully develop the evidence required to respond to this statement of fact. However, the evidence shows that Defendant made direct solicitations and sent emails to Plaintiff's supporters.** ***See, e.g.*****, Solicitation Letter, attached hereto as Exhibit 7.**

36. Defendant operates at real property leased by ETF in Alton, Illinois. Ex. C (Defendant's Interrogatory Answers), # 11.

**Response:** **Admitted.**

37. At no point in time has Defendant exercised any control, dominion, or ownership over any of Plaintiff's money, intellectual property, mailing lists, personal property and/or PO Box. Ex. B, ¶ 17.

**Response:** **Denied. Plaintiff has not had the opportunity to depose Defendant to fully develop the evidence required to respond to this statement of fact. However, the evidence shows that Defendant took mailing lists, personal property and dominion over the P.O. Box, which they are continuing to use to this day.**

38. Defendant has never sold any tangible products to the public. Id., ¶ 22.

**Response:** **Denied. Plaintiff has not had the opportunity to depose Defendant to fully develop the evidence required to respond to this statement of fact. However, the evidence shows that Defendant has sold copies of books and the Report. Stating further, this statement is irrelevant as the Lanham Act does not except Defendant from its purview to allow it to infringe Plaintiff's Mark.**

39. Defendant does not offer any services, labor, skill or advice for profit to the public. Id., ¶ 23.

**Response:** **Admitted. Stating further, this statement is irrelevant as the Lanham Act does not except Defendant from its purview to allow it to infringe Plaintiff's Mark.**

40. On or about August 24, 2016 – after a majority of Plaintiff's board took steps to remove Phyllis from control of Plaintiff's assets – Plaintiff filed this lawsuit claiming, among other things, unfair competition, lost donations and lost profits. First Amended Complaint, pages 18-19 [Doc. 40].

**Response:** **Denied. Cori, Smith, Adams, McLarty, Kovar and Curry filed suit on August 24, 2016, not Plaintiff. Plaintiff further disputes this statement as Plaintiff's board did not remove Phyllis Schlafly from control of its assets; rather, it revoked prior authorization for her to act as signatory to Plaintiff's accounts. *See* Response to ¶21 above.**

41. After Phyllis died, Cori and Eunie Smith were the "two primary fundraisers" for Plaintiff in 2017. Ex. D, 82:8-20. Neither is "as effective as Phyllis." Id.

**Response:** **Denied. The evidence relied upon by Defendant, the testimony of Kovar, does not state what Defendant holds it out to state. Kovar testified that in her personal observation, Cori and Smith were "probably" the primary fundraisers for Plaintiff in 2017. However, Kovar was not designated as a corporate representative on behalf of Plaintiff.**

42. Plaintiff admitted, furthermore, that it raised more money in 2018 than 2017 from donations, fundraising and/or membership. Ex. E (Carolyn McLarty Depo), 16:1-15, 17: 1-15.

**Response:** **Denied. The testimony cited by Defendant is from Carolyn McLarty, who testified in her own capacity and did not testify as a corporate representative for Plaintiff such that she could "admit" anything on behalf of Plaintiff.**

**Subject to and without waiving said objections, Plaintiff admits that it raised more funds in 2018 than it did in 2017. Stating further, Plaintiff attributes this fact in large part due to the fact that in 2017, Defendant was improperly interfering and competing with Plaintiff while infringing on Plaintiff's Mark and confusing donors and supporters. More funds were raised in 2018 after litigation against Defendant for its wrongful infringement and other illegal commenced and progressed in several Courts.**

43. Ms. McLarty was Plaintiff's treasurer in 2017 and 2018. Ex. E, 10:20-22

**Response:** **Admitted.**

\

## Law and Analysis

According to PSAE's Motion, it has moved for summary judgment on all eight (8) counts of Eagle Forum's First Amended Complaint ("FAC"). As a moving party on summary judgment without the burden of persuasion at trial, PSAE must show the lack of a genuine issue of material fact to negate at least one element of each count. It has failed to do so on all fronts.

I. Count I – Conversion

Count I of Eagle Forum's FAC is for conversion. Eagle Forum alleges that PSAE has converted Eagle Forum's assets and resources, including money, intellectual property, mailing lists, real and personal property, and Eagle Forum's P.O. Box in Alton, Illinois. To defeat Count I, PSAE makes the legal argument that conversion cannot apply to money, intellectual property, or real property. PSAE then argues that the "unspecified personal property is vague." Finally, PSAE argues that there is no factual dispute that PSAE' have not converted any personal property of Plaintiff that actually belongs to Plaintiff." These arguments miss the summary-judgment mark.

On summary judgment, PSAE is required to show the lack of a genuine dispute as to material facts. Here, PSAE's bare allegation supported by self-serving, inadmissible evidence is that it has never "exercised any control, dominion, or ownership over any of Plaintiff's money, intellectual property, mailing lists, personal property and/or PO Box." *See* ¶ 37, *supra*. Eagle Forum disputes this fact. Therefore, summary judgment is inappropriate on Count I

II. Counts II and III – Federal and Common Law Infringement

Count II of Eagle Forum's FAC is for infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) and (1)(b). Specifically, Eagle Forum seeks redress for PSAE's infringing use of the Eagle Forum ® Mark. A claim under § 1114(1)(a) requires: (1) a registered mark; (2) use in commerce of any reproduction, counterfeit, copy, or colorable imitation or the registered mark in

connection with the sale, offering for sale, distribution, or advertising of any goods or services; and (3) a likelihood of confusion. *Id.* A claim under § 1114(1)(b) requires: (1) a registered mark; (2) reproducing, counterfeiting, copying, or colorably imitating the registered mark and applying such to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (3) a likelihood of confusion, or to cause mistake, or to deceive. *Id.* To defeat Count II, PSAE makes two arguments that are not supported in fact or law. First, PSAE argues that its use of the Eagle Forum ® Mark is non-commercial speech beyond the reach of the Lanham Act. Second, PSAE argues that there is no likelihood of confusion.

PSAE's first argument is against the weight of the law. PSAE relies heavily on *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 322-23 (4th Cir. 2015) for the proposition of law that noncommercial expressive and charitable activities are incompatible with the Lanham Act. In fact, *Radiance* does counsel that "[c]ourts are thus well-advised to tread cautiously when a trademark holder invokes the Lanham Act against an alleged non-profit infringer whose use of the trademark holder's marks may be only tenuously related to requests for money." *Id.* at 326-27. However, *Radiance* continues, showing that a non-profit infringer such as PSAE is not immune from liability under the Lanham Act:

> Again, this is not to say that in all instances a solicitation by a non-profit is immune from Lanham Act liability. A solicitation may satisfy the "in connection with" element if the trademark holder demonstrates a sufficient nexus between the unauthorized use of the protected mark and clear transactional activity. Such a nexus may be present, for example, where the protected mark seems to **denote the recipient of the donation**.

*Id.* at 327 (emphasis added).

It is important to reflect on the standard at this juncture. At this stage, Eagle Forum is not required to present any evidence in support of its claims until PSAE has carried its initial burden on summary judgment to show the lack of a genuine issue of material fact. PSAE has not done so and certainly hasn't done so with citation to admissible evidence. PSAE cites to various facts that it does not sell or distribute tangible products and does not offer services, labor, skill, or advice for profit to the public. However, this ignores the fact that in PSAE's chief case in support of its position, the Court recognized that donations to a charitable organization are within the purview of the Lanham Act.

Second, PSAE attempts to argue that there is not likelihood of confusion, citing to the well-accepted seven (7) factor test applied in the Seventh Circuit to determine the likelihood of confusion. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001). "In order to win summary judgement on an infringement suit, a defendant must show that there is no likelihood of confusion that consumers generally familiar with [Eagle Forum's] marks would, upon only seeing [PSAE's] mark, to believe [PSAE] was in some way related to, or connected or affiliated with, or sponsored by [Eagle Forum]." *Rock-A-Bye-Baby, Inc. v. Dex Products, Inc.*, 867 F.Supp 703, 711 (N.D.Il. 1994).

PSAE provides no admissible evidence to show that there is no genuine dispute as to a material fact regarding likelihood of confusion. Instead, PSAE flips the burden, stating that "Plaintiff has further not shown any likelihood of probable confusion." This is a misapplication of summary judgment. In order to support summary judgment, PSAE must first put forth evidence that there is no likelihood of confusion of consumers and show that this evidence is beyond dispute. PSAE has failed to even attempt to do so, and instead relies on self-serving,

inadmissible testimony from affidavits, while attempting to prevent Eagle Forum from conducting discovery. Therefore, summary judgment is inappropriate on Counts II and III.

III. Counts IV and V – Federal and State Unfair Competition

In Counts IV and V, Eagle Forum brings claims of unfair competition under Section 43(a) of the Lanham Act and under Illinois law. "Section 43(a) protects qualifying unregistered trademarks." To prevail under § 43(a) of the Lanham Act, Eagle Forum must show that (1) it has a protectable trademark, and (2) a likelihood of confusion as to the origin of PSAE's product. *Ty, Inc.*, 237 F.3d at 897.

The first step in this analysis is a determination of the marks sought to be protected by the plaintiff. Here, PSAE argues that Eagle Forum's FAC is vague and therefore it must speculate as to what marks Eagle Forum is attempting to protect. A motion for summary judgment is no place for speculation. Notably, PSAE has done no discovery to determine the scope of Eagle Forum's claims in Counts IV and V. PSAE has served a total of two interrogatories on Eagle Forum. PSAE has not taken the deposition of Eagle Forum. Again, it is not Eagle Forum's burden to prove that it will succeed at trial on its claims. It is PSAE's burden to show that there is no genuine issue of material fact as to Eagle Forum's claims. Given that PSAE has failed to even identify the marks that Eagle Forum seeks to protect under these Counts, it is impossible for PSAE to carry its initial burden on summary judgment. Moreover, PSAE provides **zero** evidence to support the proposition that the marks Eagle Forum seeks to protect have not acquired secondary meaning. Because PSAE has failed to properly support its motion for summary judgment as to Counts IV and V, no further response is due from Eagle Forum.

PSAE also makes a half-hearted argument regarding Eagle Forum's unfair competition claim. PSAE makes no citation to facts, but blankly asserts that Eagle Forum and PSAE do not

have consumers in the context of unfair competition law. This ignores *Radiance* and the understanding that both Eagle Forum and PSAE compete for donations from the same limited pool of possible donors. Eagle Forum's claim is that PSAE has attempted to ride on Eagle Forum trademarks and goodwill built over fifty (50) years to collect donations. For example, Eagle Forum has attached hereto Exhibit 7, which is a solicitation from PSAE sent to persons that are donors of Eagle Forum. At trial, Eagle Forum will show that this solicitation was designed to confused Eagle Forum's donors by using language, format, and images that Eagle Forum's donors associate with Eagle Forum. Therefore, summary judgment is inappropriate on Counts IV and V.

IV. Counts VI and VII – Dilution

Eagle Forum's Count VI and VII seek to recover under the theory of dilution under the Lanham Act and Illinois law. PSAE's only argument against these counts is that it adopts its arguments made against other counts. Therefore, no further response is required from Eagle Forum. For the reasons argued above, summary judgment is inappropriate on Counts VI and VII.

V. Count VIII – Cyberpiracy in Violation of the Federal Anticybersquatting Consumer Protection Act

Count VIII of Eagle Forum's FAC is directed to PSAE's websites. In an attempt to avoid liability for its actions, PSAE attempts to argue, in self-serving manner, that it did not have a bad faith intent to profit. Despite this blank assertion, PSAE provides no evidence in support, except for an inadmissible affidavit.

Though Eagle Forum has been prevented from deposing PSAE, the evidence shows there is at least a dispute as to PSAE's motives, rendering summary judgment inappropriate. For

example, on April 11, 2016, Andrew Schlafly, one of PSAE's founders, discussed by e-mail his plan to use PSAE to compete with Eagle Forum and to use marks belonging to Eagle Forum in that competition. *See* Ex. 6. Moreover, PSAE's websites were created using Eagle Forum's e-mail address purported on behalf of Eagle Forum. *See* Ex. E to Eagle Forum's FAC.

Taken in the light most favorable to Eagle Forum, as is required on summary judgment, there is a dispute as to the facts underlying Count VIII. Therefore, summary judgment is inappropriate.

Respectfully submitted,

**SmithAmundsen LLC**

*/s/ James P. Sanders*
James P. Sanders, #6298110
Brian M. Wacker, #6302105
Zachary R. McMichael, # 6324331
120 S. Central Avenue, Suite 700
St. Louis, MO 63105
(314) 719-3700
Fax: (314) 719-3710
Email: jsanders@salawus.com
bwacker@salawus.com
zmcmichael@salawus.com

ATTORNEYS FOR DEFENDANT
EAGLE FORUM

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was electronically filed and served upon all parties of record by the United States District Court's CM/ECF system on September 16, 2019.

*/s/ James P. Sanders*