IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EAGLE FORUM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Cause No.: 3:16-CV-00946-NJR |
| | ) |
| PHYLLIS SCHLAFLY'S AMERICAN EAGLES, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S MOTION FOR ATTORNEY FEES AND NONTAXABLE EXPENSES**

COMES NOW Defendant Phyllis Schlafly's American Eagles ("Defendant"), through counsel, and states as follows:

**I.     Overview**

This is an exceptional case. Neither Plaintiff Eagle Forum ("EF") nor any of the six individual Plaintiff directors of EF ("Plaintiff Directors") (collectively, "Plaintiffs") litigated this case to obtain a judgment. This lawsuit – and the duplicative, related litigation instituted by EF and the Plaintiff Directors – was retaliatory, designed to impose excessive costs on Defendant, and further a public relations campaign to "spin" the Plaintiff Directors' takeover of EF in a positive light.  As the prevailing party, Defendant requests an award of fees and nontaxable expenses pursuant to Rule 54(d) and 15 U.S.C. § 1117(a) in the amount of **$610,243.80**, with Plaintiffs being jointly and severally liable for this sum or any other sum approved by the Court.

**II.     Applicable Standards**

Defendant's claim for attorney fees is timely because it is filed within fourteen days of this Court's entry of summary judgment. Rule 54(d); [Docs. 231-232]. The First Amended Complaint asserted Lanham Act claims. [Doc. 40]. Under the Lanham Act, "[t]he court in

1

exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Prevailing party" in fee statutes is a term of art that refers to the "prevailing litigant." *Astrue v. Ratliff*, 560 U.S. 586, 591 (2010). Under Rule 54(d), the "prevailing party" is the party who prevails "as to the substantial part of the litigation." *First Commodity Traders v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985). The Supreme Court explained, in the patent infringement context:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. Icon Health*, 572 U.S. 545, 554 (2014). The 7th Circuit adopted this standard for attorney fee requests under § 1117(a) of the Lanham Act. *See LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384, 388 (7th Cir. 2019).[1] Factors for the Court to weigh include: "frivolousness, motivation, objective unreasonableness …and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 386. The Court should examine the "totality of the circumstances" and exercise its "equitable discretion" in light of these factors. *Id.* at 388-89.

"Trademark suits, like much other commercial litigation, often are characterized by firms' desire to heap costs on their rivals, imposing marketplace losses out of proportion to the legal merits." *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir. 2000).

---

[1] The previous standard required that a defendant prove the plaintiff was guilty of an abuse of process in suing. *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 963-64 (7th Cir. 2010). Incidentally, an abuse of process suit is pending against Anne Cori, one of the Plaintiff Directors, as of February 14, 2020 because of her abuse of the legal system in this and other proceedings. Exhibit 1, *Schlafly v. Cori*, St. Louis County Cause No.: 20SL-CC01069.

"District courts have wide discretion in determining the amount of attorneys' fees and costs; therefore, [appellate review] of such determinations is limited to a highly deferential abuse of discretion standard." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

### III.   The Circumstances Merit an Award of Attorney Fees and Nontaxable Expenses

The Court is familiar with the major events giving rise to this lawsuit. But there is more to it. By at least August 2016, Plaintiff Directors hired a political public relations consultant to try to explain away their conduct at the disputed EF board meeting on April 11, 2016. In 2019 in the Madison County litigation, the Court there found this board meeting to be illegal and conducted by the Plaintiff Directors in violation of EF's Bylaws. Exhibit 2, Order Unsealing Summary Judgment, Partial Summary Judgment. The consequences of this adjudication are still being litigated. But for this illegal meeting, it is unlikely this lawsuit would have ever been filed.

After their illegal meeting, and before this lawsuit was filed, Plaintiff Directors formulated a message and media strategy designed to tarnish the reputation of Edward Martin, Defendant's President, and justify the adverse actions taken against EF's founder, Phyllis Schlafly. Exhibit 3, August 2016 Emails. This lawsuit was part of that public relations strategy and designed to further the false narrative that they were working in Phyllis Schlafly's best interests. Id. As opposed to litigating its claims solely in Court, Plaintiffs resorted to litigating their claims in the media to manipulate public opinion – and potentially the very jurors who would decide the case. *See* First Amended Complaint, demanding a jury trial. [Doc. 40].

As part of this strategy, Plaintiff Directors filed this action in August 2016. [Doc. 1]. EF joined the Plaintiff Directors and filed the First Amended Complaint as a plaintiff in January 2017. [Doc. 40].  Despite requesting emergency injunctive relief, Plaintiffs never requested an injunction hearing to stop the claimed irreparable harm. Instead, Plaintiffs engaged in extensive

discovery over numerous years, resulting in the production of more than eleven thousand (11,000) pages of documents by Defendant and conducted four depositions, including depositions in Florida and Virginia.

A significant portion of the discovery Plaintiffs obtained was utilized in other lawsuits. For instance, information obtained by Plaintiffs in this case was utilized by Anne Cori, a Plaintiff Director, in trust and estate litigation in St. Louis County. Similarly, interrogatory responses in that trust and estate matter were filed with this Court. [Doc. 185, Exhibit 11]. Moreover, Anne Cori coordinated with other Plaintiff Directors and EF's counsel about the filing of the trust and estate lawsuit – in which neither the Plaintiff Directors nor EF were ever parties – before it was even filed. <u>Exhibit 4, March 2017 Emails</u>.[2] This lawsuit was not the typical trademark infringement or dilution action in which a litigant is genuinely trying to protect intellectual property rights. Indeed, EF "essentially forfeited its common law infringement" and false designation of origin claims. [Doc. 231, page 13]. This lawsuit was one piece of a coordinated litigation strategy in multiple jurisdictions fueled by vindictive goals and ulterior motives, rendering it, for this reason alone, exceptional.

During the course of the vexatious discovery conducted in this case, Plaintiffs unreasonably flooded the Court with requests for sanctions [Doc. 50], contempt [Doc. 132], a dispute on the propriety of a subpoena for testimony on a lawyer of record for Eagle Trust Fund [Doc. 182], a fight over whether they could continue to depose an ill, out-of-state director of Defendant in her mid-80s [Doc. 183], and an unseemly, frivolous filing from related litigation in

---

[2] This refers to a lawsuit filed on March 20, 2017, *Cori v. Schlafly, et al.*, St. Louis County Cause No.: 17SL-PR00926, in which Anne Cori claimed that Phyllis Schlafly was unduly influenced and/or incapacitated in connection with the execution of two amendments to her revocable trust in 2016. Many of EF's directors were deposed in that lawsuit. Those claims were voluntarily dismissed with prejudice on February 3, 2020.

4

Madison County asking to strike a lawyer's *pro hac vice* admission.[Doc. 181, Exhibit 1].[3] As a result of these tactics and distractions, trial was delayed numerous times to the financial detriment of Defendant. [Doc 76,], [Doc 119], [Doc 154].

On June, 17, 2019, the Court dismissed the Plaintiff directors. [Doc 187]. Thereafter, other than attempting to limit Defendant's ability to pursue discovery, [Doc. 191], EF did little to advance its lawsuit. It never sought additional written or oral discovery or otherwise took steps to pursue its claims. At the same time, it showed no willingness to dismiss the lawsuit, requiring that Defendant keep resources in reserve to try EF's case to a jury.

Defendant moved for summary judgment on August 14, 2019. [Doc. 203]. Though it had the benefit of substantial discovery in this case and other cases, EF sought to delay consideration of summary judgment to conduct *additional* discovery outside of the Court's scheduling order deadline, reflecting an obvious motivation to hide the weaknesses of its claims and weigh down Defendant. [Doc. 206]. EF failed to identify what specific discovery it needed as required by Rule 56(d). [Id.] This request was denied because EF "had substantial opportunities for discovery" and had "not met its burden." [Doc 228, page 10].

When EF did respond to Defendant's Motion for Summary Judgment, it provided almost no meaningful facts or evidence. [Doc. 209]. EF did not include a single affidavit from any of its directors, officers or employees. [Id.] It did not use any testimony from the full day deposition of Defendant's President. [Id.] It did not produce any evidence of confusion, a focal point in any trademark suit. [Id.] It failed to identify its supposed common law trademarks. [Id.] It did not produce any evidence of damages. [Id.] It could not identify any of its property that had been converted. [Id.] And it purposefully and unreasonably ignored the existence of the related

---

[3] In February 2020, EF even served a separate discovery subpoena on a lawyer at one of the law firms representing Defendant in this case in *Cori, et al. v. Martin, et al.*, St. Louis County Cause No.: 17SL-CC00552. These stunts distract from the relevant facts and law.

Schlafly entitities – Eagle Trust Fund and Eagle Forum Education and Legal Defense Fund – and their impact on EF's claims. [Id.] The Plaintiff Directors have known of these entities and their importance for years. Furthermore, the conspicuous legal inaccuracies in EF's opposition created "exceptional circumstances" that justified a reply brief under Local Rule 7.1(c). *See* Order Denying Motion to Strike Reply Brief. [Doc. 228, page 7].

After Defendant moved for summary judgment, EF added Defendant as a new party to Madison County litigation, which has been pending since April 2016. Exhibit 5, Madison County Complaint. Significantly, many of the claims against Defendant in its fourteen-count lawsuit were and are duplicative of the claims made in this proceeding. Id. EF knowingly asserted mirror-image claims in a different jurisdiction against Defendant in a case that had been pending for over three-and-a-half years. In many areas, EF essentially "copied and pasted" the claims verbatim. By joining Defendant to the Madison County litigation, EF intentionally circumvented this Court's discovery deadlines, inundated Defendant with more discovery requests, and wantonly burdened Defendant with additional litigation costs. This bad faith forum shopping and gamesmanship by EF was a tacit acknowledgement that it knew it would lose the then pending motion for summary judgment, but would nonetheless pursue any means necessary to cost Defendant money. It further illustrates a reckless waste of judicial resources by asserting the exact same claims in two courts.

In November 2019, unwilling or unable to try its own claims at trial in January 2020, EF moved to stay this case pending the outcome of the Madison County Suit or continue the trial [Doc. 215]. This request was designed to keep this action pending through at least 2020, an election year, to distract Defendant from its political advocacy and activities. It was also intended

to keep Defendant in two costly, complex cases. On December 12, 2019, the Court continued the trial but denied the stay. [Doc. 227].

Prior to this Court's December 12 continuance, Defendant took the required and substantial steps to prepare for trial, including preparing jury instructions and making Rule 26(a)(3) pretrial disclosures. [Doc. 218]. EF, on the other hand, took no visible steps to prepare for trial and did not make its required Rule 26 disclosures in violation of this Court's case management procedures, which require disclosure thirty days before the first day of the presumptive trial month.[4] The month before trial EF had no intention of trying its own lawsuit in front of a jury it requested.

The Court granted summary judgment on April 1, 2020. [Doc. 231]. This had the incidental effect of denying as moot the pending motion for contempt against Eagle Forum Foundation, an entity controlled by some or all of the Plaintiff Directors, for failure to comply with this Court's prior discovery order. [Doc. 229]. In various contexts of its Summary Judgment Opinion, the Court found EF "confused," "evasive," did not "have a leg to stand on" regarding one or more of its claims, and that it had shirked its burden on summary judgment. [Doc. 231].

It is exceptional and unusual for a plaintiff in a trademark suit to lose its entire lawsuit on summary judgment after years of litigation. *AHP Subsidiary Holdings Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993) (summary judgment in a trademark infringement suit must be approached with "great caution" and evaluated with "skepticism"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992) (it "is not a heavy burden" to create a genuine issue for trial).

---

[4] This is not an isolated incident. After EF stated it would refuse to comply with a properly served trial subpoena, the St. Louis County Court ordered EF to comply with the subpoena and/or other discovery in the aforementioned trust and estate case in January 2020. EF filed a writ of prohibition in *State ex rel. Eagle Forum v. Levy*, Missouri Eastern District No.: ED108681. The writ was denied within two hours. Exhibit 6, January 31, 2020 Missouri Court of Appeals Order. EF still has not supplied information per the subpoena and disregarded the court order. Separately, the Madison County Court has been critical of EF's "lackadaisical view" of its scheduling order. Exhibit 7, December 23, 2019 Madison County Order.

But the substantive weakness of Plaintiffs' claims, coupled with the unreasonable manner in which this case was litigated and the fruitless discovery Plaintiffs conducted, created a sparse factual record for the Court and made the "evidence so one-sided that there [was] no doubt about how the question should be answered." [Doc. 231, page 14] (citing *AutoZone, Inc. v. Strick* 543 F.3d 923, 929 (7th Cir. 2008). It is equitable to compensate Defendant for being forced to expend significant time and money in successfully defending Plaintiffs' unsubstantiated, unreasonable claims.

As of this Motion, EF still has claims pending against Defendant in Madison County. Many of the claims are legally identical or predicated on the same set of factual circumstances. Exhibit 5. Although some or all of the claims against Defendant should be barred by collateral estoppel or *res judicata*, it is improbable EF will voluntarily dismiss its claims against Defendant. Its track record here and in other cases proves otherwise because its goal has always been to litigate Defendant into submission through a war of paper and to avoid any trial.

The claims against Defendant in Madison County are not set for trial. EF has conducted over twenty (20) depositions in the Madison County litigation and caused the production of roughly eighty-eight thousand (88,000) pages of discovery. EF is still demanding more written and oral discovery from Defendant. It is equitable for this Court to award attorney fees to deter plaintiffs like EF from pursuing objectively unreasonable trademark suits solely designed to harass and impose costs grossly disproportionate to the merits of the case.

## IV. Itemization of Attorney Fees and Nontaxable Expenses

Defense counsel fee statements are collectively attached as Exhibit 8. Where necessary, the entries are redacted or reworded to protect privilege. The rates are consistent with rates charged by lawyers in the community of reasonably comparable skill, experience and reputation.

*People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (the lodestar approach forms the "centerpiece" of attorney fee determinations and involves multiplying the "number of hours reasonably expended on the litigation…by a reasonable hourly rate"). The requested fees are only those that were reasonably necessary for the *defense* of Plaintiffs' lawsuit. It does not include fees related to Defendant's previously dismissed counterclaims. [Doc. 99]. Moreover, "an allowance of reasonable fees for presenting a successful fee petition is the only way a fee applicant can be made whole." *Bretford Mfg., Inc. v. Smith Syst. Mfg. Co.* 421 F. Supp. 1117, 1128 (N.D. Ill. 2006).

Defendant has filed its bill of taxable costs under Rule 54(d)(1). [Doc. 233]. "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991). In contrast to taxable costs, which are limited and enumerated in 28 U.S.C. § 1920, "nontaxable expenses" are broader. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).[5] Defendant's nontaxable expenses related to the litigation are attached as <u>Exhibit 9</u>, which consists of data storage expenses for documents for this matter. To the extent any costs contained in Defendant's bill of taxable costs are not approved, Defendant requests that those items be allowed as nontaxable expenses.

## V.     Conclusion

Through this lawsuit and other lawsuits, Plaintiffs have consistently harassed and maligned Defendant with its litigation tactics. However, when it actually comes time to "put up or shut up," [Doc. 231, page 4], Plaintiffs have nothing to support their claims. Plaintiffs'

---

[5] Defendant was unable to immediately locate a definition for "nontaxable expenses." Northern District of Illinois Local Court Rule 54.3 defines them as "any expense for which a prevailing party may seek reimbursement other than costs that are taxed by the clerk pursuant to Fed. R. Civ. P. 54(d)(1)."

untenable claims and pernicious approach to litigation has unnecessarily burdened this Court and depleted Defendant's resources to the detriment of its donors.

Defendant requests that **$610,243.80**, comprised of **$577,954.60** in attorney fees and **$32,839.20** in nontaxable expenses – or any other sum approved by the Court – be assessed jointly and severally against Plaintiffs Eagle Forum, Anne Cori, Eunie Smith, Cathie Adams, Shirley Curry, Rosina Kovar and Carolyn McLarty. The Plaintiff Directors initiated this action and engaged in substantial litigation through their separate counsel; thus, they should be responsible for at least a portion of the attorney fees and nontaxable expenses. As an alternative, Defendant requests that the Court assess attorney fees and nontaxable expenses solely against EF or amongst the Plaintiffs in any proportion the Court deems appropriate.

WHEREFORE, Defendant requests that the Court grant the foregoing; and for any other further or additional relief this Court deems appropriate under the circumstances.

Dated: April 8, 2020                                        Respectfully submitted,

/s/ Henry P. Elster
Henry P. Elster, #62875MO
101 S. Hanley, Suite 1280
Saint Louis, Missouri 63105
(Telephone) 314-727-0868
(Facsimile) (314) 727-9071
(E-mail) henry@elsterlaw.com
**Co-Counsel for Phyllis Schlafly's American Eagles**
**Admitted Pro Hac Vice**

## CERTIFICATE OF SERVICE

I hereby certify that on April 8th, 2020, a copy of the foregoing and/or attached document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all of the parties of record.

/s/ Henry Elster
101 South Hanley, Suite 1280
Clayton, Missouri 63105