## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAGLE FORUM, an Illinois Not-for-Profit Corporation,

      Plaintiff,

v.

PHYLLIS SCHLAFLY'S AMERICAN EAGLES, a Virginia Not-for-Profit Corporation,

      Defendant.

Case No. 16-CV-00946-NJR

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are the Bill of Costs (Doc. 233) and Motion for Attorneys' Fees and Nontaxable Expenses (Doc. 234) filed by Defendant Phyllis Schlafly's American Eagles ("PSAE"). PSAE seeks $11,073.65 in costs and $610,243.80 in attorneys' fees and nontaxable expenses. Plaintiff Eagle Forum ("EF") has filed an Objection (Doc. 236) to PSAE's Bill of Costs and an Opposition (Doc. 240) to PSAE's Motion for Attorneys' fees and Nontaxable Expenses. For the reasons set forth below, PSAE's Bill of Costs are granted in part and denied in part, and PSAE's Motion for Attorneys' Fees and Nontaxable Expenses is granted in part and denied in part.

### FACTUAL & PROCEDURAL BACKGROUND

After four years in the trenches, six separate legal battles in jurisdictions across the

country,[1] media campaigns,[2] and a never-ending army of lawyers, politicians, and entities, this Court is still working to untangle just one section of the legal web between these battling powers.

The battle here is between PSAE and EF. PSAE and EF are both nonprofit organizations formed by Phyllis Schlafly that support causes related to the modern conservative political ideology. (Doc. 43, p. 6; Doc. 203-2, pp. 2-6). EF was created in 1975 (*Id.*). PSAE, formally named Citizen Empowerment League, was created in 2015 (Doc. 43, p. 9). As discussed in *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 451 F. Supp. 3d 910, 914 (S.D. Ill. 2020), Citizen Empowerment League's name was changed to PSAE, after Phyllis Schlafly's own daughter, Anne Schlafly Cori, and other members of EF's directors held an illegal April 11, 2016 board meeting,[3] voted to change leadership and ultimately took control of EF's assets (Doc. 203-12, 50-51; Doc. 43, p. 9).

PSAE was comprised mostly of the minority board members, including Phyllis Schlafly, and ex-leadership from EF (*Id.* at 10). According to EF, PSAE solicited support and funds from EF's donors without permission and used EF's assets and resources—including EF's money; intellectual, real, and personal property; mailing lists; and P.O. Box (Doc. 43, p. 11). PSAE denied the allegation, but admitted to using Schlafly's name

---

[1] EF, PSAE, Eagle Trust Fund ("ETF"), Eagle Forum Education and Legal Defense Fund ("EFELDF"), the Schlafly children, and related individuals and entities have legal battles in the Circuit Court for Madison County, Illinois ("Madison County case"), the Circuit Court for St. Louis County, Missouri, the United States District Court for the Eastern District of Missouri, the United States Circuit Court of Appeals for the Eighth Circuit, the United States District Court for the District of New Jersey, and the United States District Court for the Western District of Pennsylvania.

[2] EF planned to pro-actively schedule media appearances to discuss the suit (Doc. 234-3).

[3] On July 11, 2019, the court in the Madison County case held that the EF meeting on April 11, 2016 was conducted in violation of the then-existing Bylaws of EF (Doc. 234-2, p. 9)

and image along with employing phrases like "Our Eagle Leaders," "my American Eagles," and "loyal supporters" who have been fighting "for decades" (*Id.* at p. 11). EF also alleges that PSAE registered two unauthorized websites, www.psamericaneagles.org and www.psamericaneagles.com, using its e-mail address on its behalf (*Id.* at pp. 10-11). PSAE admits registering the websites and states that it never intended to sell, transfer, or assign the websites to a third party for gain (Doc. 203, p. 5).

After three years of discovery, ten hearings and conferences (Docs. 25, 44, 53, 63, 67, 73, 97, 109, 139, 193), and a multitude of briefing and orders over the course of this case, the Court was under the impression that the parties finally produced all documents responsive to each other's written discovery requests. In April 2019, Magistrate Judge Daly ordered PSAE to provide the documents identified in Doc. 161 for inspection by the Court (Doc. 171). PSAE timely responded and indicated that it had already produced many of those documents to EF's directors (Doc. 172). **For four months**, EF did not contest PSAE's production, but when PSAE filed its Motion for Summary Judgment (Doc. 202), EF woke up and filed its Rule 56(d) Motion to Deny or Defer Consideration of PSAE's Motion for Summary Judgment (Doc. 206) noting that "it is essential that [EF] be able to review all of the documents to which it is entitled, especially those that PSAE has improperly refused to produce for years" (*Id*. at p. 4). As a result, Magistrate Judge Daly ordered that further documents referred to in Doc. 161 be produced to EF in her order of November 13, 2019 (Doc. 212).

Indeed, on November 27, 2019, EF represented to the undersigned in its Motion to Stay or In the Alternative for Continuance of Trial Setting "that PSAE has finally produced all the documents responsive to [EF]'s written discovery requests, [EF] is in a position to complete factual depositions" (Doc. 215, p. 6). On January 23, 2020, the Court denied both EF's Rule 56(d) Motion and Motion to Stay and ordered Eagle Forum Foundation ("EFF") to produce documents disclosing the "amounts and dates of individual donations and all other information encompassed within Requests 1, 2 and 5" (Doc. 228). EFF failed to comply with the Court's January 23, 2020 order. On March 16, 2020, this Court ordered EF to respond to PSAE's Motion for Contempt (Doc. 229) by March 23, 2020 and state why the Court should not hold EF in contempt for its failure to comply with the January Order (Doc. 230). Neither EF nor EFF complied with this Court's March 16, 2020 order.

Despite EF and EFF withholding documents from PSAE, this Court granted PSAE's Motion for Summary Judgment on April 1, 2020 (Doc. 232). PSAE filed its Bill of Costs (Doc. 233) and moved for attorneys' fees and nontaxable expenses (Doc. 234). EF filed its Objections to PSAE's Bill of Costs (Doc. 236) and its Opposition to PSAE's Motion for Attorneys' Fees (Doc. 240).

**ANALYSIS**

## I.    PSAE's Bill of Costs

### A.  PSAE is the Prevailing Party Under Federal Rule of Civil Procedure 54(d)

Although EF lost on all its claims, EF argues that PSAE is not a prevailing party because PSAE's counterclaims were dismissed with prejudice (Doc. 236, p 4). These

counterclaims, according to EF, were substantial and EF prevailed, thus "it cannot be said that PSAE is the prevailing party 'as to the substantial part of the litigation.'" (*Id.*). Accordingly, EF argues "[t]his mixed outcome requires the Court to exercise its discretion that both [EF] and PSAE bear their own costs." (*Id.*). This Court disagrees.

"[U]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d). The prevailing party for purposes of Rule 54(d) is the party that prevails with regard to a substantial part of the litigation. *Testa v. Vill. of Mundelein*, 89 F.3d 443, 447 (7th Cir. 1996). "[W]hen one party gets substantial relief it 'prevails' even if it doesn't win on every claim." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999).

The Seventh Circuit and some of its district courts have denied a litigant's bill of costs and ordered the parties to bear their own costs when a case is a "mixed outcome." Most of these decisions, however, recognize a case as a "mixed outcome" when the plaintiff prevails on at least one claim. *See Testa*, 89 F.3d at 447 (mixed outcome and court denied costs to the plaintiff when plaintiff lost on false arrest claim, but won $1,500 on malicious prosecution claim); *Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017) (mixed outcome and court denied costs to the plaintiffs even though plaintiffs recovered $30,000 on two claims); *Ello v. Brinton*, 2019 WL 6975093, at *2 (N.D. Ind. Dec. 20, 2019) (mixed outcome and court denied costs to defendant when plaintiff only won on breach of contract claim); *Masud v. Rohr-Grove Motors, Inc.*, 2016 WL 3418567, at *1 (N.D. Ill. June 22, 2016) (mixed outcome and court denied costs to plaintiff when "[plaintiff] won on one claim, her hostile work environment claim, but she received only modest relief in

comparison with what she sought, and she lost on the two retaliation claims"); *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, 123 F.Supp.3d 1012, 1014 (N.D. Ill. 2015) (mixed outcome and court denied costs to both plaintiff and defendants when plaintiff only won on several claims against two of eleven defendants); *Ellis v. Cty. Club Hills*, 2012 WL 4009701, at *2 (N.D. Ill. Sept. 12, 2012) (mixed outcome and court denied costs to plaintiff when plaintiff lost on summary judgment to one defendant, lost on excessive force claim as to another defendant, but won at least nominal damages on a separate excessive force claim); *Gonzalez v. City of Elgin*, 2010 WL 4636638, at *2 (N.D. Ill. Nov. 8, 2010) (mixed outcome and court denied costs to both plaintiff and defendant when "jury concluded that three of the seven [d]efendants violated two of the six [p]laintiffs' constitutional state law rights"); *Biomet Inc. v. TACT Med. Instruments Inc.*, 2005 WL 1563429, at *8 (N.D. Ind. June 30, 2005) (mixed outcome and court denied costs to both plaintiff and defendant when plaintiff ultimately prevailed on the declaratory judgment claims, but lost on its claim for breach of best efforts clause).

At the same time, other district courts in the Seventh Circuit have granted a prevailing party's bill of costs when a case is a "mixed outcome." *See Springer v. Ethicon, Inc.*, 2018 WL 1453553, at *12 (N.D. Ill. Mar. 23, 2018) (granting costs to plaintiff though the "jury returned a verdict in [plaintiff's] favor on the negligent misrepresentation claim, [but] it found for defendants on the negligence and strict liability claims and declined to award punitive damages"); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 2000 WL 1162029, at *1 (S.D. Ill. June 29, 2000) (granting costs to plaintiff though jury's verdict found for defendant on plaintiff's sexual harassment claim, but in favor of plaintiff on her retaliation claim).

District courts within the Seventh Circuit also have recognized a case as a potential "mixed outcome" though summary judgment was granted in favor of defendant. *See Small Bus. Lending, LLC v. Pack*, 2020 WL 4059642, at *3 (S.D. Ind. July 20, 2020) ("mixed outcome" even though defendant prevailed on plaintiff's motion for preliminary injunction and its motion for summary judgment, but plaintiff "successfully opposed [defendant's] Motion to Dismiss, and [defendant] ultimately destroyed the laptop hard drive on which [plaintiff] claims he had saved information to which he was not entitled"); *Hugunin v. Land O'Lakes, Inc.*, 2015 WL 12834301, at *2 (N.D. Ill. Nov. 9, 2015) ("mixed outcome" even though the court granted summary judgment in favor of defendant on all of plaintiff's claims, but plaintiff "successfully raised the defense of laches at trial so he may now use [defendant's] mark . . . ."). In *Small Bus. Lending, LLC*, 2020 WL 4059642, and *Hugunin*, 2015 WL 12834301, however, the courts still granted costs to defendant.[4]

The dismissal of PSAE's counterclaims, at most, makes this a "mixed outcome" case which requires this Court to provide "at least a modicum of explanation when entering an award of costs." *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir.1998). Here, PSAE is still the prevailing party because this Court granted PSAE's motion for summary judgment. *See Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1242 (7th Cir. 1985), *overruled on other grounds by Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989) (finding that "when a district court grants a party's motion for summary

---

[4] This Court has found one district court case from the Seventh Circuit, *Oglesby v. Coca-Cola Bottling Co. of Chicago/Wisconsin.*, 640 F. Supp. 32, 34 (N.D. Ill. 1985), where the court denied defendant's motion for costs although defendant won on summary judgment because much of the discovery costs were related to the issues on which defendant lost.

judgment, that litigant is a 'prevailing party' for purposes of the rule"); *see e.g.*, *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 944 (7th Cir. 1997) (noting that the defendant was the "prevailing party" under FRCP 54(d) because "the district court granted summary judgment in its favor on all counts").

Exploring the Seventh Circuit's other analytical approaches to determine which litigant is the "prevailing party" under Rule 54(d) does not help EF. One analytical approach is comparing the amount a litigant is ultimately awarded with the amount it originally sought. *See Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) (noting that "[plaintiff's] modest recovery (modest in relation to his original demand, that is) implies that the defendants won more of the dispute than they lost"). Here, EF received nothing.

Another approach is the "single significant issue," which turns on which party prevailed on the main issue in dispute. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991); *see e.g., Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 969 (N.D. Ind. 2002) (noting that plaintiff "prevailed on the central issue in her lawsuit, that is, on her claim that [d]efendant violated the FMLA. This is a substantial part of the litigation. The fact that her damage award was only $720.00 does not alter this conclusion"). Here, the significant issues were alleged trademark infringement and unfair competition. The Court entered final judgment in PSAE's favor on these claims (Doc. 231).

The Seventh Circuit and its district courts also designate a litigant as a "prevailing party" when they attain "substantial relief." *See e.g., Slane*, 164 F.3d at 1068 (although both the plaintiff and defendant had each won two claims, plaintiff was the prevailing party

because a $225,000 jury award constitutes "substantial relief"); *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 954 (N.D. Ill. 2010) (acknowledging that two defendants were granted summary judgment, but plaintiff was the prevailing party because "the jury ultimately entered a verdict in [p]laintiffs' favor and awarded over $240,000 in damages against [d]efendants"). At the risk of being redundant, EF received nothing.

Not only is PSAE the "prevailing party" under the Seventh Circuit's analytical approaches and because it was granted summary judgment, but functionally EF failed at what it sought out to do. EF brought this case to impact PSAE's ability to compete with EF, and PSAE defeated EF's claims at summary judgment. Accordingly, PSAE is the "prevailing party" and is entitled to costs.

## B. *Recoverable Costs Under Federal Rule of Civil Procedure 54(d)(1)*

28 U.S.C. § 1920 specifies the costs that may be recovered pursuant to Rule 54(d)(1). The costs explicitly allowed by § 1920 are: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920.

The Seventh Circuit has noted that the rule provides a "presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). "The presumption in favor of awarding

costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them." *Weeks*, 126 F.3d at 945 (7th Cir. 1997) (citing *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988)). "Generally, only misconduct by the prevailing party worthy of a penalty or the losing party's inability to pay will suffice to justify denying costs." *Id.*

PSAE seeks a total of $11,073.65 in costs (Doc. 233). EF argues that "PSAE makes no attempt to meet its burden regarding costs . . . [and] nothing was done by PSAE to show why any of these costs were necessary or reasonable" (Doc. 236, p. 4). However, "the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (citing *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1409 (7th Cir. 1991)). The prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying cost." *Northbrook Excess & Surplus Ins. Co.*, 924 F.2d at 643. Instead, the party must "provide the best breakdown obtainable from retained records." *Id.* (citing *Levka v. City of Chicago*, 107 F.R.D. 230, 231 (N.D. Ill. 1985)).

EF first contests PSAE's $200 in *pro hac vice* fees. EF cites to several district court cases within the Seventh Circuit in support of the notion that *pro hac vice* fees are not taxable costs, but EF ignores the fact that the Seventh Circuit also has affirmed the award *pro hac vice* fees as costs. *See United States v. Emergency Med. Assocs. of Illinois, Inc.*, 436 F.3d 726, 730 (7th Cir. 2006) (finding no abuse of discretion in awarding *pro hac vice* fees to

defendant who prevailed in a *qui tam* action). Not only are *pro hac vice* fees recoverable, but also PSAE's *pro hac vice* fees are reasonable. Unlike the excessive and unreasonable request to recover *pro hac vice* fees in *Indiana Coal. for Pub. Educ. - Monroe Cty. & S. Cent. Indiana, Inc. v. McCormick*, 2018 WL 6003970, at *3 (S.D. Ind. Nov. 15, 2018), where only one of the three attorneys admitted *pro hac vice* signed his name to any substantive filings, PSAE only had one *pro hac vice* fee for Mr. Elster (Doc. 233). Mr. Elster also signed his name to substantive filings and appeared at least at one status conference (Docs. 203, 208, 210, 225, 227, 229, 234). Thus, the Court, in its discretion, allows PSAE's request for $200 in *pro hac vice* fees.

Next, EF challenges PSAE's $35.00 fee for service of summons and subpoena because PSAE "has provided no evidence of this cost" (Doc. 236). Prevailing parties may recover service costs that do not exceed the Marshals Service's fees regardless of who effected service. *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir.1996). Not only are PSAE's fees less than the Marshals Service, but also it would be preposterous to force PSAE to explain the $35.00 fee considering the high cost of attorney time. *Cf. Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014) (acknowledging that "[n]o sensible legal system requires parties to waste $60 of lawyers' time to explain spending $6 on making a copy of something").

EF also challenges PSAE's $10,016.15 fee for transcripts of various depositions and copies of video-recorded depositions (Doc. 236, p. 6). EF does not object to the number of depositions taken, or whether particular depositions were unnecessary or unreasonable. Instead, EF objects generally "that many of these expenses cannot be considered

necessary or reasonable, despite PSAE's failure to provide any reasoning as to why the transcripts were necessary and reasonable" (Doc. 236, p. 7). The Court disagrees. PSAE's deposition transcript costs were reasonably necessary as PSAE used deposition transcripts in its Motion for Summary Judgment. Because EF fails to make specific objections regarding cost of exhibits, price per page, e-transcripts, handling and delivery, attendance of reporter, or copies, this Court will not deduct such charges or engage in further analysis.

As to EF's objection to PSAE's $4,232.50 fee for obtaining video recordings, the Court agrees. While a video deposition is a taxable cost under Rule 54 and § 1920, *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008), PSAE's cost of obtaining copies of the videos are generally not permissible. *See Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, 2020 WL 4723980, at *8 (N.D. Ill. July 13, 2020) ("[a]ttorney convenience is an insufficient justification for obtaining video depositions").

EF's objection to PSAE's $488.90 fee for printing is also sustained. PSAE has failed to provide bills, invoices, or receipts showing what was printed. As a result, the Court cannot determine whether the printing was necessary for use in this matter, and the Court will not award PSAE's cost.

Further, EF's objection of PSAE's $333.60 fee for exemplification and the costs of making copies is sustained. While PSAE provided more details than the request for its printing fees, PSAE does not describe what was copied. Because the Court cannot determine whether the copies were necessary for use in this matter, this Court will not award PSAE's cost for making copies.

### C. Costs Incurred But Not Paid

As to any remaining costs, EF argues that PSAE failed to establish that these costs were actually paid by PSAE (Doc. 236, p. 8). In support of this argument, EF relies on pages 19 through 21 of PSAE's Bill of Costs and conclusively argues that it "clearly lists 'Eagle Forum Education and Legal Defense Fund,' not PSAE, as the client of Riezman Berger and payee of the costs billed" (*Id.*). EF continues noting that "the only logical conclusion from PSAE's submission is that an entity that is not a party to this case, [EFELDF], incurred these costs" (*Id.*).

The Seventh Circuit has acknowledged:

> Awards of costs, no less than damages, are limited to actual outlays or obligations. If [a party's] friend were a printer . . . , and donated duplicating services . . ., [the party] could not recover the 'reasonable value' of these services as part of [its] costs.

*Neal v. Honeywell, Inc.*, 191 F.3d 827, 833 (7th Cir. 1999). At least one district court has held that "*Neal* establishes that a prevailing party may recover only costs it actually paid." *See Indiana Coal. for Pub. Educ. - Monroe Cty. & S. Cent. Indiana, Inc.*, 2018 WL 6003970, at *2 (noting that "[d]onated or otherwise uncharged costs may not be recovered").

Declining PSAE the remaining $5,983.65 in costs would be improper. First, EF's attorneys misread pages 19 through 21 of PSAE's Bill of Costs. EFELDF is not listed as the payee. Instead, pages 19 through 21 of PSAE's Bill of Costs list the "Client Sort" as EFELDF. Second, listing EFELDF as the "Client Sort" and not PSAE does not show that EFELDF incurred PSAE's costs. Listing EFELDF as the "Client Sort" shows how PSAE's counsel organizes its files. The reasons why PSAE's counsel listed EFELDF as the "Client

Sort" could have been as simple as counsel representing EFELDF in the Madison County case and deciding to not have different client numbers for PSAE and EFELDF for this and other litigation. Third, pages 19 through 21 of PSAE's Bill of Costs are only related to the $333.60 fee for exemplification and the costs of making copies (Doc. 233, p. 19-21). Even if this Court assumed that EFELDF paid for these costs, the Court has already deducted the $333.60 fee from PSAE's total request. And finally, $5,783.65 of the remaining $5,983.65 in costs are directly related to depositions and transcripts of depositions — which includes PSAE, not EFELDF on the invoices. Accordingly, EF's argument that PSAE failed to establish that these costs were actually paid by PSAE is rejected.

### D.  PSAE's Conduct is Not Worthy of a Penalty

To deny a bill of costs on the grounds of misconduct, the prevailing party must engage in misconduct "worthy of a penalty." *Congregation of the Passion, Holy Cross Province*, 854 F.2d at 222. The Seventh Circuit has suggested that misconduct worthy of a penalty may include "calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings . . . ." *Id*. Only "exceptional circumstances" warrant a complete denial of costs. *Overbeek v. Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996). The Seventh Circuit has found a prevailing party's misconduct is "worthy of a penalty" where counsel:

> inexplicably refused over a dozen offers of the policy limit, needlessly pursued a trial, appealed the jury's decision not to award punitive damages even though the defendants were judgment-proof, vanished for large periods of time, frivolously argued for dual coverage, and even wasted time and resources hailing [the losing party] into [a state] court for no apparent reason.

*Id.* Additionally, the Northern District of Illinois has found that a reduction of costs was warranted where "[d]efendants' attorneys engaged in repeated obstreperous pretrial conduct," and sanctioned Defendants "for failure to comply with this Court's discovery orders on multiple occasions." *Fairley v. Andrews*, 2008 WL 961592, at *2 (N.D. Ill. Apr. 8, 2008). Another court in the Northern District of Illinois found that the defendants' misconduct was "worthy of penalty" where "defendants had given statements about that aspect of the incident that contradicted their sworn statements to the Court — upon which the Court had relied . . . ." *Matthews v. Debus*, 2020 WL 5353280, at *8 (N.D. Ill. Sept. 6, 2020).

The alleged misconduct is centered around PSAE's obstruction of discovery. "[O]bstruction of discovery might, in some context, constitute the type of 'misconduct' that could warrant a denial of costs." *Beam v. Petersen*, 2011 WL 4431815, at *2 (N.D. Ill. Sept. 22, 2011), *aff'd sub nom*, 494 F. App'x 630 (7th Cir. 2012). But even in cases where defendants have obstructed discovery and are sanctioned, courts have held that "[t]he alleged misconduct [ ] falls well short of that in *Overweek* and *Fairley* and accordingly does not justify a complete denial of costs." *IWOI, LLC v. Monaco Coach Corp.*, 2013 WL 870208, at *1 (N.D. Ill. Mar. 6, 2013) (declining to deny the prevailing party's bill of costs even when the party failed to produce a highly relevant email); *see also Fairley*, 2008 WL 961592, at *3 (finding that defendants' conduct warranted only a reduction in costs — not a complete denial of costs, though the defendants were sanctioned for their failure to comply with the court's discovery orders).

The magnitude of PSAE's alleged obstruction in this case falls well short of "exceptional circumstances." Discovery is often contentious, and this case was no different, as Magistrate Judge Daly noted:

> In the instant case, there has been a distinct lack of cooperation amongst the attorneys in resolving discovery matters. Multiple discovery dispute conferences have already been held.

(Doc. 69, p. 3). But a "distinct lack of cooperation" is not an "exceptional circumstance." PSAE was never sanctioned. PSAE was never held in contempt (Docs. 153, 169). Magistrate Judge Daly even noted that PSAE and ETF adequately explained that their failure to comply with certain orders was due to the appeals process and a myriad of attorney-client privilege issues (Doc. 153). EF's objection to any award of costs based on alleged misconduct by PSAE is overruled.

## II.     PSAE's Motion for Attorneys' Fees and Nontaxable Expenses

This Court notes that EF's Opposition to PSAE's Motion for Attorneys' Fees (Doc. 234) was not timely filed. Local Rule 7.1(c) allows an adverse party in a civil case to respond 30 days after service of a motion to remand, to dismiss, for judgment on the pleadings, for summary judgment, to suppress, and all post-trial motions. SDIL-LR 7.1 (c). Local Rule 7.1(g) provides, in part:

> A party opposing a motion not listed in subsection (c) shall have 14 days after service of the motion to file a written response. Failure to file a timely response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion.

SDIL-LR 7.1 (g).

A motion for attorneys' fees is not listed in Local Rule 7.1(c), thus EF had 14 days from service of PSAE's Motion for Attorneys' Fees to file its response. Here, PSAE filed its Motion for Attorneys' Fees on April 8, 2020. Fourteen days from April 8, 2020 was April 22, 2020. While EF filed its opposition to PSAE's Bill of Costs on April 22, 2020, EF filed its opposition to PSAE's Motion for Attorneys' Fees on May 8, 2020.

Nonetheless, the Court declines to strike EF's Opposition to PSAE's Motion for Attorneys' Fees (Doc. 240), because it was submitted prior to the Court's ruling on fees and PSAE's counsel has had adequate opportunity to respond substantively to the submission. Additionally, striking EF's Opposition to PSAE's Motion for Attorneys' Fees when PSAE's own counsel, Riezman Berger, P.C., never provided EF with evidence supporting the hours worked and rates claimed would be extremely prejudicial.

## A. PSAE is the Prevailing Party Under the Lanham Act

Under the Lanham Act, courts "in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). A litigant is a "prevailing party" "for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation omitted). "[T]o be considered a prevailing party . . . [a party] must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (citations omitted).

Evaluating the change of legal relationship to determine whether PSAE is a "prevailing party" does not assist EF's argument that PSAE is not the prevailing party.

This Court recognizes that defeating counterclaims may certainly change the litigants' legal relationship, but here the dismissal of PSAE's counterclaims did not change the parties' relationship. Unlike *Hugunin*, 2015 WL 12834301, where the plaintiff was allowed to use the mark in its business when it defeated the defendant's counterclaims, here the dismissal of PSAE's counterclaims only confirmed that "Ms. Cori and her organizations hold equal right to use the imagery as does Mr. Schlafly . . . ." (Doc. 99, p. 9).

Rather, PSAE is the "prevailing party" under 15 U.S.C. § 1117(a). EF brought claims for state law conversion; federal and state law trademark and service mark infringement, unfair competition, and dilution; and federal cybersquatting (Doc. 40). All of EF's claims failed (Doc. 231). The Court's dismissal with prejudice materially altered the legal relationship of the parties, to the benefit of PSAE. EF did not bring this case to attain a ruling that it held equal right to use the imagery of Phyllis Schlafly. EF, as one of Ms. Cori's organizations, already had that right because Phyllis Schlafly's rights of publicity descend just like traditional property, and "all Ms. Schlafly's heirs would have equal interest and equal right to use her image in commerce" (Doc. 99, p. 9). Accordingly, PSAE is the prevailing party under the Lanham Act.

## B.  *This is an Exceptional Case Under the Lanham Act*

To award PSAE attorneys' fees under 15 U.S.C. § 1117(a), the case must be "exceptional." The Supreme Court recognizes an "exceptional" case:

> [as] simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. To assist district courts, the Supreme Court pointed to a nonexclusive set of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (citations omitted)). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 555 (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)).

Considering the totality of the circumstances, PSAE is entitled to attorneys' fees because of EF's exceptionally meritless claims. For instance, without having a federal registration for "American Eagles," "Our Eagle Leaders," "my American Eagle leaders," "loyal supporters," and "Phyllis Schlafly's Eagle Forum," EF filed suit alleging infringement (Doc. 231, p. 13). As for the claims surrounding the "EAGLE FORUM" trademark, "PSAE brought a cogent argument to the table that EF refused to address, shirking its burden based on the basic fundamentals of summary judgment caselaw in seminal cases such as *Celotex*" (*Id*. at p. 14). EF's dilution claims were also easily defeated as to "EAGLE FORUM," "American Eagles," "Our Eagle Leaders," "my American Eagle leaders," "loyal supporters," and "Phyllis Schlafly's Eagle Forum" because of their lack of distinctiveness and their multi-source use amongst Schlafly's entities (*Id*. at p. 16).

Finally, EF's cybersquatting claim fizzled as PSAE registered a variation of its own name, which did not offend EF's mark (*Id.* at p. 17).[5]

EF and its directors were also objectively unreasonable throughout this case by adding to the cost and aggravation of this case by their discovery and litigation tactics. As early as March 2017, EF's directors filed a motion for Rule 45 contempt against America's Future, Inc. ("AFI") for AFI's alleged failure to respond to the subpoena (Doc. 50). But the subpoena was not even valid as it failed to tender the appropriate witness fee (Doc. 69). By May 2018, EF's directors filed another motion for contempt (Doc. 132). Magistrate Judge Daly recommended this Motion for Civil Contempt be denied (Doc. 153). Despite EF's repeated allegations of PSAE's discovery abuses, EF's directors did not even object to Magistrate Judge Daly's Report and Recommendation, and this Court adopted it in its entirety (Doc. 168). Besides the motions for contempt, EF's directors filed at least three reply briefs (Docs. 91, 138, 143),[6] and EF filed one Motion to Strike PSAE's Reply Brief (Doc. 211). Local Rule 7.1(c) provides that reply briefs should only be filed in exceptional circumstances. SDIL-LR 7.1 (c). There were not three separate exceptional circumstances in this case. Instead, these reply briefs and EF's Motion to Strike "merely generate[d] more briefing that the Court must read and address" (Doc. 228).

---

[5] EF also brought a theory of conversion outside its theories under the Lanham Act. Despite three years to obtain evidence supporting its conversion theories, when responding to PSAE's concerns about EF's conversion claims, EF never presented facts about a specific fund or checks that were converted by PSAE (*Id.* at p. 7).

[6] Magistrate Judge Daly allowed EF's directors to file an 8-page reply brief to PSAE's Response in Opposition to Plaintiff's Motion for Civil Contempt (Doc. 140). Spencer Fane's Erik Solverud and Eric Block filed an 11-page reply brief (Doc. 143).

A deeper review of the record does not help EF. For instance, as early as 2016, PSAE moved to stay this case because the Madison County case involved the same claims (Docs. 15, 16). EF's directors contested this motion and represented that this case is a straightforward trademark infringement action and the Madison County case is not relevant because PSAE is not even a party to that litigation (Doc. 33).[7] But by November 2019, after PSAE filed its Motion for Summary Judgment, EF conveniently added PSAE as a party in the Madison County case. Then EF filed a Motion to Stay (Doc. 215) and represented at the December 12, 2019 status conference that the Court should stay this case because PSAE was added to the Madison County case, which would address EF's conversion claims (Doc. 237, p. 5). But as Judge David Dugan recognized in the Madison County case, this "[C]ourt is left with the impression that EF did not want the SDIL litigation regarding conversion to end on summary judgment" (Doc. 247-1, p. 8).

Even if repeated unsuccessful motions for contempt, frivolous reply briefs, and EF's "whack-a-mole" approach to litigation[8] could be construed as "playing hard,"[9] EF's refusal to prosecute makes this case exceptional. In April 2019, Magistrate Judge Daly ordered PSAE to provide the documents identified in Doc. 161 for inspection by the Court (Doc. 171). PSAE timely responded and indicated that it had already produced many of

---

[7] The original complaint filed included a conversion claim (Doc. 1, p. 12). EF's directors omitted this fact in their Opposition to PSAE's Motion to Stay.

[8] In the Madison County case, Judge David Dugan recognized EF's tactics as a "sort of 'whack-a-mole' approach to litigation, although inventive and some might say, tactically sophisticated, is the very thing that the public policy behind the doctrine of *res judicata* seeks to address—that litigation should have an end and that no person should be *unnecessarily harassed* with a multiplicity of lawsuits" (Doc. 247-1, p. 8) (emphasis added) (citations omitted).

[9] The Seventh Circuit has acknowledged that "[p]laying hard—by the rules—cannot suffice to make a case exceptional under § 1117(a)." *TE-TA-MA Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264 (7th Cir. 2004).

those documents to EF's directors (Doc. 172). As noted above, for *four months*, EF did not contest PSAE's production, but when PSAE filed its Motion for Summary Judgment (Doc. 202), EF filed its Rule 56(d) Motion to Deny or Defer Consideration of PSAE's Motion for Summary Judgment (Doc. 206) noting that "it is essential that [EF] be able to review all of the documents to which it is entitled, especially those that PSAE has improperly refused to produce for years" (*Id*. at p. 4). Magistrate Judge Daly, as a result, ordered that further documents referred to in Doc. 161 be produced to EF in her order of November 13, 2019 (Doc. 212). On November 27, 2019, EF represented to this Court in its Motion to Stay or In the Alternative for Continuance of Trial Setting "that PSAE has finally produced all the documents responsive to [EF]'s written discovery requests, [EF] is in a position to complete factual depositions" (Doc. 215, p. 6).

EF's presentation of alleged discovery abuses by PSAE in EF's Objections to PSAE's Bill of Costs (Doc. 236) and Opposition to PSAE's Motion for Attorneys' fees (Doc. 240) is a further example of its objectively unreasonable behavior. PSAE was neither sanctioned nor held in contempt in this case (Docs. 153, 169). Yet, EF insists that PSAE is not entitled to attorneys' fees because it engaged in significant discovery abuses. At best, EF points out that in February 2020, six months after PSAE filed its Motion for Summary Judgment, EF was served with thousands of highly relevant pages of documents relevant to negotiable instruments made payable to EF, but deposited in bank accounts belonging to PSAE (Doc. 240, p. 9). These allegations are significant, but EF misleadingly omits its reasons for the delay in alerting this Court of the February 2020 production. Indeed, EF could have filed a motion for reconsideration of the denials of its Motion under Rule 56(d)

(Doc. 206) and EF's Motion to Stay (Doc. 215). EF also had around two months to file *something* to alert this Court of PSAE's February 2020 production before this Court ruled on PSAE's Motion for Summary Judgment on April 1, 2020. [10]

By bogging down this Court with its frivolous briefing[11] and additional information from the Madison County case, EF hoped to cover up the fact that EFF was ordered on January 23, 2020 to produce documents disclosing the "amounts and dates of individual donations and all other information encompassed within Requests 1, 2 and 5" (Doc. 228, p. 6). EFF failed to comply with the Court's January 23, 2020 order. On March 16, 2020, this Court ordered EF to respond to PSAE's Motion for Contempt (Doc. 229) by March 23, 2020 and state why the Court should not hold EF in contempt for its failure to comply with the January order (Doc. 230). Neither EF nor EFF complied with this Court's March 16, 2020 order.

From the Court's perspective, it appears that EF waited to alert the Court of the February 2020 production because of the risk of EFF being forced to comply with this Court's orders. Faced with this possibility, EF chose to sit on its hands and wait to see if its claims survived summary judgment. After failing, EF now wants to rely on the February 2020 production, which only produced documents relevant to the very conversion claims that EF's attorney, James P. Sanders, a Partner of SmithAmundsen,

---

[10] EF also does not identify who served it with these documents. If it was PSAE, then this is significant. But EF notes in its earlier filing, its Objections to PSAE's Bill of Costs, that "PSAE, EFELDF, and ETF produced hundreds, if not thousands, of pages of new documents" (Doc. 236, p. 10-11). EFELDF and ETF are not defendants in this case.

[11] EF copied entire sections of its Objections to PSAE's Bill of Costs (Doc. 236, pp. 9-10) and included it in its Opposition to PSAE's Motion for Attorney Fees (Doc. 240, pp. 6-7).

LLC, told the Court that EF would drop once PSAE answered in the Madison County case, "so it will transform this case into something that truly does need to be dealt with in federal court . . . ." (Doc. 237, p. 5).

Accordingly, this is an exceptional case, and PSAE is entitled to attorneys' fees. [12]

## C. Amount in Attorneys' Fees to Award PSAE

To calculate the fee, the district court generally begins with the "lodestar" — the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "Although the lodestar yields a presumptively reasonable fee . . . the court may nevertheless adjust the fee based on factors not included in the computation," such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. *Id*. at 553.

---

[12] This Court recognizes that PSAE may have engaged in unreasonable litigation tactics in *other cases*, but the Court restricts its analysis to the parties' litigation tactics in *this case*. While courts have looked at the pattern of litigation in patent cases to determine whether a case is exceptional, looking at the parties' litigation tactics in other cases would be imprecise. *See e.g., SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits the merits of one's claims is relevant to a district court's exceptional determination under § 285"). If this was a typical trademark case, where a litigant is genuinely trying to protect intellectual property rights, then this Court would consider applying this pattern of litigation concept because of the overlap between patent and trademark law. *See e.g., S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 629 (7th Cir. 2001) (acknowledging a party's pattern of abusive and improper litigation which "have burdened the courts of this circuit"). Not only is this not a typical trademark infringement case, but also PSAE is not repeatedly filing infringement or dilution actions like a repeated filer. Instead, PSAE and its related entities and EF and its related entities are battling it out against each other in multiple jurisdictions over similar, yet different issues. The litigation tactics by PSAE in those other cases do not make PSAE's tactics in *this* case exceptional. EF can, if appropriate, seek recourse in those other jurisdictions.

"The party seeking an award of fees" must "submit evidence supporting the hours worked and rates claimed" in support of the lodestar. *Hensley*, 461 U.S. at 433. "[I]f the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553. "As to the reasonableness of the hours expended, when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). "Whichever option the district court chooses, it is required to 'provide a concise but clear explanation of its reasons for the fee award' that is sufficient to permit appellate review. *Id.* (citing *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 658 (7th Cir. 1985), quoting *Hensley*, 461 U.S. at 437).

i. *Hours Worked*

The hours worked component of the lodestar must exclude hours not reasonably expended, including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. In determining whether hours are reasonable, the Court must determine whether the task would normally be billed to a paying client and whether certain tasks could easily be delegated to non-professional assistants. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999).

PSAE's documentation for the portion related to Riezman Berger's fees lack hours worked and explanations for the amounts billed in this case (Doc. 234-8). PSAE did not provide this information because Riezman Berger was worried that itemized billing

entries would disclose information and strategies that relate to the pending Madison County case (*Id*. at p. 15). The declaration from Riezman Berger then explained that it is willing to provide the Court itemized billing for this matter *in camera* (*Id*.).

Allowing PSAE to submit its itemized billing now *in camera* would be against Seventh Circuit and Supreme Court jurisprudence. "The Seventh Circuit has made it very clear that a fee applicant must show the time spent on specific tasks rather than simply the total time spent on a bundle of tasks." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp.2d 1117, 1119 (N.D. Ill. 2006). The Supreme Court has also made it very clear that a fee applicant must show the time spent on specific tasks by acknowledging the following:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley*, 461 U.S. at 433.

Also, as noted in PSAE's Motion for Attorneys' Fees (Doc. 234), a party seeking attorneys' fees must file a motion within fourteen days of an entry of judgment. FED. R. CIV. P. 54(d). Riezman Berger did not provide its itemized billing at the time of filing within the fourteen-day requirement. "[I]t [is] [ ] not the judge's responsibility to make up for the lawyers' lack of documentation." *Montanez*, 755 F.3d at 559. Certainly, Riezman Berger's detailed time entries could have divulged strategic information, but this does not relieve PSAE of its burden. Riezman Berger could have taken several precautions to

protect its information; the fact that Riezman Berger offered to <u>later</u> provide itemized billing *in camera* <u>after</u> the deadline does not relieve Riezman Berger of its burden.

District courts within the Seventh Circuit have found similar proposals to be an unattractive way of resolving the issue of disclosing strategic information in billing records. In *Cumulus Radio Corp. v. Olson*, 2015 WL 3407438, at *4 (C.D. Ill. May 27, 2015), the plaintiff chose to redact its records and offered the court the opportunity to review its records *in camera*. The court agreed that "allowing [the] [court] *ex parte* access to [p]laintiff's invoices would deprive [defendant] of the opportunity to make arguments regarding the reasonableness of the time entries." *Id*. Like *Cumulus Radio Corp*, allowing Riezman Berger to submit its itemized billing for this matter *in camera* would deprive EF the opportunity to contest the reasonableness of Riezman Berger's time entries.

Indeed, Riezman Berger has not even provided what courts have noted as "lumped" entries. Courts reviewing "lumped" entries have reduced entries by 15% to 50% or even stricken the lumped entries as non-compensable. *See, e.g., Am. Massage Therapy Ass'n v. Folkers*, 2006 WL 8459840, at *5 (N.D. Ill. Apr. 13, 2006) (reducing all lumped time entries by 15%); *Heriaud v. Ryder Transp. Servs.*, 2006 WL 681041, at *8 (N.D. Ill. Mar. 14, 2006) (reducing lumped entries by 50%); *In re Wiedau's, Inc.*, 78 B.R. 904, 908 (Bankr. S.D. Ill. 1987) (striking the lumped entries as non-compensable). Like lumping, Riezman Berger's itemization "prevents the Court from finding out exactly how much time was spent on a particular task, it also prevents the Court from determining whether that time was reasonably spent." *In re Subpoenas Issued to Danze, Inc.*, 2006 WL 211942, at *3 (N.D. Ill. Jan. 18, 2006) (reducing lumped entries by 50%).

This Court has found a number of cases where district courts within the Seventh Circuit have ordered the party seeking attorneys' fees to file unredacted itemizations *in camera* without automatically striking the requested fees. In those cases, however, the party seeking attorneys' fees at least provided redacted versions to the opposing party in its motion for attorneys' fees. *See e.g., Eastby v. Collinsville Cmty. Unit Sch. Dist. No. 10*, 2008 WL 746920, at *1 (S.D. Ill. Mar. 18, 2008) (party initially filed redacted legal bills due to attorney-client privilege, but later ordered to produce unredacted bills for *in camera* review); *Stragapede v. City of Evanston*, 215 F. Supp.3d 708, 724–25 (N.D. Ill. 2016) (party initially filed redacted legal bills due to privileged attorney-client communications or confidential attorney work product, but later directed to file an unredacted version of the billing records *ex parte* and under seal); *Cuff v. Trans States Holdings, Inc.*, 2013 WL 140607, at *1 (N.D. Ill. Jan. 11, 2013), *aff'd*, 768 F.3d 605 (7th Cir. 2014) (ordering the plaintiff to revise itemizations, "eliminating redactions where possible and, where impossible, to submit an unredacted copy to chambers for evaluation").

Riezman Berger submitted thirteen pages of invoices.[13] The Court has reviewed these invoices to determine whether counsel's time was reasonably expended for *this* case and not on other litigation. This review revealed that Riezman Berger's time must be excluded because this Court cannot separate compensable and non-compensable time. *See e.g., Moore v. Madigan*, 2014 WL 6660387, at *11 (C.D. Ill. Nov. 24, 2014) (applying "across-the-board reductions where the total number of hours attributable to

---

[13] *See* Appendix A (presenting a list of Riezman Berger's invoices by date and providing the docket activity that took place during those invoices).

compensable work is uncertain"); *Bretford Mfg., Inc.*, 421 F.Supp.2d at 1119 ("[W]hen the time records do not describe tasks with particularity, and do not reveal the amount of time claimed to have been spent on each particular task, the judge is in no position to make a reasonable estimate of the amount of time that should have been required. This is the problem with 'block billing,' where the attorney simply lists a string of tasks performed on a particular day and the total time spent on them, without indicating how much time was spent on each of the tasks. Time records prepared in that manner clearly do not satisfy the documentation requirements of *Hensley*.").

Henry Elster ("Elster") and John Dale Stobbs ("Stobbs") submitted twelve time sheets showing the total time spent on this case to date as 281.9 hours (Doc. 234-8). A review of their itemized billing allows this Court to separate compensable and non-compensable time. EF contends, however, that Elster's and Stobbs requests are unreasonable based on (1) PSAE being represented by three lawyers from Riezman Berger; (2) multiple entries are for work pertaining to the counterclaims PSAE filed and had dismissed on October 20, 2017; (3) duplicative work already performed by other attorneys; and (4) the number of entries where Stobbs "review[ed]" documents and pleadings that "PSAE's separate attorneys had already worked on or reviewed themselves, or for the Stobbs Law Office to attend depositions and court appearances which were already attended by multiple other attorneys representing PSAE" (Doc. 240, pp. 17-18).

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. However, "duplicative time that could not be reasonably be billed

to a client also cannot be billed to an adversary through a fee-shifting statute . . . ." *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012). The Seventh Circuit has advised courts to scrutinize fee petitions carefully for duplicative time. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Yet just because two lawyers have billed for the same task does not mean the hours should be deducted. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir. 2008). The relevant inquiry remains whether the time was "reasonably expended." *Id.*

The Court has reviewed the entries objected to by EF and finds that many of the entries between Elster and Stobbs are duplicative.[14] Both Elster and Stobbs charged for reading the same court orders, discovery documents, and deposition transcripts (Doc. 234-8). Also, both Elster and Stobbs attended the same depositions and status conferences. Accordingly, the Court will reduce the duplicative time by 50 percent, from 21.6 hours to 10.8 hours for Stobbs and from 28.6 hours to 14.3 hours for Elster.

As for EF's argument on Elster's fees related to PSAE's dismissed counterclaims, the Court agrees (Doc. 240, p. 17). Nonetheless, the Court understands that some of this time was spent on Elster reviewing the case and analyzing the history of the litigation. Accordingly, the Court will reduce this time by 50 percent, from 5.5 to 2.25 hours.

Approximately 30.6 hours of Stobbs's time was spent "reviewing discovery," "reviewing pleadings," "reviewing PSAE's file," and "reviewing filings in PSAE case" (Doc. 234-8). Given the vague nature of these time entries, it is impossible for the Court

---

[14] *See* Appendix B (presenting a chart showing the duplicative entries of both Elster and Stobbs).

to determine whether these hours were truly necessary and not duplicative, or otherwise non-compensable. Accordingly, the Court will reduce this time by 50 percent, from 30.6 hours to 15.3 hours.[15]

ii.     *Hourly Rates*

A reasonable hourly rate is the local market rate for the attorney's services. *Montanez*, 755 F.3d at 553. "The best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Id*. (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639-40 (7th Cir. 2011)). If that figure is not available, a court also may rely on "evidence of rates charged by similarly experienced attorneys in the community" for similar work and evidence of fee awards the attorney has received in similar cases. *Id*. (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)).

Stobbs claims his hourly rate was $350. Elster claims his hourly rate was $240 in 2019 and $250 in 2020.[16] Both Stobbs and Elster's Declaration explain that these rates are reasonable for this region. Based on the type of case, the complexity of litigation, and the billing rates in this region, the Court agrees and finds these rates reasonable. *See e.g., N. Am. Van Lines, Inc. v. N. Am. Moving & Storage, Inc.*, 2020 WL 1130339, at *2 (N.D. Ind. Mar. 6, 2020) (acknowledging that "$400 is presumptively appropriate as the market rate for partner work in this trademark infringement action"); *Craig v. Popmatters Media, Inc.*, 448 F. Supp. 3d 844, 849 (N.D. Ill. 2020) (noting that hourly rates of $425 and $250 in intellectual-property matters were reasonable where one of the attorneys submitted

---

[15] *See* Appendix C (presenting a chart showing Stobbs's vague entries).
[16] Notably, Riezman Berger has not even provided its hourly rates.

"evidence that in 2013, one of his clients was awarded fees at the hourly rate of $409.00,

[his] standard rate at the time, in an action in the Southern District of Illinois . . . .").

### iii.    Lodestar Calculation

For the reasons set forth above, the Court has calculated the total lodestar as

follows:

| Attorney | Requested Hours | Disallowed Hours | Total Hours | Rate | Total Award |
|---|---|---|---|---|---|
| John Dale Stobbs | 80.40 | 26.1 | 54.3 | $350 | $19,005.00 |
| Henry Elster | 197.3 | 16.55 | 180.75 | $240-$250 | $43,627.00[17] |
| Riezman Berger | ? | All | 0 | ? | $0.00 |

The Supreme Court has recognized that the "'product of reasonable hours times a

reasonable rate' normally provides a 'reasonable' attorney's fee . . . ." *Blum v. Stenson*, 465

U.S. 886, 897 (1984) (quoting *Hensley*, 461 U.S. at 434). Upon determining the lodestar

amount, however, a court may adjust the award in light of such factors as the degree of

success, awards in similar cases, the novelty of the case, and the relationship between the

fees incurred and the damages awarded. *See Hensley*, 461 U.S. at 436. "Precision is

impossible in such calculations, and the district court is entitled to considerable discretion

in arriving at an award that it deems reasonable." *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th

Cir. 2010). Nevertheless, the district court must provide some explanation justifying its

decision. *Id.*

---

[17] Out of Elster's 197.3 requested hours, 172.6 of the hours were billed in 2019. All of the disallowed hours from Elster were from hours worked in 2019. Thus, Elster's 2019 total hours is 156.05 hours, the difference between 172.6 hours and 16.55 hours. To determine the total award, this Court had to calculate the total award of Elster's 2019 attorney's fees and the total award of his 2020 attorney's fees. Elster's 2019 total award is $37,452.00 (Elster's 2019 total hours, 156.05, multiplied by his 2019 rate of $240). Elster's 2020 total award is $6,175.00 (Elster's 2020 total hours, 24.7 hours, multiplied by his 2020 rate of $250).

This Court has already considered factors like the customary fees and whether the fee is fixed or contingent in determining the number of hours and hourly rates. The Court also notes that PSAE may not have obtained "excellent results" because its counterclaims were dismissed (Doc. 99) and it lost on at least one discovery motion (Doc. 97), but this Court will not reduce the lodestar amount based on these facts. A review of the record shows that Elster and Stobbs did not appear in this case until April and May 2019—well after PSAE's counterclaims were dismissed and much of the fight over discovery was over.

Finally, this Court certainly understands discovery was contentious and arguably impacted every factor noted in *Hensley*. In fact, if this Court granted the fees requested from Riezman Berger, then the Court would have evaluated whether a reduction is warranted based on the manner in which Riezman Berger approached the litigation. *See, e.g., ADT Sec. Servs., Inc. v. Lisle Woodridge Fire Prot. Dist.*, 86 F. Supp. 3d 857, 870 (N.D. Ill. 2015) (reducing attorneys' fee award by 10% to reflect "the overly contentious manner in which some aspects of this case were litigated"). Here, however, neither Elster nor Stobbs litigated in a manner which this Court believes requires a reduction. Most of the battle over discovery took place between counsel for EF's directors, Spencer Fane, and counsel for PSAE, Riezman Berger.

As such, this Court will not make a reduction to the lodestar amount. Stobbs is awarded $19,005.00 in fees. Elster is awarded $43,627.00. The Court declines to add interest to these amounts.

### D.  PSAE's Nontaxable Costs

"A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). A party's motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B).

Here, PSAE seeks $32,839.20 in nontaxable costs related to data storage expenses for documents for this case (Doc. 234, p. 9). PSAE fails to specify the statute, rule, or other grounds entitling it to nontaxable costs. PSAE does not rely on 15 U.S.C. § 1117(a) because it does not specify which costs are recoverable or that a *defendant* can recover nontaxable costs. Rather, the statute states that "the *plaintiff* shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover . . . the costs of the action." *Id.* (emphasis added). While PSAE cites Northern District of Illinois Local Rule 54.3, which allows a party to file a fee motion for nontaxable expenses, that Local Rule obviously does not apply to this Court.[18]

Even if there was a statute or rule entitling PSAE to nontaxable costs, PSAE has not provided adequate documentation. District courts have discretion in determining to what extent prevailing parties may be awarded costs. *See Weeks*, 126 F.3d at 945. Without descriptions or explanations for the data storage, the Court cannot discern whether these

---

[18] This Court found three cases within the Seventh Circuit where parties bringing claims under the Lanham Act were awarded nontaxable costs. *See Vito & Nick's, Inc. v. Barraco*, 2008 WL 4594347 (N.D. Ill. Oct. 10, 2008); *Hickory Farms, Inc. v. Snackmasters, Inc.*, 2008 WL 4542961 (N.D. Ill. Apr. 2, 2008); *Ty, Inc. v. Softbelly's, Inc.*, 2007 WL 734394 (N.D. Ill. Mar. 6, 2007), *aff'd*, 517 F.3d 494 (7th Cir. 2008). Notably, these cases come out of the Northern District of Illinois.

costs were reasonable, or even necessary. There is also no indication as to the number of documents stored or the rate at which PSAE was charged for storing the documents. *See Ingram ex rel. Ingram v. Jones*, 46 F. Supp. 2d 795, 800 (N.D. Ill. 1999) (denying plaintiff's request for expenses based on failure to provide explanation for photocopies, messenger services, and faxes). Accordingly, PSAE is not entitled to nontaxable costs.

### E. Fees and Costs PSAE Did Not Incur or Pay

EF asserts that PSAE "should not be permitted to collect costs and expenses paid by a third-party—here, EFELDF—because EFELDF would not be liable to pay the costs and expenses of [EF] if PSAE had been unsuccessful in this suit" (Doc. 240, p. 14). EF provides cases from state courts outside Illinois for this argument, but they are not persuasive.

The Court has found one case from the Seventh Circuit which arguably *in dicta* pushes the notion that fees "actually paid in the ordinary course of . . . business" is strong evidence that a fee request is commercially reasonable. *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518, 520 (7th Cir.1999). But *Medcom Holding Co.* did not even deal with a federal fee-shifting statute. Instead, the case applied Illinois law and addressed whether the prevailing party is entitled to attorneys' fees on the strength of an indemnity clause. *Id.* at 518-20.

More importantly, the very case that cited *Medcom Holding Co.* for this notion does not help EF. In *Lizak v. Great Masonry, Inc.*, the plaintiff's attorneys had not received payment for their work on the case. 2010 WL 3001906, at *1 (N.D. Ill. July 29, 2010). The plaintiff also did not pay for out-of-pocket expenses incurred in the case. *Id.* Rather than

denying the prevailing party attorneys' fees and costs, the court calculated the appropriate amount of costs and attorneys' fees and awarded that amount to the plaintiff directly. *Id.* at 7.

It is possible that EF did not find cases more on point because the answer is obvious. *See Christian v. St. Anthony Med. Ctr. Inc.*, 117 F.3d 1051, 1052 (7th Cir. 1997) (acknowledging that "[w]e cannot find a case on the question, but the answer seems obvious—maybe that's why there are no cases . . . ."). Here, PSAE is permitted to collect costs and expenses. If not, then prevailing plaintiffs with contingency fee arrangements would not be awarded attorneys' fees.

## CONCLUSION

For these reasons, Defendant PSAE's Bill of Costs (Doc. 233) and Motion for Attorneys' fees and Nontaxable Expenses (Doc. 234) are **GRANTED in part and DENIED in part**. PSAE is entitled to a total of **$62,632.00** in attorneys' fees. Plaintiff EF is **ORDERED** to pay PSAE's costs in the amount of **$6,018.65**.[19]

---

[19] In PSAE's Motion for Attorneys' Fees and Nontaxable Costs, PSAE requests that fees and expenses be assessed jointly and severally against EF and EF's directors (Doc. 234, p. 10). PSAE cites no authority for this proposition. On its face, PSAE appears to have an argument as the Seventh Circuit has noted that fee-shifting statutes "do not specify with particularity those who may be called upon to shoulder . . . fee awards." *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 421 (7th Cir. 2005) (quoting *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988)) (citations omitted). Further, several courts recognize that a corporate officer can be liable for 35 U.S.C. § 285 fees when the officer is personally responsible for the exceptional acts. *See My Health, Inc. v. ALR Techs., Inc.*, 2020 WL 122933, at *4 (E.D. Tex. Jan. 10, 2020) (collecting cases).

Not only is PSAE being awarded fees under a different statute, but also EF's directors were dismissed from this case pursuant to Rule 21 because they were not properly joined in this action under Rule 20 (Doc. 187). "Rule 21 dismissals are retroactive, [ ] and the complaint is read as if the dismissed party had never been included . . . ." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 621 (7th Cir. 2010) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989); *LeBlanc v. Cleveland*, 248 F.3d 95, 99 (2d Cir. 2001)). Due process requires that the parties be named and given the opportunity to respond. *See Applied Materials, Inc. v. Multimetrixs, LLC*, 2009 WL 1457979, at *5 (N.D. Cal. May 26, 2009) (recognizing that due process requires that principals "be named as parties and given the opportunity to respond and be heard before being

IT IS SO ORDERED.

DATED:  October 30, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

subjected to a judgment of personal liability"); *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 151 F. Supp. 2d 1192, 1208 (C.D. Cal. 2001), vacated and remanded on other grounds, 351 F.3d 1139 (Fed. Cir. 2003) (recognizing the president "must be named a party to the action in order to be liable under Section 285"); *cf. Nelson v. Adams USA, Inc.*, 529 U.S. 460, 468 (2000) (holding that due process was violated by amending judgment to impose liability for fees on an individual simultaneously with amendment of pleadings, and noting that "[p]rocedure of this style has been questioned even in systems, real and imaginary, less concerned than ours with the right to due process"). Allowing fees to be assessed against EF's directors when they are no longer parties to the action would violate due process.

APPENDIX A

| Invoice Dates | Fees | Potential Docket Entries & Items from PSAE's Bill of Costs that Could Illustrate Riezman Berger's Work |
|---|---|---|
| 10/21/2016 | $7,408.50 | 9/23/2016 - Filed MTD<br>10/17/2016 - Joint Discovery Report |
| 11/14/2016 | $2,145.00 | None |
| 12/19/2016 | $2,319.00 | 12/2/2016 - Worked with Spencer Fane on ESI Protocol. |
| 1/19/2017 | $3,284.00 | None |
| 2/14/2017 | $7,698.50 | 2/6/2017 - Answer Amended Complaint<br>2/9/2017 - Discovery Dispute Conference |
| 3/16/2017 | $22,889.00 | None |
| 4/17/2017 | $36,849.25 | 3/22/2017 - Discovery Dispute Conference<br>3/22/2017 - Motion for Protective Order<br>3/31/2017 - Motion for leave to file counterclaims<br>4/6/2017 - Discovery Dispute Conference held |
| 6/14/2017 | $45,228.50 | 4/26/2017 - Hearing held before Magistrate Judge Daly<br>5/4/2017 - Counterclaims filed<br>5/12/2017 - Joint Motion for Leave to File Amended Scheduling Order<br>5/16/2017 - Hearing held before Magistrate Judge Daly |
| 7/14/2017 | $60,351.50 | 6/19/2017 - Motion for Extension of Time to File Response to EF's Motion to Dismiss for Lack of Jurisdiction<br>7/5/2017 - Memorandum in opposition to EF's Motion to Dismiss |
| 9/12/2017 | $10,012.00 | None |
| 10/25/2017 | $10,376.50 | 9/22/2017 - Joint Motion to Amend/Correct Scheduling Order<br>10/19/2017 - Discovery Dispute Conference |
| 11/9/2017 | $18,277.00 | 10/30/2017 - Motion for Discovery Memorandum In Support of the Common Interest Doctrine<br>11/15/2017 - Discovery Dispute Conference |
| 12/8/2017 | $13,643.50 | None |
| 1/23/2018 | $10,516.00 | None |
| 2/23/2018 | $252.00 | 2/15/2018 - Appeal of Magistrate Judge Decision |
| 3/27/2018 | $11,266.50 | 3/16/2018 - Response to Status Report |
| 4/24/2018 | $17,198.50 | None |
| 5/18/2018 | $2,550.00 | 5/9/2018 - Response in Opposition to EF's Motion for Contempt<br>5/29/2018 - Motion Hearing held in front of Magistrate Judge Daly |
| 6/13/2018 | $31,718.00 | 6/4/2018 - Memorandum in Opposition to EF's Motion for Contempt |
| 7/16/2018 | $11,625.50 | None |
| 10/18/2018 | $2,638.00 | None |
| 11/15/2018 | $3,311.50 | None |
| 12/13/2018 | $3,185.50 | 12/12/2018 - Motion and Memorandum in Support for Judgment on the Pleadings<br>12/13/2018 - Motion and Objection to Magistrate Judge's Order on November 29, 2018 |
| 1/23/2019 | $17,411.90 | 12/28/2018 - Memorandum in Opposition regarding EF's Motion Seeking in Camera Review of Certain Documents Remaining on the Privilege Log |

| | | |
|---|---|---|
| 2/19/2019 | $9,155.00 | 2/11/2019 - Motion for Protective Order |
| 3/13/2019 | $14,757.50 | None |
| 4/12/2019 | $36,183.50 | 3/25/2019 - Deposition of Kathleen Sullivan;<br>3/27/2019 - Deposition of Rosina Kovar;<br>3/29/2019 - Deposition of Cathie Adams; |
| 5/9/2019 | $26,973.50 | 4/23/2019 - Response to Order on Motion for in Camera Review of Certain Documents<br>5/9/2019 - Deposition of Eunie Smith |
| 6/6/2019 | $35,172.00 | 5/10/2019 - Deposition of Carolyn McLarty |
| 7/11/2019 | $23,619.00 | 6/10/2019 - Motion for Protective Order Regarding Continued Deposition of Kathleen Sullivan;<br>7/9/2019 - Motion hearing held in front of Magistrate Judge Daly |
| 8/12/2019 | $9,713.00 | 7/26/2019 - Consent Motion for Extension of Time to File Response/Reply;<br>8/6/2019 - Response to Motion to Quash PSAE's subpoena duces tecum to EFF |
| 9/17/2019 | $3,351.00 | 9/3/2019 - Memorandum in Opposition re EF's Motion under Rule 56(d). |
| 10/8/2019 | $866.50 | 9/18/2019 - Reply to Response to Motion for Summary Judgment. |
| 11/7/2019 | $1,238.00 | None. Perhaps, this bill is for the attorneys reviewing this Court's orders. |
| 12/5/2019 | $4,565.50 | 12/2/2019 - Rule 26 (a)(3) Disclosures, Designations, and Objections by PSAE |
| 1/7/2020 | $3,421.00 | 12/12/2019 - Motion hearing held in front of this Court. |
| 2/7/2020 | $286.00 | None. Perhaps, this bill is for the attorneys reviewing this Court's orders. |
| 3/13/2020 | $680.00 | 3/16/2020 - Helped with Motion for Contempt under Rule 45 against EFF |
| **Total** | **$522,137.60** | |

APPENDIX B

| Date of Stobbs Entry | Stobbs Time | Description of Stobbs time | Date of Elster Entry | Elster Time | Description of Elster's time |
|---|---|---|---|---|---|
| 5/9/2020 | 4.2 | Deposition of Eunie Smith in PSAE | 5/9/2020 | 3.8 | Deposition of Eunie Smith in PSAE |
| 5/29/2020 | 4.3 | Review Ed Martin & John Schlafly depositions | 5/30/2020 | 5.3 | Review Ed martin deposition in Mad co |
|  |  |  | 8/1/2020 | 3.4 | Review Ed martin deposition for use of MSJ |
| 6/14/2020 | 3.8 | Review Eagle Trust Fund documents; research how other organizations are set up and organized in the country to try to locate experts who can give an opinion of PSAE members being able to compete with Eagle Forum | 7/23/2020 | 6 | Review of Madison Co. Filings, EF bylaws, solicitation materials claim of unfair competition |
| 9/3/2020 | 4.1 | Review depositions including Bruce Schlafly | 7/24/2020 | 5.9 | Review of Bruce Schlafly PSAE deposition |
| 12/11/2020 | 3.1 | Review filings in PSAE case and discovery to prepare for status conference | 12/11/2020 | 1.5 | Preparation for 12/12 hearing; preparation for potential oral argument on one or more pending motions; review case file |
| 12/12/2020 | 2.1 | Court Appearance in PSAE; review filings in PSAE | 12/12/2020 | 2.7 | Court hearing re: pretrial/status conference; travel to IL; client meeting |
| **Time Duplicated** | **21.6** |  | **Time Duplicated** | **28.6** |  |

APPENDIX C

| Date of Stobbs Entry | Stobbs Time | Description of Stobbs's time |
|---|---|---|
| 6/18/2020 | 0.7 | Review discovery related to PSAE emails |
| 6/29/2020 | 2.6 | Review pleadings & timelines; review depositions of John Schlafly to find inconsistencies; review PSAE pleadings |
| 8/14/2020 | 2.6 | File Review of PSAE pleadings |
| 10/25/2020 | 2.6 | Review PSAE file; telephone conference with John Schlafly, Henry Elster and Randy |
| 10/28/2020 | 0.9 | Review PSAE file and motions filed in PSAE |
| 11/23/2020 | 4 | Begin review of PSAE discovery documents |
| 11/24/2020 | 3.7 | Review discovery documents in PSAE case |
| 11/25/2020 | 2 | Review discovery in PSAE |
| 11/26/2020 | 6.4 | Review pre-trial order in PSAE; review discovery; review docket and pleadings |
| 11/28/2020 | 1.2 | Review filings in PSAE case; review discovery and begin to assimilate for pre-trial order |
| 11/30/2020 | 1.6 | File Review of PSAE |
| 12/4/2020 | 2.3 | Review discovery in PSAE |
| **Vague Time Total** | **30.6** | |